# EXHIBIT
# 2

**U.S. Equal Employment Opportunity Commission**
**Baltimore District Office**
10 S. Howard Street, Third Floor
Baltimore, Maryland 21201

| | | |
|---|---|---|
| Nena Nwachuku<br>　　Complainant | ) <br> ) <br> ) | EEOC No. 100-2004-01025X |
| v | ) <br> ) <br> ) | Agency Nos. 2003-0065-HQ<br>2004-0050-HQ |
| Michael Levitt,<br>Administrator,<br>Environmental Protection Agency,<br>　　Agency | ) <br> ) <br> ) <br> ) <br> ) | Judge: Laurence Gallagher<br><br>Date:　September 2, 2005 |

## COMPLAINANT'S OPPOSITION TO AGENCY MOTION
## FOR SUMMARY JUDGMENT AND DECLARATION

1.　　　　　　　　**INTRODUCTION**

I am Nena Nwachuku, a GS-13, Environmental Scientist, in the Health and Ecological Criteria Division (HECD) in the Office of Science and Technology (OST), of Office of Water (OW). I have been in HECD for 7 years and 8 months. I have over 15 years of federal service and 18 years experience in the Environmental Industry.

I am a naturalized African-American female with an African Ethnic origin. I have a Ph.D in microbiology from George Washington University in Washington DC. and a Postdoctoral training. I hold a Bachelor of Science degree in microbiology and a Masters of Science degree in microbiology from Howard University in Washington DC.

-1-



When I first came to EPA in January 1998, I was happy and eager to do the best I knew how to do, please my supervisors and work with my team mates. I respected Rita Schoeny my supervisor. I was hired at a GS-13 full performance level, and told I would work under equal employment opportunity as afforded every other United States citizen working for the federal government. *In the Office of Science and Technology (OST), however, I was subjected to unequal treatment, unequal opportunity, humiliation, harassment, and hostile work environment from the very beginning of my employment and it continues to this day. These harassments and hostile work environment have been severe, pervasive, and continuous, in order to prevent me from being promoted.*

I oppose the Agency's motion for summary judgement (AMSJ), on the grounds that there are numerous material facts in general dispute, and documented evidence shows discrimination, retaliation and hostile work environment.

## II.     MATERIAL FACTS IN GENERAL DISPUTE

### A. Rita Schoeny

" The evidence is undisputed that Ms. Schoeny played no role in the selection process that complainant is challenging." **See** (AMSJ) page16.

The evidence shows otherwise. Rita Schoeny, was my supervisor from January 26, 1998 until February 3, 2003 when she was reassigned from a supervisory branch

-2-

chief position to a staff member position as Senior Science Advisor. She was my first line supervisor of record for the work year, **2002** for which I was denied a promotion to GS-14 based on my race, color, ethnic background, and retaliation, even though I was more qualified than the selected individuals; Carey Johnson, a Caucasian white male engineer, and Vera Williams-Bower, an African American female IT specialist.

On June 5, 2003, Geoffrey Grubbs called an all-hands meeting of all HECD staff and invited Christopher Zarba, the former acting director for (HECD). Mr Zarba, had been in HECD for just 3 months when he made the decision that I, was not qualified to be promoted to GS-14. Christopher Zarba, said publicly at the June 5 meeting that "He consulted with my supervisor of record, Rita Schoeny and my second line supervisor, Edward Ohanian", before he made the decision that I was not qualified to be promoted to GS-14." He said this in response to my question as to how he determined that I was not qualified for a GS-14 without consulting with my supervisor of record at the time, Rita Schoeny. His public statement implicates Rita Schoeny and therefore, Rita Schoeny played a role in the decision that I was not qualified for a GS-14 promotion. **See** ROI,Exhibit10 p.4.

"During Dr. Nwachuku's one year probationary period, I and others in HECD management were sufficiently concerned about her inability to perform the functions for which she was hired that the most serious consideration was given to terminating her." AMSJ Exhibit B. #3 Declaration of Rita Schoeny.

I was hired at GS-13, full performance level, on January 26, 1998. The reference to my probationary period is over 7 years old.

Most importantly, the evidence proves otherwise. **See** Exhibit,#1, Nwachuku's 1998 performance evaluation. I was rated *"exceeds expectation" at 400 points by Rita Schoeny*

The rating levels were the following:

Unsatisfactory, --------------- 100-199;

Minimally satisfactory -------- 200-299;

Fully successful ------------- 300-399,

**Exceeds expectation ------- 400-449,** (Nena's rating in 1998 )

Outstanding ----------------- 450-500

*At no time did Rita Schoeny indicate to me that I was not performing the functions for which I was hired.* Her statement is false and a pretext for a coverup for discrimination.

In fact I raised the standards of microbiology work in that division by the superior scientific quality of my assigned work. Within a year I developed an externally peer-reviewed regulation supporting scientific document " EPA Drinking Water Criteria for Enterovirus and HepatitisA, EPA/822/R/98/043, (**See** ROI exhibit #21 p.48). I had no

contractor support as is usually done by other scientists. I had no computer for the first 3 months of my employment. I chose to lug all my work home after hours and typed on my home computer with no compensation. I got the work done efficiently and effectively and I went out of my way to do so despite difficulties. I hit the ground running and I am very proud of that accomplishment within a year of employment at EPA.

The Enterovirus document developed by me in house, supports the EPA Ground Water Rule and Nena Nwachuku is cited in the preamble of the rule as **the sole author of that scientific document.** The criteria document was externally peer reviewed and received favorable peer review comments from experts in the field. Nobody had ever written a major drinking water criteria document in house before me in OST. Rita Schoeny was one of the Agency internal reviewers.(**See** ROI exhibit 21 p.48).

Please note that I accomplished this under very discriminatory and harassing circumstances. I was labeled a "junior" as soon as I got to HECD, despite the fact that I was hired at GS-13, full performance level, have a PH.D., postdoctorate, and 10 years experience in water and environmental microbiology when I came to Office of Science and Technology. **see** Exhibit, #8 MWAP meeting to remove Junior label on Nena.

Rita Schoeny's statement of my "inability to perform the function for which I was hired is *totally false* as attested by my performance evaluation. It is a cover up and a pretext for a history of over 7 years of discrimination in OST, based on my race, color,

-5-

ethnic origin, and retaliation.

"Among the functions in which her performance was considered to be
inadequate was her ability to interact well with her colleagues" Exhibit B #3 Schoeny.

The evidence again proves otherwise. **see** Exhibit #1. Nena's performance
evaluation,1998. The Critical job element 4, in the performance standards states:

"Effectively participate in the micro team and the sensitive subpopulation group"
The object for that element states " **Collaborate and cooperate with team
members** and assist in various functions of the team and group for an overall team and
group effectiveness."

The performance measure for *"unsatisfactory"* in the critical job element,4,
states: "Does not bring up team detrimental issues to the group.  Does not collaborate
with the team members."

The performance measure for "*fully successful*" in the critical job element 4,
states: " Uses team building skills and patience to promote a more cohesive team,
working toward the team and group goals. Bring up team detrimental issues for the
overall team common good."

*I was rated " exceeds expectation*" for this critical job element by Rita

-6-

Schoeny. At no time did Rita Schoeny indicate to me that I had no ability to interact well with colleagues. I was not rated unsatisfactory and there was no performance improvement plan in place and no performance improvement was communicated to me. Her statement is false and a pretext for a cover-up for discrimination. **see** Exhibit1.

"In fact despite a consensus among HECD management that the agency should remove her before expiration of her probation period, higher level management in the Office of Water decided for political reasons that we could not do so."Exh,B4,Schoeny.

Is it not a <u>prohibitive personnel practice</u> to make a personnel decision because of political reason? Perhaps a discriminatory political reason?

I was one of three African Americans hired in HECD. Nena at full performance level of GS-13 and two others, Parker and Conerly at GS-9. At the end of my probationary period there was never any discussion between Rita Schoeny and myself regarding my inability to "interact with others."

Rita Schoeny implies through her statement that HECD management was concerned that the work environment was or had the appearance of being "discriminatory" since she could not "fire" for political reasons.

Additionally, the Office of Water is referred to as the "Plantation" by many minorities. Rita Schoeny terminated Geneva Gray, an African American female

-7-

accountant in HECD, at the end of her probationary period in 1998.

The evidence again proves otherwise as shown by my 1998 probationary year evaluation in which I was rated "exceeds expectation", across the board for all elements by Rita Schoeny. **See** Exhibit #1

"Throughout my entire tenure of supervising Dr. Nwachuku, she proved a most challenging subordinate. Dr. Nwachuku refused to share information with her colleagues and frequently accused other HECD staff "of getting into her business" or words to that effect; that is into her area of expertise or projects." Exhibit B#5,Schoeny.

The evidence here overwhelmingly proves that Rita Schoeny is lying. First, I do not talk like that, "get into my business". Secondly, I have no personal business at EPA. Thirdly, It is all EPA's work. Most importantly, numerous exhibits show that I took my concerns to Rita about non information sharing by other team members and **shared my concerns and discomfort in the MWAP team.**

Nena Nwachuku's 2000 performance evaluation by Rita Schoeny states:

"The quality of Nena's work and timeliness is good. I gave a copy of the competencies for GS-14 and marked areas in which I felt work was needed. I asked her to consider this and schedule a follow-up meeting with me to discuss and develop an IDP. We discussed areas of collaboration for 2001 and beyond mostly with microbiologists in ORD in cincinnati. **We also**

**discussed her discomfort within MWAP team dynamics**. Nena conveyed

her desire for recognition for example with an award certificate. I told her that a

time off award is forth coming and we pursued other possibilities."**See** Exhibit #3.


On 1/27/98, my second day in the office after my orientation, Rita had a meeting

with me, and among other things, listed 10 documents she wanted me to obtain from

various individuals at EPA and familiarize myself with the type of work I will be doing at

EPA. One of those required reading was a Contaminant Candidate List (CCL) report, I

was to obtain from Evelyn Washington, in another program office, OGWDW.


I went to OGWDW a week later and obtained the CCL report. Within 30

minutes, of coming back from OGWDW, Lisa Almodovar, a GS-13 microbiologist and a

team member then, came charging into my cubicle to ask me why I went to OGWDW to

get the CCL report and why I was reading it. I told her the supervisor instructed me to

obtain the report and familiarize myself with the report. She tore into me" Why? For

what? Does it mean you do anything she asks you to do? Why did you not ask her why

you should read the report?" I was shocked. I felt threatened, and afraid. *I was barely

two weeks old in HECD.*


I was confused. Who was in charge here? Why would I ask my boss why I

should familiarize myself with a report? She has the authority to assign the work, I

thought. I informed Rita Schoeny about what happened to make sure that I could

proceed to read the report as she had instructed me.

*I knew from the very beginning of my employment in HECD, that I was in a dysfunctional group with no defined structure or boundaries, and that I will be dealing with power struggles, cut throat competitions, and unusual personalities.*

".....Dr. Nwachuku's failure to share information frequently created programmatic difficulties and interfered with HECD and the office of Science timely performance of it's mission. Her accusations against usurpation of her work responsibilities were unfounded, disruptive and destructive of morale." Exhibit B #6 Schoeny.

Rita Schoeny implies that I alone had such "valuable information" to share that I could interfere with the timely performance of an entire Office's mission. Yet, at no time during my performance evaluations with her or any other time from 1998 to 2002 when she was my supervisor did she indicate that I was interfering with the timely performance of the Division's or OST's mission. **see** Exhibit #1,#2,#3,#4, and #5 Nena Nwachuku's performance evaluations for 1998, 1999, 2000, 2001, and 2002.

The sharing of information with my colleagues is an interesting accusation since the microbiological issues in HECD were built around a "team concept". During my tenure on this "team" I was: routinely excluded from meetings by members of the team; excluded from participating in travel; prevented/disallowed necessary training;

-10-

treated differently by team members; and virtually isolated. I was the one kept out of meetings, travel and training. Any time I made a request, for example, for travel my name was removed by the team. The team "shared nothing" with me. I brought all of this to Rita Schoeny's attention and she proceeded to turn a "blind eye". I was the "Junior" employee with no rights, no voice, and above all as a subordinate, to never question my superior. **See** Exhibit #9, Nena's Union complaint, and #9b and #9c.

I did not have adequate equipment to perform my functions (computer); my being left out of meetings by the team certainly interfered with my ability to perform my functions because I had a lack of knowledge as to what had to be done or was being done. It is interesting that it was "disruptive" to Dr. Schoeny, when part of her managerial responsibilities was to take care of the problems. 'Destructive of morale?', my morale was literally destroyed, each time I was gleefully referred to as the "Junior" employee. Again, the person who had no voice. **See** exhibit #8 MWAP meeting notes.

Most importantly, when I got to HECD, I was assigned the subject area "viruses" and was asked to write the document in house. My work comprised literature search, literature retrieval, and constant writing of the 12 chapter document. When I completed the draft of the virus document, I made it available to ***all the team members*** and asked them to review the report and provide input for the refinement of the report. I also sent it to other microbiologists in EPA Cincinnati, OGWDW and ORD.

I gave credit to all of them who provided peer review comments in the acknowledgment page of the document (**See** ROI exhibit,#21,p.48). The page shows the names of those who gave comments; Steve Schaub, Paul Berger, Ken Rotert, Robin Oshiro, Stig Regli. Even Rita Schoeny was provided this document for review and her name is listed too. This was the case with all of my work products in EPA which were made available to everyone. All of it underwent "internal review". See RO1 exhibit 21,p.51, exhibit # 21 p.52, exhibit # 21,p.54.

On the other hand, I never received any draft copies of the products managed by other team members such as the Criteria documents for Cryptosporidium from Lisa Almodovar, Giardia, Legionella from Latisha Parker, Aeromonas from Robin Oshiro, or mycobacteria from Latisha Parker for peer review. My name is not on any of the acknowledgment pages.

" Dr. Nwachuku was also often verbally abusive, referring to me, other HECD staff and OW clients and contractors with pejorative highly demeaning of our intellects and professional competence. Dr. Nwachuku created an atmosphere of ill-will. Her reputation for abrasiveness is widespread in OW, reaches into other offices of the Agency and extends to the externally funded community with which she interacted." **See** exhibit B # 7 Schoeny.

Rita Schoeny implies that I was so abusive to everybody at large and to such a

-12-

monstrous capacity.  Yet, at no time during my performance evaluations with her did she indicate that I was creating an atmosphere of ill-will to the world at large. Again, numerous documented evidence, prove otherwise. Nena Nwachuku's performance evaluations for 1998,1999, 2000, 2001 and 2002 given by my supervisor Rita Schoeny show that she is lying. **See** Exhibit #1, #2, #3, #4, and #5.

Rita's false statement that I was "verbally abusive" to her, other HECD staff, and OW clients and contractors and used pejoratives highly demeaning of their intellects and professional competence is interesting since Dr. Schoeny "routinely" got into disruptive shouting matches with another member of her staff Dr. Nancy Chiu, a senior toxicologist.

Nancy Chiu was "routinely" allowed to engage in "shouting matches" at team and branch meetings.  I tried to get my colleague to stop a few times. She resented it. Rita Schoeny, an EPA supervisor, created very tense situations with the constant bantering with Nancy. She had no ability to get control of tense situations before they got out of hand. She exercerbated it. These fights were constant at team meetings to the point of disruption of important budget meetings.

In the worst incident, in 2002, Rita brought a small gadget to the meeting and placed it on the table. Nancy and Rita started shouting at each other and Nancy accused her of taping the team without permission. It was so explosive that some members left including me.  You could not calm Nancy down. It was unbelievable.

-13-

After the meeting, I went into Rita's office to calm her down as she was visibly shaken by the incident in the team meeting. She told me the gadget she brought to the team meeting was not a taping device but a test meter as she was involved in a clinical trial at NIH and was supposed to have it with her. But she could have told the team that during the meeting disruption to stop the escalation of animosity. Nancy later was upset with me for asking her to stop shouting at Rita at the meeting and to at least respect her as the boss regardless.

Another individual Dr. Charles Abernathy, a senior toxicologist was allowed to hurdle "profanities" and four letter words at team meetings and tell "dirty" jokes and "offensive" e-mails and use bad language at team and branch meetings and curse at all hands meetings. Everybody at HECD knows this. Dr. Schoeny personally told me that you have to let "certain types" of people "blow off steam." It is interesting, that I, an African woman, am characterized as "verbally abusive" but non-black individuals who use "profanity" in the office are characterized as just blowing off steam.

Again, numerous documented evidence, prove otherwise. See .Nena Nwachuku's performance evaluations for 1998,1999, 2000, 2001 and 2002 written by my supervisor Rita Schoeny. **See** Exhibit #1,#2, #3, #4, and #5.

Nena Nwachuku's 1999 performance evaluation by Rita Schoeny states:

> "Nena's list of accomplishments is attached. She is dedicated to her work
> particularly to using her time and expertise to ensure that documents are

-14-

of high quality and scientifically accurate. We discussed the pathogen

strategy as a team priority. We discussed need to be scrupulous in not

selecting or directing subcontractors. Nena and I agreed to review her

status in the light of competencies for GS-14 and will establish a plan

for her growth." Exhibit #2.


Nena Nwachuku's 2000 performance evaluation by Rita Schoeny states:

"The quality of Nena's work and timeliness is good. I gave a copy of the

competencies for GS-14 and marked areas in which I felt work was needed.

I asked her to consider this and schedule a follow-up meeting with me to

discuss and develop an IDP. We discussed areas of collaboration for 2001

and beyond mostly with microbiologists in ORD in cincinnati. We also

discussed her discomfort within MWAP team dynamics. Nena conveyed her

desire for recognition for example with an award certificate. I told her that a

time off award is forth coming and we pursued other possibilities" Exhibit #3.


Nena Nwachuku's 2001 performance evaluation by Rita Schoeny states:

"Nena's technical work is excellent and has surpassed what she has

accomplished last year and thus far. Her work in these areas

(Acanthamoeba, Groundwater Rule, and Indicators of Treatability)

is having major impact on regulatory process and policy in OW.

Her time and expertise is in demand by customers in OGWDW

and OW and scientists outside EPA. She responds to many time

-15-

sensitive requests for her expertise and analysis. She has amassed

7 scientific papers and 2 poster presentation which reflect well on the

quality of HECD's science." See Exhibit #4

Nena  Nwachuku's 2002 performance evaluation by Rita Schoeny states.

"Nena is known for expending extra energy and time as is needed

to come to a successful conclusion.  As leader of the Agency-wide

microbiology workgroup. She is gaining an increasing reputation

for her work on both dual indicators. and acanthamoeba.  This year,

she took a leadership role in the process of  developing a new CCL.

She has continued to publish and give presentations. See ROI tab 3 p.7 and

Exhibit, #5

These positive evaluations from 1998-2002 were before I filed a discrimination

complaint against OST in 2003. They include words such as " gaining an increasing

reputation for her work on both dual indicators, and acanthamoeba", "her time and

expertise is in demand by customers  in OGWDW, OW and outside the agency,"

"responds to many time sensitive requests for her expertise and analysis" "As a leader

of the  Agency-wide microbiology workgroup. Nena is known for expending extra energy

and time as is needed  to come to a successful conclusion.  Her work in these areas

(Acanthamoeba, Groundwater Rule, and Indicators of Treatability) is having major

impact on regulatory process and policy in OW".  She has amassed 7 scientific papers

and 2 poster presentation which *reflect well on the quality of HECD's science."*

-16-

After I filed a complaint, in June 2003, the same supervisor who wrote all my evaluations from 1998 to 2002, has changed her tune and has now in 2005 created derogatory labels for me and calling me bad names.  She has changed "reputation for her work to", "reputation for abrasiveness",  "was abusive to her, Rita and others",  "creates ill-will"

*I have never disrespected Rita Schoeny*, in her face, behind her back, or openly at meetings like so many of my colleagues and Rita's subordinates do. I am a dignified Christian woman and I respect myself. I do not use foul language inside the office, outside the office or at my home. I was well raised by my parents Edward and Lucy Nwachuku.

I was sent off to an all girls English boarding school,  archbishop Crowther Memorial Girls's School, Port Harcourt, as a child and trained by British missionary teachers, who were very strict and punished students for any "bad behavior" including things like not standing up when the teacher enters the classroom, talking during class and reading after lights out.

I acquired the skills to be serious minded, strict, meticulous and dedicated in everything I do at that boarding school. Those skills have served me well and they reflect in my work and my accomplishments at EPA. I was trained to respect authority (teacher, boss, supervisor etc) and to be a proud, dignified human being, which I am. My second name Ure in Ibo means *pride.* My name Nena means " mother has come

-17-

back to me" I am my father's mother in my culture. Nena is a dignified name given by a father to his pride and Joy. Because I come from a family with 8 girls and one boy, my father encouraged me very early as a child not to be afraid to speak up and to hold my head high and be confident even though I am a woman in Africa where the culture considers women second place.

A lot of my accomplishments, in the U.S. come from my inner strength and confidence instilled in me by my father who believed in me as a woman. My father will be proud that I am fighting this discrimination and injustice against me by the Office of Science and Technology.

I am shocked at Rita's false statement that I disrespected here. I have never done that. I question *unequal treatment and harassment* as shown by my email correspondences throughout my years in OST, and by this EEO complaint, and will continue to do so. But I do not curse, or verbally abuse my supervisors no matter how bad their managerial skills.

I have never used "pejorative highly demeaning" to her or other HECD staff, contractors and clients. I have however, *consistently questioned* unequal treatment of me such as denial of training and travel, exclusion at meetings that impact my work, exclusion from participation at meetings and committee, criteria for such unequal exclusions, by Rita Schoeny, HECD management and other HECD staff. They are all

-18-

recorded by emails and they speak for themselves. See Exhibit #9 Nena's complaint.

I have **definitely questioned and reported EPA contractors who violated contract rules on projects I managed.** EPA was able to recover money from CDM contractor for charging EPA for something not on the statement of work. **See** exhibit #11 contracting officer's after investigation decision email to CDM Project officer, Joanna Taylor. A decision to recover 45 hours from CDM contractors. EPA recovered money from GRAM contractor because one of their consultants in University of New Hampshire Professor Aaron Margolin, was converting EPA project money to his own use outside the funded project. I discovered these during the meticulous reviews of my project progress reports and I reported my findings promptly and officially to the contracting officer as I am required to do by contract law. This led to an investigation and Gram Inc. contractor later refunded EPA money. **See** Exhibit# 12 Gram contractor.

I am sure that a contractor who likes to defraud the government will not like a conscientious government employee like myself. The effective management of my projects includes managing the budget and this is tied to my performance evaluation. I will be failing in my effectiveness if I allowed questionable practices by contractors in my project. I will be liable as a work assignment manager and project officer of projects if I failed to report irregularities. Employees have been known to be singled out for legal sanctions. Some HECD managers are reckless in the way they handle project contract issues.

-19-

I *advocated for a code of ethics for HECD during HECD reorganization*. We were all interviewed for reorganization of HECD and I turned in my own ideas which I emailed to the leaders of the reorganization team and Mr. Grubbs. **See** Exhibit #13., Nena's email to the reorganization committee for HECD code of Ethics. Rita's statements are a pretext for a cover up for discrimination.

"In HECD, for example, there were a number of scientists so put off by Dr. Nwachuku's unwarranted argumentativeness, her verbal abuse, they transferred out of the Division." Exhibit B # 8, Schoeny.

Again, the evidence proves otherwise. Individuals who left HECD which Rita Schoeny did not name, had absolutely nothing to do with Rita Schoeny's accusations. The individuals transferred out of the Division for promotional opportunities from a GS13 to a GS 14. Eric Winchester, biologist, in Eco branch went to Office of Research and Development for promotion to 14, Latisha Parker, an environmental scientist went to a new Office of Home Security for better opportunity for promotion after a 6 month detail, Diana Wong, a toxicologist went to ORD for promotion to 14, and Lisa Almodovar, environmental Specialist went to Office of International Affairs for a GS-15 promotion, levels that could not be attained in HECD. **See** Exhibit #14, Transfer.

"During my tenure as Dr. Nwachuku's immediate supervisor, she regularly demeaned colleagues..." Exhibit B # 9 Schoeny.

-20-

I was hired at full performance level GS-13, with a Ph.D, postdoctorate and 10 years experience in the industry at the time. However, I was immediately labeled junior employee by Rita Schoeny and Jeanette Wiltse and referred to as Nena Nwachuku, "Junior" employee, by GS-12's and fellow GS-13's. Email were sent across program offices with "Seniors and Nena Nwachuku" This was a label that I found demeaning, degrading, humiliating and insulting.

I went to Rita Schoeny, my supervisor to share my feelings of humiliation. She refused to do something about removing that label. No employee before me or after me at GS-13, or GS-11 and GS-12, had ever been labeled "Junior". No Caucasian white employee with a Ph.D., post doc and 10 years experience in the field at the time, had ever been labeled and so humiliated in HECD. We were 5 members in the microbiology team(MWAP) and two members, Lisa Almodovar at GS-13 and Robin Oshiro at GS-12 had a fun time baiting me with. "You are junior to us". After several months, the junior label was finally removed. **See** exhibit#10. The decision to label me in such a derogatory manner despite my qualifications, I believe was because I am an African American woman with a different ethnic origin. **THIS JUNIOR LABEL SET THE TONE FOR MY FUTURE TREATMENT IN HECD.**

I always gave Dr. Schoeny respect and deference as my supervisor. *I recommended Rita Schoeny for a supervisor award when she had knee surgery* and came in during a snow storm on crutches. She also would say hello to people

-21-

unlike Jeanette Wiltse, the HECD director  who will not even speak to the foreign-born

scientists at HECD.  Rita received that award based solely on my recommendation. The

other members of my team refused to sign the letter of recommendation that I wrote for

Rita and felt she was a bad supervisor and did not deserve such a recognition.


Again, I am characterized as "regularly demeaning" but conduct such as

profanity is an acceptable "trait".


"For all but about the initial year ..., and throughout the..." Exhibit B#11 Schoeny

Again, numerous documented evidence, prove otherwise. See .Nena Nwachuku's

performance evaluations for 1998,1999, 2000, 2001 and 2002 given by my supervisor,

Rita Schoeny. **See** exhibit #1, #2, #3,#-4, #5.


I find it very interesting that Dr. Schoeny believes that I was and am still "INEPT"

in my "interpersonal skills."  If I complained or questioned anyone, it was viewed as I

had no right.  It was from the very beginning the African woman with the accent.  Who

does she think she is to question any body?  We will teach her a lesson.  Dr. Schoeny

refused to deal with the issues that were at hand and at the time they occurred and she

promoted and participated in the discriminatory environment. **See** Exhibit #9a, 9b.

As I go through all the false accusations by Dr. Rita Schoeny, the biggest thing

that is quite obvious is her display of anger.  She is so angry she cannot even contain

herself.  It is all over her declaration.

-22-

" I played no role in that selection process and I do not recall providing any feedback to Christopher Zarba, the acting Division director." Exhibit B#12 Schoeny.

The evidence proves otherwise. Christopher Zarba, said publicly at the June 5, 2003 meeting that "He consulted with Rita Schoeny and Edward Ohanian", before he made the decision that I was not qualified to be promoted. **See** ROI exhibit 10,p.4.

The managers contradict themselves here again. Zarba told the entire HECD staff on June 5, 2003 that he consulted with Rita Schoeny and Rita Schoeny is saying she did not provide feedback to Mr. Zarba. The managers contradictory statements calls their credibility to question. I believe it is a pretext and cover up for discrimination.

During my tenure as Dr. Nwachuku's immediate supervisor, she and I had a rather contentious relationship, and I felt compelled to counsel her numerous times about her disrespect for co-workers as well as about her issues with display of anger. My difficulties with Dr. Nwachuku, however, were unrelated in any way to her race, color, or national origin. See Exhibit B#14, Schoeny.

Again, the numerous evidence prove otherwise. See my evaluations in Exhibits #1,2,3,4,5, In addition my timely emails to Rita speak for themselves. I have no issue with anger despite working under the burden of daily discrimination and hostility.

Rita Schoeny had contentious relationship with many of her subordinates, but not with me. I consistently informed her of the unequal hostile work environment under which I worked. The assumptions in my performance evaluations were " that

-23-

resources were available and that work environment is bias free." My work environment
was NOT Bias free. See Exhibit #3,#4,and #5 Performance assumptions.


Rita Schoeny had a contentious relationship with Dr. Nancy Chiu, Dr. Amal
Mahfous, and Dr. Ambika Bathija all Human Health Toxicologists and initially with Lisa
Almodovar, a microbiologist who was in Jeanette's inner circle. Rita could not do
anything to her. The toxicologists were constantly going to Geoffrey Grubbs, the Office
director to report their treatment and share their concerns about Rita. In 2001, I
overheard Rita talking loudly from next-door cubicle of Amal Mahfouz ordering her to
dis-invite herself to a meeting in OGWDW office. Nancy, Amal and Ambika also went
constantly to the Union to complain to the vice president Dwight Welch about Rita
Schoeny. The union prepared a class action suit on behalf of the scientists and urged
me to join them. I refused but preferred to exercise my right separately. The Office of
water then promised to get an arbitrator to talk to the scientists. See exhibit #9c


I defended Rita against attacks at Human Health team meetings. I defended her
against Edward Ohanian, the Science advisor, who constantly encouraged me to do
something about my bad treatment by Rita Schoeny and to go to Mr. Grubbs to
complain. He did everything possible to discredit and undermine Rita Schoeny. I was so
naive about Edward Ohanian's motives until a colleague, Dr. Amal Mahfouz told me not
to defend Rita but to keep quiet and hear what Ed has to say first. She told me that Ed
could not stand Rita and that he was backstabbing her to see if he can regain a
management position again. Rita Schoeny was Ohanian's main competitor for the

-24-

application to replace Jeanette Wiltse, the director for HECD.   Dr. Mahfouz was right.

The next time, Ed Ohanian  came to talk to me about Rita, I said nothing to
defend her and Edward Ohanian tore into Rita's reputation, her inadequate leadership
skill, and that she was such a bad supervisor and that it was obvious Rita hates me.

In my experience, Dr. Nwachuku has an abrasive personality, with an
exaggerated sense of her own excellence. She routinely antagonizes those with whom
she works.  It is primarily this incapacity to interact effectively with others that has
stymied Dr. Nwachuku's professional advancement.  Her technical competence is
adequate, but not impressive. **See** Exhibit B #14,  Schoeny

***RITA SCHOENY is not a recognizable name in microbiology***.  But I am a
recognizable name in the water and environmental Industry. ***I do not consider Rita
Schoeny an expert in the recognition of scientific excellence in microbiological
sciences***.  Her scanty knowledge of microbiology is antiquated, at best.

***My accomplishments as an expert microbiologist at the National and
International levels are not a matter of Rita's jealousy and uninformed opinion.
My numerous scientific publications, presentations at National and International
conferences, my collaborations with world class experts seen on 60 minutes,
20/20, speak volumes.***

-25-

Evidently, the Agency has an equally exaggerated sense of my excellence. ***In 2005, I received the highest solely "scientific" award given by the Agency. A Level I, Science and Technology Achievement Award (STAA). The Level I award, recognizes EPA employees who have accomplished an exceptionally high-quality research or technological effort and is recognized as a major scientific/technological achievement within its discipline or field of study***. I, Nena Nwachuku was awarded a level 1 the most prestigious scientific award in the agency. It was a contest for scientific publication for all the scientists in EPA in all the program offices, and the regions. The EPA administrator, Mr. Steve Johnson spoke at the presentation ceremonies, the day I was presented with my plaque, certificate and a letter for $5,000. My congress person was invited, and EPA sent out a press release to the media. Only 4% of EPA scientists have received a level 1 award. I was the only scientist in Office of Water to receive this award. I was so happy to receive that award and to be so honored considering where I came from. My mother, who recently passed away, would have been so proud of me. Rita Schoeny has never ever received such award. **See** exhibit # 15, Agency Highest Scientific STAA award.


In my 2001 performance evaluations, Rita Schoeny wrote,"Her time and expertise is in demand by customers in OGWDW and OW and scientists outside EPA. She has amassed 7 scientific papers and 2 poster presentation which ***reflect well on the quality of HECD's science."*** **See** Exhibit # 4

-26-

I am very proud of my accomplishments and particularly since I did it under the burden of discrimination and hostile work environment. *I wonder how far I could have gone without discrimination and a hostile work environment*.

Rita Schoeny on the other hand is well known in HECD and OST and OW in the art of exposing herself at work. She is the unprofessional EPA female manager who comes to work dressed suggestively, exposing her buttocks and breast in the skimpiest, briefest, clinging mini dresses and skirts that you can literarily see underneath. That is Rita Schoeny's claim to fame. She exposes her body in the office to divert attention from the work, and her psychological issues, which have kept her in therapy for years.

HECD has paid close to half a million dollars ($500,000), to Trish Silber of Catalyst company for a so called "one on one" psychological counseling for Rita Schoeny. Records will show that HECD paid Trish Silber, a psychologist, $100,000 per year from 1998 to 2002 to talk to Rita once a week. Yet Rita Schoeny would not approve an OPM leadership training class for me. And this is the type of manager who is attacking my expertise, and personality. There are far too many people in management who do not belong there and Rita was one of them when she was a supervisor.

Dr. Schoeny states that I have an "abrasive personality," however, it appears that profane personalities and other "argumentative personalities" by non persons of

-27-

color is okay. Again, my ethnic background is African and I speak with an accent. If I project my voice in order to be understood, I am criticized as being abrasive. If I do not understand the "joke" then there is something wrong with me.


## B. Christopher Zarba

" I served as the Acting Director of the Health and Ecological Criteria Division (HECD) in the Office of Science and Technology (OSW) from November of 2002 -May of 2003. My immediate supervisor during that time, and the individual that invited me to serve in such capacity was Geoffrey Grubbs, the OST Division Director.
Exhibit E. #1, Zarba


The office of Science and Technology is "OST" not "OSW". Geoffrey Grubbs was **not the OST division director** but  OST <u>Office Director</u> . Christopher Zarba was not the acting HECD division director in May 2003. Edward Ohanian was the HECD division director in May, 2003. Christopher Zarba was the acting division director from December 2002 to April 29, 2003, not May,2003.


" I did not advocate for anyone in HECD for an accretion of duties promotion as I did not think that anyone on my staff at that time was a viable promotion candidate. Dr. Nwachuku was clearly not such a candidate in my mind, primarily in light of her difficulty working acceptably with others. It is crucial for an OST GS-14 to work collaboratively across a broad spectrum of disciplines, to foster good will with colleagues/professionals

-28-

inside and outside of her office.... in her professional dealings.  My observation of Dr.
Nwachuku and feedback.. persuaded me that she did not possess these requisite
attributes. In my opinion, not advocating for Dr. Nwachuku's promotion was the right,
and a simple, decision.  Exhibit E #9, Zarba.


Christopher Zarba is inconsistent in his reasons for why I was not selected for
promotion. In the ROI, he said I was not qualified because I sought out guidance from
him and needed more help than others, he  was "concerned about the quality of her
work and timeliness of her work", "Her writing ability was limited and she did not fully
understand how her work fit into the overall mission of the organization..., she had
problems balancing her workload, managing her time, resources, exchanging
information in our offices and other offices."


But in his declaration he changed his reasons for the non selection, saying it was
"because of notorious history of problematic interpersonal relations." **Christopher
Zarba perjured himself in both the ROI and his declaration.** Furthermore Mr. Zarba
did not address the specific criteria for promotion that he used to rate individuals in
HECD. He never discussed the justification write up with me and he does not provide
the numerical ranking, or factors used to rank the HECD staff.  **See** ROI exhibit 15, 1-4
Nena's rebuttal to Christopher Zarba.


"I had in my mind a ranked list of the candidates from my division. Mr.

-29-

Nwachuku was at the bottom of my list. I felt that her work was not at a GS-14 level, and barely met a GS-13 level. I had been working with Ms. Nwachuku for approximately three months and had a large amount of direct interaction with her. I had about twice as much interaction with her than any other employee. Ms Nwachuku sought out guidance from me and she needed more help than others. I had concerns about the quality and timeliness of her work. Her writing ability was limited and she did not fully understand how her work fit in to the overall mission of the organization. She had problems balancing her workload, managing her time, resources, and exchanging information with others, including our offices and other offices. **See**, ROI #1Exhibit 12 p.2, Affidavit of Christopher Zarba.

**At no time, during the 4 months that Christopher Zarba, acted as the HECD director and my second line supervisor did I go to him for help or guidance on any of my** work (microbial tasks and projects). **Christopher Zarba  perjured himself in his sworn affidavit.**

Furthermore, it is highly unusual for EPA employees to have direct contact with the second line supervisor regarding their day to day work assignments. At no time during his 4 month acting position in HECD  was I told by Mr. Zarba or my first line supervisors, Dr Rita Schoeny or Dr. Maciorowski  that my work assignments were untimely and that the quality of my work was lacking. **See** all my  evaluations. For the past 6 years I have received work  performance cash awards and in 2002 I received a Quality Step Increase (QSI),  **See** ROI Exhibit 21, p.60. Rita Schoeny's  justification.

-30-

*Christopher Zarba has only an undergraduate degree in wild life management* from the University of Montana. His resume shows that before he came to HECD as the acting director, the most job he has held in his career is that of a chief of staff for 8 years, 1994 - 2002, (not 2003). That is essentially a gofer position. He is not a real scientist and has absolutely no knowledge of microbiology.

I, Nena Nwachuku, GS-13, for over 7 years in HECD, hold a Ph.D. degree in Microbiology from George Washington University. I have a post doctoral training. I have an undergraduate and graduate degrees in microbiology from Howard University. I have 18 years experience in the environmental and water Industry. I have taught microbiology at George Washington University school of medicine and health sciences as a teaching fellow in the department of microbiology. I have numerous publications in peer review journals and written book chapters. I am on the editorial board of a prestigious international scientific journal, Journal of Water and health, I have made numerous presentations at the national and international levels. I collaborate with National and International experts. I am invited by academia, WHO and Health Canada to collaborate and make presentation. I am a known national expert in microbiology **See** ROI-1.Exhibits 17 and 21, Complainants promotion write ups and attachments.

How can Christopher Zarba, a wild life undergraduate with mainly a gofer experience help or guide me in microbiology? My supervisors and directors in OST with advance degrees ask me for help in microbial issues and topics. I brief them on microbiological issues and work. My colleagues across EPA in other program offices

-31-

call me to discuss and to get my input on microbial problems.

Christopher Zarba states in the ROI exhibit 12, that he " had concerns about the quality and timeliness of her work. "Her writing ability was limited and she did not fully understand how her work fit in to the overall mission of the organization"

Evidently, Zarba did not see any of my technical work products, numerous publications in peer review journals, and email correspondence at EPA. I am only a GS-13 scientist, and yet one of the most prolific writers at EPA at any senior scientist level, at GS-14, GS-15 and SES. See ROI exhibit 15, p.1-6, complainants rebuttal to Zarba. **_Saying that my writing ability was limited is a good example of profiling me because my ethnic origin is Africa._**

I should be the one helping Zarba to write. His declaration and submitted resume are sloppy and full of mistakes, he refers to Geoffrey Grubbs as the "Division director" rather than the OST office director. His acronym for Office of Science and Technology is "OSW" rather than OST", He states that in HECD he served....from November,2002 to May of 2003 rather than to April, 2003. He states he was chief of staff from ....(1994 to 11/03) rather than 11/02, Acting director 11/02 to 5/03, rather than 4/03. He refers to me as **_Mr. Nwachuku_** in the ROI. **_I am a female_**.

Zarba's resume in addition shows that he does not have any scientific publications in his name and has not published in a peer reviewed journal. All my evaluations from 1998 to present attest to the quality of my work and my writing ability.

-32-

I believe that Zarba who states " Mr. Nwachuku was at the bottom of my list. I felt that her work was not at a GS-14 level, and **barely met a GS-13 level**", got where he is today at his GS-15 level, not because of his qualifications or abilities but because he is a Caucasian white male.   Christopher Zarba's statements and sworn affidavit are false, and are pretext for a coverup for discrimination based on race, ethnicity and retaliation.

"In my opinion, not advocating Dr. Nwachuku's promotion was the right, and a simple decision. "No other panelist suggested that Dr. Nwachuku was an appropriate promotion candidate." Exhibit E #9, Zarba

My name was not even brought forward at the panel meeting discussion by Christopher Zarba. **see** Exhibit J, Declaration of Mary Smith. " Each Division Director and Pamela Barr had the opportunity to identify his/her prime promotion candidates. **Chris Zarba did not propose anyone at the time.."** " I am certain that no one put forth Nena Nwachuku's name as a promotion candidate."

'It was the right and a simple decision', for Mr. Zarba because it was an intentional discrimination not to promote me based on my race, and ethnic background.

## C. Geoffrey Grubbs.

"In all the GS14/15 advancement processes that I have chaired as the OST director, including the one in March 2003 that Nena Nwachuku has challenged, the

-33-

protocol has been largely the same.." **See**, Exhibit G, Grubbs

The protocol was not the same in 2003. In the previous years, the managers got together and selected their own people. The eligible employees were not invited to write up their justification for promotion and submit. Everything was shrouded in secrecy and the names of those promoted were not announced. The difference in the 2003 promotions was the 10/16/2002 email **See** ROI, exhibit 21, p.6, sent out by Geoffrey Grubbs, the office director to all the employees telling us that GS -14 were available and inviting all eligibles to submit write ups for justification of accretion of duty promotion to GS14. This was to make it appear as if it was a fair and inclusive process.

On 10/16/2002, Geoffrey Grubbs sent out an email to all OST employees with a subject title of "OST's 14/15 Promotions (see ROI,exhibit 21, p.6). In it he states that only one division in OST, Engineering and Analysis Division (EAD), was approved for four GS-14 promotions, to "provide recognition to those who are currently handling senior level responsibilities."

The memo also states: "I am very pleased that the agency's senior leadership recognized EAD's increasingly challenging demands and has provided me and EAD managers with the necessary incentives to both attract and retain qualified staff in this critical program area. It is also important to note that this special effort for promotions for EAD did not change the current 14/15 ceiling imposed on OST by OW for promotions in OST's Immediate office, the Standards and Health Protection Division

-34-

and the Health and Ecological Criteria Division."

**Geoffrey Grubbs memo went on to say "But, here is the good news. OST is finally at a point where there is room in our GS-14/15 ceiling to allow for 2 and possibly 3, promotions to GS-14 level in the near future. I will be meeting with the OST managers to determine how these additional slots can most fairly be allocated and how best to conduct the selection process."**

Geoffrey Grubbs told us that additional promotions to GS-14 were available. I submitted my justification write up as requested but was not even considered, let alone selected for promotion to GS-14.   Geoffrey Grubbs went on to say in the email of 10/16/2002,  "**I will be meeting with the OST managers to determine how these additional slots can most fairly be allocated and how best to conduct the selection process."**

Geoffrey Grubbs gave four EAD specific GS14 promotions to one division EAD. The 4 promotions were given to  John Fox, William Anderson, Timothy Connor and Debbie Hart. See Exhibit J, Declaration of Mary Smith. All four employees were Caucasian white employees;  three males and one female.

Out of the " two or three additional GS-14 in the email of 10/16/2002, Geoffrey Grubbs gave one of the two remaining GS -14 promotion to the same office, that received the 4 specific GS-14s, EAD.  This additional GS-14 promotion was again

-35-

given to a Caucasian white male employee, Carey Johnson.

I am more qualified than Carey Johnson, the Caucasian white male employee based on the accretion of duties criteria for promotion to GS14. See ROI exhibit 17. Within months, 5 white caucasian employees were promoted to GS-14 in the same office and only one division out of 3 divisions in OST. How fair was the decision to gave one, out of two remaining additional GS-14 to **another caucasian male after four GS-14 promotions were given to 4 caucasian white employees**?

How fair was the decision,  to give one out of two remaining available GS14 to the same office EAD and only one out of the 3 divisions in OST, when that division  got the four earlier GS-14 promotions within 6 months.

The last GS -14 promotion was then given to an African American IT specialist who was **far, far, less qualified than I am.** This was done I believe to preclude Nena Nwachuku, the most qualified African female microbiologist.

"....With respect, specifically to Nena Nwachuku's non-selection in the spring 2003 promotion process, she was not a viable candidate for reasons completely unrelated to her race, color or national origin.    **In fact, one of the individuals chosen in that process for accretion of duties promotion, Vera Williams- Bowers, is an African-American female, with coloration that I perceive to be at least as dark as Nena Nwachuku's.  Any suggestion, therefore, that Nena's race or color could have played any role in her non-selection is bellied by Vera Williams Bower's**

-36-

**promotion**"    <u>See</u>, Exhibit G page 6, Grubbs.

Was Vera Williams-Bower, the less qualified IT specialist and the " African American female with coloration that Geoffrey Grubbs "perceives to be at least as dark as Nena Nwachuku's", selected to preclude a complaint?

Geoffrey Grubbs, through his statement implies that this was the case. Was Vera Williams -Bower, an African American female selected to preclude a complaint from Dr. Nena Nwachuku, the African woman, and the most qualified African female scientist in OST ?

Vera Williams told me in February 2003, that Ellen Haffa told her not to bother to do a write up because she is not qualified and cannot meet the OST criteria including the National Policy criteria.

It is interesting that Ellen Haffa who is Vera Williams-Bowers supervisor and director of RMIS staff was not included in the panel for this GS-14 promotion. Records show that it was Pamela Barr who did. First, Vera told me that Ellen told her not to bother to submit any write up because she was not qualified based on the OST criteria because she was not involved in National policy. People were stunned that Vera was promoted to GS-14 and not Nena.

I have seen how fair Pamela Barr is. I have been on the OST awards committees chaired by Pamela Barr and seen her manipulate the results. She has a trust problem.

-37-

The panel members will cast our votes and she hides the counting and just tells us the name without making open the vote counts. Betsy Sutherland and Jeff Peterson, who were the Management chair before Pam Barr, were open and transparent and did not manipulate the results of the committee. In another incident, we agreed on two names and she removed Jeff Bigler's name and sent only one name to Mary Platt. I caught it and they made the correction. **See** Exhibit # 16.

I believe that Vera Williams who is far less qualified, who is not nearly as qualified as Nena Nwachuku was selected to retaliate against me, the African female scientist with the superior qualifications. I believe I was discriminated against by Geoffrey Grubbs on the basis of my ethnic origin, and reprisal.

"Both Ed Ohanian and Beth Doyle have kept me appraised of the accusations that Nena Nwachuku has raised in this proceeding , and I am familiar with the challenges that these subordinates confront in managing Nena. I do not regard any behavior that either Ed Ohanian or Beth Doyle has directed at Nena Nwachuku as inappropriate." Exhibit G, Geoffrey Grubbs.

I have gone through the OST chain of command and copied emails to Geoffrey Grubbs regarding frequent and perverse and continuos harassment and unequal treatment by HECD management specifically Elizabeth Doyle when my second line supervisor Edward Ohanian refused to do something to stop it. Geoffrey Grubbs had replied  the emails and at no time did he tell me that he did not consider the

-38-

discriminating and harassment behavior towards me to be inappropriate.

In 2000, Jeanette Wiltse, the HECD director at a staff meeting discussed the disgust of Staff members at the interpersonal skills of Geoffrey Grubbs. He was usually rude and unprofessional to the employees. She said she could talk to him about it.

The challenge here is the unequal work environment in the office of OST under the leadership of Geoffrey Grubbs. A lot of Scientists in OST did not believe that Mr. Grubbs was qualified to be an Office of Science and Technology director, and in fact did not deserve to lead a science office.

The challenge here is in the **dishonesty of Geoffrey Grubbs** who will do anything to coverup discrimination including **forging a note** he included in the ROI, lying that Nena gave him questions for my meeting with him. **<u>See</u>** ROI, exhibit 20, p.1. Why would I give him questions when I went in to talk to him specifically face to face. In the affidavit of my meeting with Grubbs, I state, "I was very upset and scheduled a meeting to discuss this with the OST office director Mr. Grubbs. I relayed what we were told and **handed him my write up based on OST criteria. I provided him with a copy of the same write up I submitted with numerous attachment including a list of my accomplishments** and national presentations and scientific peer reviewed publications. I informed him that I believed that I met and in fact exceeded the criteria. I stated that I meet and exceed the criteria for promotion to GS-14. I asked him what I needed to do outside of the OST criteria, to be promoted in OST because no one has told me the answer to that question which I have asked on numerous occasion. I also asked him if

-39-

he believes that there is an African American scientist in OST who is qualified  based on his criteria to be a senior scientist in OST. He did not answer the question but stared hard at me **See** ROI exhibit 10, p.4.

The challenge here is in the biased method used  by Geoffrey Grubbs in creating unequal employment opportunity in OST.  He  takes vacated GS-14 position from it's work area and transfers that position without it's responsibilities to another work area to promote yet another caucasian white employee of his choice. Meanwhile  the work load remains the same in the reduced staff unit and people like me are overloaded with the work of the positional GS-14 that is taken by Grubbs and I am not promoted to the accretion level work responsibilities that I have been performing under.

The challenge is allowing the harassment and hostility against me to continue under his nose and failure to do something about it for years of making him aware in order to retaliate against me.  The challenge here is Geoffrey Grubbs paying lip service to diversity and not instituting diversity in OST.

## D. Anthony Maciorowski

" As Dr. Nwachuku's immediate supervisor at the time that this promotion process took place, had I considered her a viable promotion candidate, I would have so advised Mr. Zarba. As it is, I did not regard Dr. Nwachuku as suitable to serve in a GS-14 lead technical scientist position and would have not have supported such a promotion had someone else recommended her for the position." **See**, Exhibit C Maciorowski.

-40-

Anthony Maciorowski was my temporary first line supervisor for only 4 months from February 4 2003 to June, 2, 2003. Nena Nwachuku's MidYear 2003 evaluation on 7/28/03 by Tony Maciorowski, states:

"Nena has successfully contributed to the Ground Water Rule, CC-1,

and 3, the LT2 rule, managed projects and published papers. She has

requested OPM leadership training. She is highly successful at the midYear"

**See** Exhibit #6A Nena's 2003 midYear Performance evaluation by Maciorowski.

When Tony Maciorowski came to HECD, he was transitioning from the position of a Senior science advisor in the Office of Pesticide Program to the supervisory position of Branch chief for Ecological branch. He tried to supervise both the Human Health branch when Rita left and his own Ecology branch. Throughout his tenure as acting branch chief, Tony, a zoologist, did not discuss work with me or the scientists in the human health branch. All he did was walk the hallways and talk about what is working or not working in HECD, over and over again.

We spent the only team meetings we had with him discussing problems in HECD. while the office had a separate team selected to work on HECD problems and reorganization. I was hired under equal employment opportunity. From his statement, it is interesting that Tony would stop my career from advancing to a GS-14 but will like his own career to advance. It is believe that Tony was asked to supervise the health Human Health to preclude Dr. Nancy Chiu, and Dr. Amal Mahfouz, foreign-born GS-14 toxicologists who applied for the temporary GS-15 promotion announced by Christopher

-41-

Zarba when Rita Schoeny left HECD in 2003. White employees in HECD such as Mary Reiley, GS-14, had been given opportunity for temporary promotion to GS-15.

Tony says I am "a good scientist" and that my primary focus is on scientific and technical aspects of HECD work rather than broader science and regulatory policy context in which the work is applied."

If Dr. Maciorowski had discussed work with me during his 4 month tenure he would have known that the paper that won me the highest EPA STAA award was mainly on applying the scientific work on waterborne pathogens to the EPA regulatory process of Contaminant candidate list. I have also won 2 EPA team bronze medals on work done with OGWDW regulatory team and CCL future team.

He states I am not flexible. But Tony Maciorowski authorized payment to an EPA contractor on a project that I manage without even consulting me, the project officer. This payment was made to the same contractor, CDM group, who was made to pay back money to EPA for erroneous charges which I reported. CDM contractor again did not complete the task in the statement of work and went behind me to get paid by Tony. EPA had to pay again to complete the task that was not completed in the first place. Is this the flexibility that is desirable? An auditor would not think so.

Tony referred to the awards committee but lied about the true facts. The HECD awards committee had been under attack by several staff member. This issue was an agenda item for an all hands meeting, in November 17, 2002. **See** exhibit # 17

-42-

Several scientists wanted to know who the members were that made decisions as to who should be rewarded for their work efforts, with time off and certificates. At the meeting, there was an uproar, employees wanted the panel disbanded. They had been accused of unfair practices and had a bad reputation. Members and non members were attacking one another. I was a new member then, and I said nothing. After a lot of heated employee arguments, I raised my hand and defended the committee. There was total calm, when I spoke up and defended the committee Everybody quieted down because I was able to convinced them to give the panel a chance as they were trying to reform.

Edward Ohanian, who was the acting HECD director came to me after the meeting to thank me and to tell me that it was "*outstanding leadership at it's best*" because of what I did to calm the division down. Two other panel members thanked me.

A month later, however, at the next selection, the panel went back to their old ways. Timely submissions with write ups, and staff names were set aside to substitute crony names that were not submitted by the due date, and had no write ups on the table for the panel to read and to vote on. This happened in my presence. A similar thing happened in the last selection meeting. One panel member actually went out of the room when we were about to vote to try and get another name to substitute. But the employee, Charles Delos, said he had nothing to submit because he had not even completed his project. I served on the office of Water Fairness and Equity workgroup for over one year. This was unfair and wrong. I could not live with myself if I signed off

-43-

on names chosen under unfair and unequal practice and the appropriately submitted nominations thrown out. I asked the office to give the panel a chance on 11/17/02, and not push to disband. Employees trusted that I would be fair in judging submissions. But the old members who fought to keep me out because they knew, I will not go along with unfairness, got mad that I questioned what they did.

Another African American member was not happy at what was done. All the emails copied to Tony and Zarba speak for themselves and they tell the true story. It is interesting that HECD management decided that those whose nominations were unfairly thrown out for the crony ones should all get award certificates also. If they had not done that, the office would have experienced a repeat chaos and the situation would have undermined the concept of rewarding hard work and fair competition. Tony knows the true story but is repainting the actual event as a pretext for discrimination.

### E. Elizabeth Doyle

Elizabeth Doyle was my temporary supervisor on detail from 6/2/03. She became permanent, from January 2004 to present. **Elizabeth Doyle has had 3 prior complaints filed against her by three different employees in another EPA program office**, in the Office of Pesticide Programs. **See** Exhibit #18, no.2. Doyle's staff interview.

I have never had a supervisor bully and harass me continuously, as Elizabeth Doyle has done since June 2003. It is on a daily basis. She assigns me work but will not provide funds to accomplish the work and will provide funds for a similar project. She

harasses and humiliates me. She is rude, overbearing, intimidating and unprofessional towards me. The evidence shows numerous cases of abuse by this supervisor which I brought to the attention of the 2nd line supervisor, Edward Ohanian who turned a deaf ear. The records speak for themselves.

Even Recently when my mother passed away, Elizabeth Doyle pushed me so far, that I had to copy my email, to the EPA administrator, Mr. Steve Johnson before the issue could be resolved. *Edward Ohanian the HECD director as usual, could not even resolve this matter.*

Elizabeth Doyle is a good example of how some EPA managers abuse the power and authority and trust placed on them. She uses that authority with reckless abandon. Elizabeth treats me unequally in all aspects of my work, in resources to do the work assigned, training for my professional growth and exclusions and non support of government work assigned to me. See exhibit # 19.

She denied me the budget to conduct governmental functions assigned to me. She budgeted $25, 000 for my counterpart leading the CCL chemical team and zero, $0.00 dollars for the same CCL work assigned to me in microbiology team which I lead. Only after I complained, did she reluctantly give me the resources to do that work. Edward Ohanian, 2nd. Line supervisor was informed and he did nothing. It was not another coincidence. It was intentional discrimination and harassment?

-45-

Elizabeth Doyle's discrimination is very blatant and obvious that other colleagues point out things to me. My name is not listed in the official document listing of the Human Health Branch that she passed out to the branch. It was not a mistake. There are far too many of them. It was deliberate and continuous and very painful to me that other colleagues notice and wonder why. **see** exhibit#20 Human Health staff listing.

She does not support governmental functions assigned to me. I briefed her on a coliphage workshop I was assigned to coordinate. I had the contractor prepare her name badge and I announced to the participants that my branch would also join us. She never showed up and did not inform me she would not come.

She spends time creating ways to treat me unequally and to harass me. We have two CCL parallel teams, I lead the OST microbial team and my counterpart leads the chemical aspects. She attends the chemical meetings and does not attend the microbial meetings. Another coincidence? I don't think so. I had to raise the issue as to why she was not also supportive of the CCL microbial discussions. **See** Exhibit # 21.

Elizabeth gives me orders, like police, when she talks to me. She is always rude to me. I asked her one day why she was always rude to me. She told me she used to live in Prince George's County for years, meaning, she can use it on me?. But this is a professional office and she supervises professionals.

" I understand that Dr. Nwachuku has alleged that I have created a hostile work

-46-

environment for her and that one episode that reflects my animus toward her was my failure to timely advise her of a number of overdue unpaid invoices from contractors whose performance she was responsible for overseeing" Exhibit D # 3 Doyle.

It is no coincidence that Elizabeth Doyle, conspired with Edward Ohanian to go to upper management meeting with erroneous record with my name on it when I was 100% in compliance. She said she apologized and said she dropped the ball. But it was an intentional act. Everyone in HECD knows how strict and dedicated I am about my work and that Nena keeps all the records. I approved the small purchase invoices sent from the financial office as soon as they come in and I even complained about the invoices coming to me late, two months in a row. All my recorded emails sent to the financial office are also in my project files. **See** exhibit # 22.

What Ed and Elizabeth did was serious and intentional. It was not until I complained to Mr. Grubbs, the OST director, did Elizabeth Doyle send an apology. This incident is a good example of the type of work environment that I am subjected to in HECD, daily. It is hostile and it is continuous. Work information that impacts my work is kept secret from me and most importantly, erroneous work information are discussed and the principle is kept in the dark. Ed and Elizabeth wanted to harm me. It was intentional. They wanted to taint me and the good work I do for EPA. This is another example of the unequal treatment I receive from my supervisors. Other employees at HECD are not subjected to these discriminatory treatments. It is a daily onslaught and indignity in different forms. My exhibit emails speak for themselves. See Exhibit # 19.

-47-

Edward Ohanian and Elizabeth Doyle position are classified as "high Risk Public-Trust. . Does a conspiracy against a subordinate in the performance of her governmental function and attempts to cover it up," **high risk public trust**" performance?

" Dr Nwachuku frequently reacts hostilely (?), to unfavorable news, a trait of which everyone in HECD is aware. It was my perception that Ms. Crawford was concerned about the reception she might receive from Dr. Nwachuku, and I sought to relieve her the anxiety by acting the messenger myself." Exhibit #4, Doyle.

Elizabeth Doyle is making excuses for her discriminatory actions. Is she implying that I am violent too? EPA has a "violence in the workplace" plan. If so why was my "trait" not formally addressed by HECD and sent to the EPA violence in workplace? Elizabeth Doyle should be in the "violence in the workplace" record for threatening me and yelling at me in my cubicle.

What are the unfavorable news I react to? The series of emails that followed the concerted conspiracy and discriminatory actions and harassment speak for themselves. Elizabeth cannot rewrite the events as they occurred. The erroneous report conspiracy was exposed. Elizabeth was unprofessional and screamed at Kathy for not being "a team player." Discrimination team player perhaps?

It is not a coincidence that Elizabeth Doyle tried to place a lie on my evaluation about me not participating in LT2 while **I was not even the lead** when she placed it surreptitiously and asked me to sign the form two weeks later. She never even discussed it with me. See Exhibit #19b.

It is interesting that Elizabeth concocted all the negativity she placed in my performance evaluation for only the second part of 2003. Elizabeth evaluated me for only the second part of the year 2003. Within 6 months she devised a strategy for discrimination. Make up stories and include in my evaluations. Tony gave me the midYear 2003 evaluation **See** exhibit # 6A, Nena's 2003 1st. Part evaluation. Elizabeth gave me the second part of 2003 evaluation. **See** Exhibit 6B. Nena's 2003 part2.

Elizabeth eventually changed the evaluation when I pointed out the discrepancies in her accusations such as that I was not even the LT2 lead showing that She was not even in touch with the work she supervises. However placing lies in my evaluation showed her intentions. They were deliberate and discriminatory.

It is not a coincidence that she instructed the administration staff to watch me and take out paper and pen and take notes whenever Nena comes to obtain any service from them or comes to their cubicle. I was waiting to talk to Shirley Harrison, our office project officer. After Julie and then me, As I walked in closer, Shirley Harrison, pulled out a pad to write. I had not even opened my mouth and had never seen her do that before and when I was waiting for Julie to finish, I did not see Shirley write anything down. No other employee in HECD endures this daily indignity and humiliation. This is the environment that I work under in HECD?  It is hostile, painful and continuous.

It is not a coincidence that Elizabeth got Sherry Howard to send emails to Ohanian when I was out of the country during my mother's death and was returning the

same day of People Plus entry (time and attendance entry for pay check). The email was sent to Ohanian who forwarded it to Pamela Barr. Sherry showed me the email and I was told that no other staff email was usually forwarded to Pamela Barr. The harassment and unequal treatment are perverse and continuous.

It is not a coincidence that Elizabeth Doyle *designated herself as my alternate without telling me and did that before I found out?* What she did was in violation of contract practice. You cannot try to modify a contract without the knowledge of the project office of record. Elizabeth has attempted to camouflage her actions. The emails give the sequence of events and tell the true story The fact remains that I found out through Sherry, the HECD P.O., who was surprised that I was not told about it. She then attempted a cover up. The emails show the facts. This is yet another example intentional harassment and discrimination against me, again. **See** exhibit # 23.

It is not a coincidence that Elizabeth has denied me a leadership training I have been requesting and is written in my IDP and performance evaluations. In November, 2002, I signed an IDP, with the 4th request for leadership training with Rita during my evaluation . I again requested a leadership training during my evaluation with Tony . I again requested a leadership training during my evaluation with Elizabeth. For the past 5 years, I have had a 1 year short time goal of taking a leadership course. I have been denied all the leadership training requests. Every employee is entitled to be approved for training. This is a classic example of barriers placed in my employment to keep me from being promoted. **See** exhibit 5, 6a, 6b, # 24. Training requests. HECD spends

huge amount to send Treda Smith, Amie Howell, Denis Borum, and Steve Potts to graduate school to get their masters degree and pay for books. They have also been approved to take OPM training. Tony Maciorowski told the human health staff that HECD had paid out $8,000 for one person alone, Treda Smith, in one year for training.

But since 2000 I have not been approved to take OPM leadership training to enhance my growth. Rita had told me that I need to get experience in Science Policy and I took that class in 2002. But HECD has never approved for me to take a leadership potential training since I came here and I have been asking for leadership training. Is this equal employment opportunity for all?

Elizabeth Doyle has been visibly threatening towards me. She charged into my cubicle ordering me to brief her and Ed or else. "I am not going to let it SLIDE." This ordered briefing was not on as needed basis as done everyone. I brief on regulation issues on CCL, Ground Water Rule, Acanthamoeba, and impending workshop that I coordinate. I pre brief them before a briefing for the Assistant Administrator, and update them on technical issues on my projects to get an input on decisions. I love briefing. But this weekly briefing that Elizabeth ordered me to do was for briefing sake with no issues. No other employee in HECD is required to brief for briefing sake. I believe she wanted me under the weight of her tremendous power and authority. It is harassment.

Elizabeth Doyle, constantly gossips about me with other program office, OGWDW, our customer. She fishes, and creates stories about me and spreads

misinformation about me. Elizabeth harasses and discriminates against me constantly even with the death of my mother. I was very close to my mother and used to call her constantly to talk about my discriminating and harassing environment and issues at OST and she helped me deal with it. When she passed away recently I was very depressed. I told Elizabeth about my tragedy and she harassed me even more. I wanted to go back to Africa to see about my mother. She would not give me my performance evaluation which was due days before I traveled. She made it seem as if I was abusing leave when I had 535hours earned leave time when my mom took ill.

I was so emotionally drained and grieving for my mother. I felt she had pushed me too far that I sent her an email and copied the EPA administrator, Steve Johnson. Only then was the issue resolved. Edward Ohanian, the director, as usual could not resolve these issues at the lowest level in his division.

## G. Edward Ohanian

"At the time that I assumed the role of Division Director, Dr. Nwachuku was a GS-13 microbiologist in HECD and she has remained so to the present. I played no role whatsoever in the 2003 selection process that is my understanding Dr. Nwachuku has challenged as discriminatory." **See,** Exhibit F, Ohanian

It is false that Edward Ohanian played no role in the decision that I was not qualified to be promoted to a GS-14. On June 5, 2003, in an all hands meeting,

-52-

Christopher Zarba, the former acting director for (HECD), said publicly that "He

consulted with my supervisor of record, Rita Schoeny and my second line supervisor,

Edward Ohanian", before he made the decision. Zarba's public statement implicates

Edward Ohanian and therefore, he played a role in the decision. **See** ROI,Exhibit10 p.4.

Ed lied to all the HECD staff members, "There was shocked silence for a minute

because Ohanian had told us that he had nothing to do with it and that Zarba said no-

one was qualified in HECD." **See** ROI,Exhibit10 p.4.


Furthermore, on 6/6/03, Friday, Ohanian came to my cubicle with more stories.

He told me  Zarba asked him about FTE only and not about people to be promoted.

Then he came back a second time to my cubicle around 4.30pm to change his story yet

again and said that Mr. Zarba had  asked him about only one name. While he was still

talking to me, Mr. Grubbs came down to my cube and asked us "do you know what day

it is ? I said TGIF (Thank God it's Friday). He told us to  go home it was Mehan's

birthday". **See** ROI,Exhibit10 p.4.


Later that day, ( 7/3/03), Dr. Ohanian came to my cubicle and said " Nena, we

gave you a QSI (quality step increase), last year." I reminded him that GS-13 is GS-13,

a journey man scientist. QSI is not promotion to GS-14. I have been performing at a

senior scientist level. He said, " well Nena, I call you senior scientist and senior

microbiologist" I told him that does not count if it is not official with a promotion to 14. I

cannot use that title if I am not an official GS-14. And if I am performing at that level, I

should be paid for it just like other scientists. Ohanian introduces me as senior

microbiologist and refers to me that way in memos. See email of 5/02/03 to CDC

sending my name in response to their request for microbiology expertise in SARS

disease. OST uses me but refuse to recognize me at that level. **See** ROI,Exhibit10 p.4.

These conflicting stories by Zarba,  Ohanian and Schoeny, and the number of

times in which Edward Ohanian kept changing his stories show that the decision not to

promote me was racially and ethnically motivated. And there is a concerted effort to

cover  up discrimination.

"I understand that Dr. Nwachuku has alleged that I and Elizabeth Doyle, her

immediate supervisor..created a hostile work environment for her.."Exhibit F, Ohanian.

I have experienced an escalation of harassment and retaliation with Elizabeth

Doyle as my supervisor and since Edward Ohanian became the HECD director. Nothing

gets resolved at the division level.  It festers and then goes up the chain of command.

Then when Grubbs replies,  Ed will follow up with a memo saying " I agree with you."

Then what is his responsibility as the division director? Other division directors in OST

seem quite capable.

I

*It is interesting that when Edward Ohanian was a science advisor to*

*Jeanette Wiltse, he constantly encouraged me to go and complain to Geoffrey*

*Grubbs  about Rita's unequal treatment of me and her ineffective leadership in*

*resolving issues.* In 2002, I sent Rita Schoeny an email about a work issue.  I wanted

to give her a chance to respond. But Ed pushed the matter forward and tried to escalate it to Rita's disadvantage as a manager who was incapable of resolving issues. I did not like to be used that way by Ohanian against Rita no matter what. **See** Exhibit #.25.


Many do not believe that Ed is up to the position he is in. He does not have the ability to resolve issues at the lowest level. He had been a Science advisor for years and then transitioned into the director position after only 6 months detail. Edward Ohanian applied for the Agency wide SES training . He went through the rigorous evaluation as did the others. He did not qualified. The names of qualified selected EPA employees were announced. Ohanian got the current SES position he now has through the back door when he was picked by Geoffrey Grubbs for the position. I believe he is handicapped in not being able to resolve issues in his division.


Dr. Nwachuku has a long history of antagonistic relations ....her aggression, intimidation hostility....and uncooperativeness See Exhibit F# 8, Ohanian.


Edward Ohanian was removed as a supervisor by Margaret Stasikowski, the HECD director for poor management. He was reassigned as a science advisor to only one person, the director. He had little or nothing to do as a science advisor. That was when I met him in 1998. I have personally observed Edward Ohanian carry out a vicious backstabbing campaign against Rita Schoeny with an intention of climbing back to a management position in HECD. He encouraged me and others, Nancy Chiu, Amal Mahfouz, and Ambika Bathija to go and complain to Geoffrey Grubbs our unfair

-55-

treatments by our supervisor, Rita Schoeny. In the meantime he constantly went to Grubbs with stories. Edward Ohanian wanted to get Rita out of the way by all means to regain a management position. He succeeded. Rita was reassigned from a Branch Chief to a senior science advisor. Ohanian is the current HECD director. But he is doing the same thing he criticized Rita about. He is incapable of resolving issues.

The biggest problem the HECD staff have with Ed is his propensity to lie. about everything. He talks about trust but he is untrustworthy and creates an environment of mistrust. When OST employees evaluate their managers, the one thing people express to one another is Edward Ohanian's dishonesty. His position is classified as *"HIGH RISK PUBLIC- TRUST."*

Ed Ohanian's actions make HECD and OST look bad. In 2002, HECD had scheduled to brief OGWDW on Ground Water Rule issues. I had pre-briefed Ed and Rita on an impending briefing on Ground water rule issues with OGWDW. They gave me input for refining the materials and what OST wants. I stayed behind that night to finish it and print out my briefing materials for the next day. Just 1 hour before the briefing, the next day, the OGWDW team leader, Crystal Rodgers called to tell me that Eric Burneson, her supervisor said to call HECD and confirm with Nena that there will be no briefing anymore. I was stunned. Ed had asked the secretary to call and cancel the briefing and he did not even tell me, the OST lead scientist, who was going to give the briefing and who scheduled the briefing. This is another good example of my working conditions and the way I am humiliated by HECD management. It also shows my work

environment. It is hostile, perverse and continuous. My white colleagues in HECD are

not treated like second class citizens. **See** Exhibit # 26.


He says he spends 20% of his time on my complaints. It is part of his

responsibility as a manager to manage both work and the people effectively. That is one

of the SES competencies, interpersonal people skills. There is a lack of leadership if a

manager cannot resolve the underlying reason for the 20% time he says he spends.

He dismisses employees at meetings who ask questions and says lets move on without

answering their questions. But he takes on almost half the meeting time talking and

bragging about his FEI training. He talks about trust but Dr. Ohanian is untrustworthy.


Edward Ohanian's remaining time of 80% is spent abusing his power and

authority and creating harassing actions against me and  pitting employee against

employee.  Edward Ohanian has instructed administration staff to keep a running record

of Nena and watch me whenever I come to them for service.


He accuses me of "aggression" and he profiles me as "angry."  He allowed a

senior employment employee, Babara Leftwich to call me names, call me a *CRAP and*

*CRAZY* and he does nothing to discipline her even when an eye witness Amie Howell

gave an eye witness account in writing. **See** exhibit # 27 Amie Howell


But Ambika Bathija, another eye witness refused to tell the truth. I was not

surprised because Ohanian has a relationship with Ambika Bathija.  She was recently

promoted to a GS-14 by Edward Ohanian. Carey, a Senior employment employee was let go by Jeanette Wiltse, the former HECD director for insulting another scientist.

Edward Ohanian discriminated against me by not giving me an opportunity for a temporary promotion just like my fellow colleagues and white Caucasian employees are given the opportunity. I was assigned more additional work and I asked for temporary promotion and Ed told me Grubbs will not allow it. But white Caucasians were given temporary promotions at GS-14 and paid. Eric Winchester and Heidi Bell had 3 months each of temporary promotions when Mary Reiley, a GS-14 program manager went on maternity leave. Tala Henry was paid for temporary GS-14 promotion when Mary Reiley acted in a GS-15 position. But when Lisa Almodovar, a GS-14 microbiology program manager was went on detail for 3 months, I covered her duties with no extra pay. He denied me temporary promotion because he said that Geoffrey Grubbs did not allow it.

I made the complaints and abuses of Elizabeth Doyle known to Ohanian. He did not correct Doyle's abuses but allowed it to fester in other to retaliate and harass me. Barriers are placed to my advancement and I am denied training,

Edward Ohanian looks out for his friends like Ambika and punishes his enemies like me. He has a relationship with Ambika Bathija and he selects her for important HECD committee such as the reorganization committee. She was recently promoted to GS-14 position , she is getting yet again another OPM training. Ambika told me how Edward Ohanian can be vicious to people and gave me a very personal account to

-58-

prove it about how his wife locked his mother in the basement when she moved out of their house. And yet he was very unsympathetic when my mother passed away. He even warned me about lawyers defrauding me as it happened when he was going through his divorce. I was surprised when he brought this up out of the blues when I was briefing him on work. I had just filed my complain and nobody knew at that time until he brought it up himself and I told him I did not want to discuss personal matters.

Ambika informed me that Ohanian would get the HECD director position even before it was made official to any of us in HECD. She also told me the exact date when it will be officially announced as he had called her from Canada. She has recently been promoted to a GS-14. Her promotion was one of the two GS14 senior level non supervisory positions identified as the areas of need in HECD for GS-14, after I filed a complaint. No microbiologist GS-14 was identified. When the 2 positions were identified, there were already 6 toxicologists GS-14 positions and only one GM 14 microbiologist. This is blatant retaliation. It had a devastating effect on my morale. **<u>See</u>** ROI , F9, p.3-4.

It is interesting that when all the false characterizations of me by the managers are carefully analyzed, some uncommon same big words that are not usually used everyday seem to appear in them, "pejorative", "notorious." That gives an appearance of a conspiracy by these managers to cover-up discrimination, harassment, and retaliation.

## III. CONCLUSIONS

The Agency motion for summary Judgement should be denied. Based on the record and the points herein, it is clear that there are numerous material facts in genuine dispute, and the evidence shows discrimination, hostile environment and reprisal. Therefore the Agency's motion for summary judgment should be denied.

I declare under Penalty of perjury that the foregoing is true to the best of my knowledge and belief.   Executed on September 2, 2005

Respectfully Submitted,

Nena Nwachuku, Ph.D.

Complainant

-60-

## Table of Exhibits

Exhibit 1.    1998 Performance Evaluation for Nena Nwachuku by Rita Schoeny

Exhibit 2.    1999 Performance Evaluation for Nena Nwachuku by Rita Schoeny

Exhibit 3.    2000 Performance Evaluation for Nena Nwachuku by Rita Schoeny

Exhibit 4.    2001 Performance Evaluation for Nena Nwachuku by Rita Schoeny

Exhibit 5.    2002 Performance Evaluation for Nena Nwachuku by Rita Schoeny

Exhibit 6a.    2003 Mid Year  Evaluation for Nena Nwachuku by Tony Maciorowski

Exhibit 6b.    2003 Later Year Evaluation for Nena Nwachuku by Elizabeth Doyle

Exhibit 7.    2004 Performance Evaluation for Nena Nwachuku by Elizabeth Doyle

Exhibit 8.    "Junior' label removal

Exhibit 9.    Exhibit10 Nena Nwachuku's NTEU Union complaint

Exhibit 10    "Junior' label removal

Exhibit 11.    CDM Contractor: Recovery of EPA project funds

Exhibit 12    Gram Contractor: recovery of EPA project funds.

Exhibit 13    Code of conduct, recommendation by Nena to Reorganization committee

Exhibit 14    Employee transfers are due to promotions.

Exhibit 15    EPA's STAA, highest scientific achievement Awarded to Nena Nwachuku

Exhibit 16.    OST's Award result manipulation

Exhibit 17.    HECD awards committee under fire.

Exhibit 18.    Elizabeth Doyle's staff interview and 3 prior staff complaints

Exhibit 19.    EEO #2 summarized complaint attachment

Exhibit 20.    Human Health Branch staff meeting without Nena's name

Exhibit 21.    Elizabeth Doyle's unequal treatment of Nena Nwachuku.

Exhibit 22    Management handling of erroneous invoice approval issue.

Exhibit 23.    Alternate project officer designation without P.O. knowledge

Exhibit 24    All leadership training requests that have been denied

Exhibit 25.    Email to Ed about preempting Rita a chance

Exhibit 26.    Scheduled Briefing cancellation: HECD credibility

Exhibit 27.    Eye witness account by Howell.

Exhibit 28.    Declaration #2, Nena Nwachuku