# EXHIBIT 61

# **Affidavit**

I, Edward V. Ohanian, make the following statement, with knowledge that any material false representation on my part, would subject me to a charge of perjury.

I am stating my account of a very unpleasant and disturbing incident which I witnessed at the "Candidate Contaminant List (CCL) Expert Input Workshop Phase II" at the Radisson Crystal City Hotel, 2020 Jefferson Davis Highway, on June 6, 2006.

1. Prior to this workshop, since May 20, 2006, I sent a number of emails (attached) to Dr. Nena Nwachuku to direct her to revise the charge to the experts based on the CCL workgroup comments. Since Dr. Nwachuku refused to respond to my emails or revise charge, Elizabeth Doyle (her supervisor) and Eric Burneson (Office of Ground Water and Drinking Water, OGWDW) revised it for her on May 30, 2006. Again, Dr. Nwachuku did not respond to my email of June 5, 2006 directing her to distribute this revised charge. In the same email, I directed her to bring copies of the charge to the Workshop on June 6, 2006.

2. In the morning of June 6, 2006 at 8:00 AM, I asked Dr. Nwachuku whether she brought copies of the revised charge to distribute it to the experts and other participants. She got very angry at me, as manifested by her loud voice and body language. She told me that she will never do such a thing. She insisted that there was nothing wrong with her charge. I told her that her charge was incomplete and misleading. Again, she repeated that there was nothing wrong with her charge.

3. I asked Elizabeth Doyle and Eric Burneson to join me in the hallway in front of the meeting room to give them a synopsis of my earlier discussion with Dr. Nwachuku and decide on next steps. Suddenly, I saw Dr. Nwachuku standing next to Dr. Doyle and shouting at her that she was responsible for creating all this problem. Dr. Doyle kept her composure and told Dr. Nwachuku that she was asked to send out the revised charge several times. Next, Dr. Nwachuku got very close (within a couple of inches) to Dr. Doyle and told her not say anything. At that time, I ordered Dr. Nwachuku to step back and lower her voice. Unfortunately, Dr. Nwachuku repeated the same unprofessional outburst a number of times throughout this conversation. She told us that Dr. Doyle was responsible for me asking her to distribute the revised charge. I told her that wasn't the case since I sent her a number of emails prior to this event.

4. Pamela Barr (Director, SRMD/OGWDW) just arrived and joined us. She told me that Dr. Nwachuku should distribute the revised charge or I have no choice by but canceling this review meeting. Dr. Nwachuku insisted that there was nothing wrong with the charge and that Dr. Doyle was instigating the whole thing. Eric Burneson confirmed that Dr. Nwachuku didn't address OGWDW's comments on the charge. Again, Dr, Nwachucu got very close to Dr. Doyle who asked me to tell Dr. Nwachuku to back off. I did tell her to do so. She took a couple of steps back with some reluctance.

1



5. Dr. Nwachuku's disturbing behavior and outbursts went on for another 5 minutes. I noticed that a number of the experts and other attendees were watching us and looked extremely surprised. It was obvious that Dr. Nwachuku's screaming got their attention too. At this juncture, I ordered Dr. Nwachuku that the meeting must go on and that the revised charge will be distributed to the panel members and participants. We all walked backed to the meeting room, and the meeting started.

4. This event was the most embarrassing experience since I have been in the Agency for the last 26 years.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on September 14, 2006.

Edward V. Ohanian, Ph.D.
Director
Health and Ecology Criteria Division
Office of Science and Technology
Office of Water

2

# EXHIBIT
# 62



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C. 20460



OFFICE OF
WATER

MEMORANDUM

SUBJECT:     Notice of Proposed Removal

FROM:        Elizabeth A. Doyle, Supervisory Biologist     *Elizabeth A. Doyle*

TO:          Nena Nwachuku, Environmental Scientist

DATE:        July 11, 2006

The purpose of this memorandum is to notify you that I am proposing that you be removed your position as Environmental Scientist, GS-1301-13, in the Human Risk Assessment Branch, Health and Ecological Criteria Division, Office of Science and Technology, Office of Water, U.S. Environmental Protection Agency (EPA or Agency). If approved, your removal will be effective no earlier than thirty (30) calendar days from the date you receive this notice. This action is being taken for reasons of misconduct pursuant to Title 5, United States Code, Chapter 75, and Title 5 of the Code of Federal Regulations, Part 752, in order to promote the efficiency of the Federal service.

**Factual Background**

At some time prior to the week of May 15, 2006, your HECD supervisors had assigned you to coordinate with colleagues in the Standards and Risk Management Division (SRMD) in order finalize the articulation of matters (i.e., the *charge*) to be addressed by the CCL expert panel. Because such panel would be disabled from convening until the finalization of the *charge,* and the CCL program is an OW priority, I had impressed upon you the necessity for prompt action.

I had asked you to finalize the *charge* and secure the endorsement of Edward Ohanian and me, in addition to Eric Burneson, Branch Chief Standards and Risk Assessment Management Branch, and Pamela Barr, Director of the (SRMD), from the Office of Ground Water and Drinking Water (OGWDW), by Friday May 19th.

At some time prior to the week of May 15th, you had asked me to honor your request to attend a professional conference in Orlando, Florida the week of May 22nd. However, on May

18th, when it became clear that you would not be able to finalize the *charge* and get the requisite supervisory sign-off's by no later than May 19th, I informed you that your request was denied.

I did so first via a May 18th e-mail, in which I noted (1) that the CCL expert panel meeting was imminent; (2) that a prerequisite for such meeting was a finalized *charge*; (3) that you had failed to complete such work; and (4) that it was essential for you to do so as early as possible the following week of May 22nd. I expressly stated in the e-mail that I was not authorizing your travel for the week of May 22nd and did not want you to incur costs.

Later on May 18th, I spoke to you in person and reiterated the instruction from my e-mail that I was denying your request to attend the Orlando conference, because of the need to finalize the *charge* as soon as possible. It was my expectation that you would complete the *charge* and secure the requisite supervisory endorsements early in the week of May 22nd.

Instead, on May 19th, you, without receiving any supervisory concurrence, submitted what you represented to be a finalized *charge*. Also on that day, you made an affirmative misrepresentation to the Agency's travel contractor, claiming that your TA was a work-in-process that would not be completed in advance of when you needed to acquire your airline tickets.

In reliance on your false statement, the travel contractor purchased you a round trip fare to Orlando, with the outbound flight departing Baltimore Washington International Airport (BWI) on May 22nd and the inbound flight returning to BWI on May 26th. Insofar as you had long previously had your Government-travel credit card revoked, the cost of the Orlando flights was billed directly to EPA.

You did not appear at work on Monday May 22nd, nor did you call in to advise your management as to your whereabouts. In your absence, it became incumbent upon Eric Burneson and me to massage the *charge,* insofar as it was our assessment that the work product that you had submitted on Friday May 19th was not acceptable.

You remained away from work all of the week of May 22nd, and at no time during that period did you ever contact me or anyone else in OST to inform the Agency of your absence from the office and/or the reasons for such absence.

During the week of May 22nd, I commenced inquiries and was able to determine that you had secured airline tickets to fly to Orlando. I surmised that, contrary to my unambiguous directives, you had flown to Florida, at Government expense, to attend the Orlando professional conference. You returned to work on May 30th, but you never spoke at all to anyone in your supervisory chain about your previous week's absence.

Upon your return to work on May 30, 2006, you filed a harassment complaint with the OST Office Director Ephraim King, alleging that I had confronted you on May 19th in a hostile way, including an offensive touching. However, when the HECD Deputy Division Director

Maria Gomez-Taylor interviewed you concerning this matter, you noted that the correct date was Thursday May 18th, that the incident had occurred late in the afternoon of the 18th.

Upon you return to work on May 30th, I instructed you to familiarize yourself with the proposed revised *charge* that Eric Burneson and I had drafted and to finalize the *charge* for distribution at the CCL panel meeting. Dr. Ohanian also directed you to do so.

On Tuesday June 6, 2006, the CCL work panel convened in a hotel conference room in Crystal City, Virginia in order to receive its *charge*. At such time you had a confrontational exchange with Mr. Ohanian, Mr. Burneson and me, in which you apparently opined that the original *charge* that you had submitted on May 19th was preferable to the one the Agency then proposed to distribute, which OW had developed subsequently without your input.

During this confrontation, you were very hostile, particularly towards me. You accused me of trying to sabotage your work and discredit you. You used an overtly antagonistic tone toward me, invaded my personal space gesturing and finger pointing in an aggressive and belligerent manner and verbally threaten me by saying "Just you wait. Brace yourself."

## BASIS FOR THE PROPOSED REMOVAL ACTION

### Charge I:        Failure to Follow Supervisors Instructions

Specification 1:  On May 18, 2006, I gave you a direct order to finalize the *charge*, including securing HECD and SRMD supervisory sign-off, at the earliest possible time during the week of May 22nd. I also informed you that I was not authorizing your travel to attend a professional conference in Orlando, Florida the week of May 22 –May 26, 2006, because of the critical importance of finalizing the charge so that it could be forwarded to the Panel. I informed you that we could reschedule the meeting early the week of May 22nd. However, you defied my instructions and deliberately chose to travel to the conference. You did not finalize the charge and secure HECD and SRMD supervisory sign-off as I had ordered. My instruction to you to finalize the *charge and secure HECD and SRMD supervisory sign-off* as early as possible during the week of May 22nd was a lawful order, which you had an obligation to follow.

Specification 2:  On May 30, 2006, I directed you to finalize, for the CCL Panel meeting, the *charge* that Eric Burneson and I had further developed in your absence; send the charge out no later than 4:00 pm on May 31, 2006; and to notify me, Edward Ohanian, Pam Bar, and Eric Burneson by e-mail as soon as this task was completed. However, you failed to do so, despite repeated communiqués from me specifically directing you to take such action. My order to you to continue to work on the *charge* was a legal one that you had no basis for ignoring.

Specification 3:  Once I appreciated that you were not complying with my *order* concerning finalization of the *charge,* I asked Dr. Ohanian to intervene. Dr. Ohanian also directed you to finalize and send the charge out no later than 4:00 pm on May 31, 2006 and to notify me, him, Pam Bar and Eric Burneston by e-mail as soon as this task was completed, but

3

you failed to follow his order as well, since you did not perform any additional work vis-à-vis the *charge,* beyond what you had accomplished prior to departing on your unauthorized travel to Orlando. Thus, you failed to follow your second-line supervisor Dr. Ohanian's, orders, as well.

### Charge II:    Absent Without Leave (AWOL)

It is incumbent upon an employee who is absent from work to have a legitimate reason for being so. It is also incumbent upon an absent employee to timely advise her supervisor of her absence, the reasons therefore, and of an anticipated time of return to duty.

Specification 1: You failed to report to duty at your EPA worksite as expected on Monday, May 22, 2006. You copied me on an e-mail sent on Friday, May 19, 2006, at 10:20 PM indicating that you would be at an annual meeting of the American Society for Microbiology (ASM) in Orlando the next week. However, I had clearly informed you both in writing and verbally on May 18th that your travel to the meeting in Orlando was not authorized. You had not requested nor been granted any leave. Your absence was not approved and you were charged 8 hours of AWOL.

Specification 2: You failed to report for duty at your EPA worksite as expected on May 23, 2006. I called the ASM message contact number and they indicated they would post a message on the message board used for attendees for you to contact me as soon as possible and return to the office immediately. However, you did not contact me. Your absence was not approved and you were charged 8 hours of AWOL.

Specification 3: You failed to report for duty at your EPA worksite as expected on May 24, 2006. You did not call or contact me. Alice Moss informed me that she had called you on your cell phone on May 24rd and informed you that I wanted to speak with you immediately, but you told her that you would only talk to her about your seat selection for our impending move. You did not call or contact me. Your absence was not approved and you were charged 8 hours of AWOL.

Specification 4: You failed to report for duty at your EPA worksite as expected on May 25, 2006. You did not call or contact me. Your absence was not approved and you were charged 8 hours of AWOL.

Specification 5: You failed to report for duty at your EPA worksite as expected on May 26, 2006. You did not call or contact me. Your absence was not approved and you were charged 8 hours of AWOL.

### Charge III:    Making a False Statement in a Matter within the Jurisdiction of a Federal Agency, in Violation of 18 U.S.C. Sec. 1001

Specification 1: On May 16, 2006, I advised you that I could not approve your travel

4

to Orlando until you had resolved the issues around the charge to the CCL panel. On May 18, 2006, I clearly notified you both in writing and verbally, that I was not authorizing your travel to Orlando as the issues had not been resolved and we needed to meet the week of May 22nd to resolve the issues and finalize the charge. I reminded you that you did not have authorization to travel on the government and that I did not want you to incur costs because I did not sign your travel authorization. However, on May 19, 2006, despite my instructions, you falsely told the Agency's travel contractor that your Travel Authorization (TA), authorizing your travel to Orlando, Florida on May 22 – May 26, 2006, was a work in progress. At the time that you made such representation, you had to know that it was false, because of my notification to you the previous day. Title 18, Section 1001, the False Statements Act, criminalizes such conduct, which clearly runs afoul of EPA's Conduct and Discipline Order, as well.

### Charge IV:     Making/Causing to be Made a False Claim Against the Federal Government in Violation of 18 U.S.C. Sec. 287

Specification 1:  On May 19, 2006, when you contacted the Agency's travel contractor to make your travel reservations to Orlando, Florida, you were aware that some entity other than yourself would be required to absorb such expense. You were also aware that you did not possess a Government travel credit card against which the price of the air fare could be charged. Insofar as your supervisor notified you that you were not authorized to travel to Orlando, Florida to attend the professional conference, you also had to understand that none of the costs associated with your attendance at that conference were to be borne by other than yourself. Yet, you knowingly provided false information about your travel authorization to the travel contractor so that airline tickets would be purchased for your use, to be paid for by either the travel contractor or EPA. Ultimately, your dishonesty and misrepresentation to the travel contractor caused a false claim to be filed against the Agency, because the price of airline tickets acquired in furtherance of your personal prerogative ended up being charged against EPA. Title 18, Section 287, the False Claims Act, criminalizes such conduct, which clearly runs afoul of EPA's Conduct and Discipline Order, as well.

### Charge V:     Making an Unfounded Accusation Against Your Immediate Supervisor

Specification 1:  Upon your return to work on May 30, 2006, you filed a harassment complaint with the OST Office Director Ephraim King, alleging that I had confronted you on May 19, 2006, which you later corrected to May 18th, in a hostile way, including an offensive touching. Upon receipt of your May 30th written complaint, Mr. King immediately assigned Maria Gomez-Taylor, the HECD Deputy Division Director, the responsibility to investigate the matter.

Ms. Gomez-Taylor's investigation revealed that no such incident as you have claimed to have occurred happened, because a witness to the May 18, 2006, interaction between you and me

has confirmed that nothing untoward transpired and that I behaved at all times in a professional and courteous manner. It is clear that your complaint to Mr. King was a knowingly false one.

**Charge 6:** **Disrespectful Conduct Toward Your Supervisory Chain and OW Management Outside of Your Office**

<u>Specification 1</u>: On the morning of May 6, 2006, you had a hostile confrontation with Edward Ohanian, Eric Burneson, Pamela Barr and me, concerning the adequacy of the *charge* to be presented to the then in attendance CCL Panel. You took violent exception with the managerial consensus that the *charge* that you had submitted on May 19, 2006 was inadequate and that a revised version developed principally by Mr. Burneson and me was a superior work product.

You made inflammatory accusations that I had acted to undermine your credibility and jeopardize your career, and despite Mr. Burneson's assurances that it was at his and not at my insistence that your *charge* was revised, you persisted in claiming that I had dedicated myself to persecuting you. You spoke loudly and aggressively, thrust you finger in front of my face and said "No, don't you say anything!" each time I attempted to speak. The volume of your antagonism caught the attention of the CCL Panel, a number of whom felt compelled to peer outside their conference room to discern the nature of the disruption. In addition, upon our return to the meeting room you said "Just you wait. Brace yourself" in a threatening manner.

### Consideration of the Douglas Factors

#### A. Seriousness of Offense

With respect to the nature and seriousness of your offenses, I would characterize, your actions in providing the false information in order to procure airline tickets as conduct which is generally criminal, infamous, dishonest, immoral and notoriously disgraceful. Also, making false accusations against your supervisor is equally egregious. No EPA employee is entitled to make knowingly false accusations against a co-worker, supervisor, subordinate or government official. Such disreputable conduct disrupts morale and imposes an undue economic burden upon the Agency, as scarce resources must be diverted from environmental protection to the investigation of unfounded charges. That all of your misconduct was intentional and indisputably self-serving only further intensifies its seriousness. In addition, your disruptive conduct on June 6, 2006, where you accused me of some nefarious agenda, questioned Eric Burneson's and my integrity and doing so in a manner a loud, disrespectful, intimidating and disruptive manner, that allowed the CCL Panel, individuals external to EPA, to be privy to such a spectacle shows the most serious want of restraint and professionalism. As concerns this Douglas Factor, I find that this factor weighs heavily in favor of the most severe sanction.

6

**B.    Offender's Job Level**

With respect to your job level and type of employment, I would note that you are in a prominent position as a senior environmental scientist, one whose position involves substantial public contact. In that regard, I find that your exposing the CCL Panel to your unprofessional and disrespectful tirade against management and other Agency professionals with an integral involvement in the Panel's responsibilities shows exceptionally poor judgment and a shocking insensitivity to the principal of professional comity. In addition as an EPA employee you are in a position of public service which a public trust. You are expected to be trustworthy and responsible. Your misconduct involving your travel; your false accusations against me and your failure to follow supervisory instructions has caused a serious breach of trust. In my opinion, the second Douglas Factor also weighs in favor of severity

**C.    Past Disciplinary Record**

While I recognize that you have not previously been disciplined for any misconduct, I am aware that you have been counseled on several occasions regarding your inappropriate behavior and inability or unwillingness to work in cooperation with your supervisors, co-workers and customers.

**D.    Past Work Record**

With respect to your past work record, I understand that you have had a stormy run during your approximately eight years at EPA. Your tenure has been marked by complaints from customers and co-workers concerning your inability or willingness to effectively interact with your colleagues, a number of whom have felt compelled to abandon HECD in order to minimize their contact with you. In fact, over the course of your EPA career, it is my understanding that you have offended colleagues in the Division, in OST, in the Office of Water, in the Agency at large, and in the contractor community. Sowing such antagonism clearly is inimical to the Agency mission and compromises your dependability and job performance. Thus, I find that, as concerns the Douglas Factor of your past work record, such factor weighs very heavily in favor of a more extreme penalty.

**E.    Effect of Offense on Supervisors' Confidence**

With regard to the effect of your offenses have on your supervisors' confidence in your ability to perform assigned duties. Your willful disregard in following your supervisors instructions, your disrespectful and intimating behavior, poor judgment and your lack of candor in regards to your travel, in addition to your false accusations against me have caused your supervisors to lose trust and confidence in your ability and/or willingness to carry out the duties and responsibilities of your position in and effective and productive manner. I can hardly imagine misbehavior that could have had a greater adverse impact on your supervisors' confidence. Consequently, with respect to this Douglas Factor, again it weighs strongly in favor of more severity.

F.    **Consistency of Penalty in Practice**

Because I am unaware of any misconduct by an employee either in my chain of command or even in the Agency that remotely approaches the level of seriousness as yours, I cannot make any judgment as to the consistency of the actual penalties imposed in comparable cases. In my personal experience, there exist no comparable cases. I have been advised, however, by those in the Office of General Counsel and the Office of Human Resources having the requisite expertise, that Agency employees who have committed less serious offenses have been terminated

G.    **Consistency of Penalty with Applicable Table of Penalties**

With respect to the consistency of a removal sanction with the Agency's applicable Table of Penalties, I know that removal is an appropriate penalty for a first offense that is generally criminal, infamous, dishonest, immoral, or notoriously disgraceful. Having already noted my assessment that your conduct satisfies this standard, I find that your removal would be consistent with the governing EPA regulations/guidance.

In addition, I would note that the Table of Penalties recognizes that a 14-day suspension would be appropriate for a first offense of insubordination or the failure to comply with a proper order and that removal is recognized as an appropriate sanction for a second and third such offense. Furthermore, for an AWOL offense of more than five (5) consecutive work days, removal is expressly authorized, irrespective of whether or not it is a first time offense. Thus, as concerns this Douglas Factor, I find that your removal would be consistent with EPA's Table of Penalties.

H.    **Notoriety of the Offense**

The fact of your unauthorized trip is a matter of substantial notoriety among OW's management team, insofar as your conduct was so unprecedented and occasioned much speculation and discussion. Furthermore, given nature of the workplace and the inevitable spread of titillating news, it is fair to say that knowledge of your misconduct vis-à-vis your Orlando travels is now widespread. This type of incident, despite management's sincere efforts to limit dissemination, is guaranteed to generate significant "publicity."

Because such misconduct clearly qualifies as egregious, I feel that this Douglas Factor also weighs strongly in favor of an extreme sanction.

I.    **Notice of the Impropriety of the Conduct**

With respect to the travel matter, it is inconceivable to me that a reasonable person could not appreciate the wrongfulness of your behavior.

Raising knowingly untrue accusations about your supervisor also impresses me as

8

conduct of whose illegitimacy you should have been acutely aware.

Furthermore, as a reasonably long-tenured Federal employee, you must have recognized that being AWOL for an extended period of time was inappropriate and that blatantly disregarding a supervisor's lawful orders also constituted sanctionable conduct.

Thus, I conclude that you had more than adequate notice of the impropriety of your conduct, and that, with respect to this Douglas Factor, again more severity is warranted.

### J.    Rehabilitation Potential

In light of your egregious misconduct and your inability and/or unwillingness to get along with your supervisors and co-workers, I cannot see that you possess rehabilitative potential.

In fact, it is abundantly clear to me that, as long as you remain in OW, your value to EPA will continue to decline and your disruptive influence will continue to increase, unduly compromising OST's, and in particular HECD's ability to recruit and retain quality personnel. Therefore, I find that this Douglas Factor also weighs heavily in favor of a more severe penalty.

### K.    Mitigating Circumstances

I did not find any mitigating circumstances surrounding this offense, I have taken into consideration that you are a career employee with over 8 years of EPA service, but your length of service is offset by your egregious misconduct.

### L.    Adequacy of Alternative Sanctions for Deterrence

In light of the weight of the previous Douglas Factors, all of which favored severity, I cannot find that any sanction short of removal will serve the Government's interest or deter you from behaving in a manner inimical to such interest. Thus, with respect to this Douglas Factor, I find that removal is the sole purposeful penalty.

## CONCLUSION

Based on the information provided above, I am proposing your removal from the Federal service to promote the efficiency of the service.

You have a right to reply to this proposed notice wither orally, in writing, or both orally and in writing within fourteen (14) calendar days from the date you receive this notice. If you elect to answer in writing your reply should be directed to Ephraim King, Director, Office of Science and Technology, U. S. EPA Headquarters, Ariel Rios Building, 1200 Pennsylvania, Avenue N. W. Mail Code 4301T, Washington, D.C. 20004. You should call Yvonne Turner at 202-566-0430 if you wish to make arrangements for an oral reply. You may also submit

affidavits in support of your reply.

The material that I relied upon in proposing your removal is attached. You may have a representative of your choice to assist you if you desire. If you choose to retain a representative, you must file a written statement to the Decision Official, Ephraim King, indicating the name, title (if any) and address of your representative. You and your representative are assured freedom from restraint, interference, coercion, discrimination or reprisal.

You will receive reasonable time to prepare your reply in accordance with the terms of Article 6 of the Collective Bargaining Agreement between EPA and NTEU. The Deciding Official will fully consider any timely response you submit before he issues a final written decision. As soon as possible after he receives your response, or after the expiration of the 14-day limit if you do not respond, the deciding official will issue a final decision concerning the proposed action.

If you and/or your representative have any questions concerning the process or procedures, please contact Diane Wright, Human Resources Specialist, Office of Human Resources: Las Vegas, at (702) 798-2424.

You are requested to sign and date the acknowledgement copy of this memorandum as evidence that you have received it. Your signature does not mean that you agree or disagree with the contents of the memorandum, and by signing you will not forfeit any of the rights mentioned. However, your failure to sign will not void the contents of this memorandum.

_____    _____
Signature                  Date

Diane

In order for me to deliver this memorandum to Nena, I sent her 2 emails* and 1 calendar** entry requesting a meeting on: 1) July 12 at 5PM and 2) July 13 at 11:30 AM. Nena hasn't responded to my requests. Thank you.

_Edward V. Ohanian_  7/13/06; 1:57 PM
Edward V. Ohanian

_Maria Gomez-Taylor_  7/13/06; 1:58 P.M.
MARIA GOMEZ-TAYLOR
WITNESS

10

* attachment 1 and 1a
** attachment 2

Attachment 1



**Edward**
**Ohanian/DC/USEPA/US**
07/12/2006 04:57 PM

To   Nena Nwachuku/DC/USEPA/US@EPA

cc

bcc

Subject   Re: general meeting at 5pm?

Nena,
I would like to meet with you in Rm: 7303 EPA West at 5:00 PM today. You are allowed to bring your witness. Thanks, Ed

_____

Edward V. Ohanian, Ph.D., Director
Health and Ecological Criteria Division (MC: 4304T)
Office of Science and Technology/Office of Water
(202) 566-1117 (Voice)
(202) 566-1139 (Fax)
http://epa.gov/waterscience/

Mailing Address:
U.S. Environmental Protection Agency
Connecting Wing/EPA West (MC: 4304T)
Rm: 7231A
1200 Pennsylvania Avenue, NW
Washington, DC  20460

Address for Visitors and Deliveries:
1201 Constitution Avenue, NW
EPA West, 7th Floor, Rm: 7231A
Washington, DC  20004

Nena Nwachuku/DC/USEPA/US



**Nena**
**Nwachuku/DC/USEPA/US**
07/12/2006 03:16 PM

To   Edward Ohanian/DC/USEPA/US@EPA

cc

Subject   general meeting at 5pm?

Ed,
I was carrying my lunch when I saw you in the hallway at 12.15 and was calling your name for the 15 minute but you left very quickly. I went straight to Maria to ask her what it was about and she said you would tell me. I don't understand why Maria has to be in a general meeting with me if you want to talk to me. If she is coming as management witness, I will like to bring a witness if you don't mind. I rescheduled for 1pm but you were not here. I am heading to Ronald Reagan building and will be available at 5pm. I don't feel well and will leave at 5.30pm. Thanks.

11

---Nena.
Nena Nwachuku, Ph.D.
U.S. Environmental Protection Agency
Office of Water, Mail Code 4304T
Office of Science and Technology
1200 Pennsylvania Ave. NW.
Washington, DC. 20460
Ph: 202-566-1116  Fax: 202-566-1139
nwachuku.nena@epa.gov

Attachment 1a



Edward
Ohanian/DC/USEPA/US

07/13/2006 07:49 AM

To   Nena Nwachuku/DC/USEPA/US@EPA

cc   Diane Wright/LV/USEPA/US@EPA,
gomez-taylor.maria@epa.gov

bcc

Subject   URGENT: Mandatory Meeting Request: July 13, 2006

Nena,
Since you did not attend the meeting yesterday at 5:00 PM, I am rescheduling it for today at **11:30 AM in Room 7303** EPA West. As your Division Director, I am directing you to attend this **mandatory meeting**. Also, per your earlier request of July 12, you are allowed to bring a witness with you. The specific role of our respective witnesses is to witness that: (1) I delivered you a memorandum plus attachments and (2) you signing and dating the acknowledgement copy of this memorandum as evidence that you have received it. Your signature does not mean that you agree or disagree with the contents of the memorandum, and by signing you will not forfeit any of the rights mentioned. I am also going to send you a calendar entry regarding this meeting. I am looking forward to seeing you today at 11:30 AM.  Thank you.

Edward V. Ohanian, Ph.D., Director
Health and Ecological Criteria Division  (MC: 4304T)
Office of Science and Technology/Office of Water
(202) 566-1117 (Voice)
(202) 566-1139 (Fax)
http://epa.gov/waterscience/

Mailing Address:
U.S. Environmental Protection Agency
Connecting Wing/EPA West (MC: 4304T)
Rm: 7231A
1200 Pennsylvania Avenue, NW
Washington, DC  20460

Address for Visitors and Deliveries:
1201 Constitution Avenue, NW
EPA West, 7th Floor, Rm: 7231A
Washington, DC  20004

13

Attachment 2

Calendar Entry
## Meeting

☐ Notify me
☐ Mark Private     ☐ Pencil In

| Subject | General Discussion | Chair | Edward Ohanian/DC/USEPA/US |
|---|---|---|---|

| When | Starts   Thu 07/13/2006      11:30 AM      15 mins <br> Ends    Thu 07/13/2006      11:45 AM <br> ☐ Specify a different time zone | Where | Location <br> **Reserved**   The following have b <br> Rooms        7303-OST Conferer <br> Room/DC-CCW-OS |
|---|---|---|---|

| Invitees | **Invited**        The following invitees have been invited <br> Required (to)   gomez-taylor.maria@epa.gov, Nena Nwachuku/DC/USEPA/US@EPA | Categorize | |
|---|---|---|---|

| Scheduler | 📖▶  Click to see Invitee status |
|---|---|

| Description | |
|---|---|

14

Status

Invitees

| | |
|---|---|
| Edward Ohanian/DC/USEPA/US | Accepted |
| Required | |
| gomez-taylor.maria | No response |
| Nena Nwachuku/DC/USEPA/US | No response |
| Unknown | |
| Maria Gomez-Taylor/DC/USEP/ | Accepted |

Status

Scheduled Rooms

| | |
|---|---|
| 7303-OST Conference Room/DC-C | Accepted |

Status

Scheduled Resources

Print | Close

15

## Supporting Documents Provided In This Package

E. Doyle to N. Nwachuku, 05/15/2006 09:05 AM, Re: Do you have any comments?

E. Doyle to N. Nwachuku, 05/15/2006 02:42 PM, Travel to Orlando

E. Ohanian to E. Doyle, 05/17/2006 11:45 AM, Re:  Charge to CCL Expert Panel - Your Input Is Requested

E. Doyle to N. Nwachuku, 05/17/2006 02:29 PM, Resolution of charge issues with OGWDW

E. Ohanian to N. Nwachuku, 05/18/2006 07:22 AM, Re: Workgroup revised charge and agenda for review

E. Doyle to N. Nwachuku, 05/18/2006 01:42 PM, CCL Expert Panel Charge

E. Ohanian to E. Doyle, 05/18/2006 05:02 PM, Re: CCL Expert Panel Charge

E. Ohanian to N. Nwachuku, 05/20/2006 11:39 AM, Re: Final Agenda, charge, list of experts and EPA observers

Steps Taken by Elizabeth Doyle to Contact Nena Nwachuku During Her Absence From Work From May 22 Through May 26, 2006

S. Williams to E.Doyle, 05/22/2006 03:54 PM, Travel NWACHUKU

E. Doyle to N. Nwachuku, 05/23/2006 09:21 AM, URGENT - Travel Status

E. Doyle to N. Nwachuku, 05/30/2006 12:50 PM, Distribution of Revised Charge for CCL Expert  Panel to Panelists

S. Williams to E.Doyle, 05/30/2006 12:56 PM, Fw: Electronic ticket receipt duplicate copy, May 20 for NWACHUKU

E. Ohanian to E. Doyle, 06/01/2006 03:15 PM, Re: CCL Charge

E. Ohanian to N. Nwachuku, 06/05/2006 11:47 AM, Fw: CCL Expert Panel Charge and Presentation

E. Ohanian to N. Nwachuku, 06/05/2006 05:37 PM, Fw: CCL Expert Panel Charge and Presentation

Account of June 6, 2006 Exchange with Nena Nwachuku by Elizabeth Doyle

E. Doyle to N. Nwachuku, 06/20/2006 03:07 PM, Attendance Issue

A. Moss to E. Doyle, 06/21/2006 04:32 PM, [No subject]

E. Doyle to N. Nwachuku, 06/30/2006 07:07 PM, Re: Retaliation/Adverse action against N. Nwachuku by Elizabeth Doyle with EPA's authority

17

# EXHIBIT 63

 Elizabeth
Doyle/DC/USEPA/US

05/23/2006 09:21 AM

To    Nena Nwachuku/DC/USEPA/US@EPA

cc

bcc

Subject    URGENT - Travel Status

Nena,

You are currently on unauthorized travel.  You are directed to return to the office immediately.  Contact me as soon as possible.

Beth



# EXHIBIT
# 64

## Declaration of Alice Moss

I, Alice Moss, make the following statement, with knowledge that any material false representation on my part, would subject me to a charge of perjury.

1.    I presently serve in an administrative capacity in the Health and Ecology Criteria Division (HECD) in the Office of Science and Technology (OST). I have served in this capacity, since March 1998.

2.    I have known Nena Nwachuku, a microbiologist in HECD, since the time she joined the Division, insofar as I had already been employed by HECD for some time when Dr. Nwachuku was hired and our HECD tenures have overlapped since then.

3.    During the week of May 22, 2006, I knew that Dr. Nwachuku was not in the office because she asked me to be her proxy for our office-space selection process and left me her cell phone number to get in touch with her when it was time for her to select her cubicle.

4.    Dr. Doyle was acting as the seat selection manager; and informed me during that time that Dr. Nwachuku had not responded to voice mails or e-mails; and that Dr. Doyle, her immediate supervisor, wanted to speak to her urgently.

4.    Incident to her interest in speaking to Dr. Nwachuku, Dr. Doyle asked me if I had a cell phone number at which Dr. Nwachuku could be reached. I advised Dr. Doyle that I did, but that it was my understanding that it was Dr. Nwachuku's privately owned phone, not a Government issue; and that I would not be comfortable releasing the number without Dr. Nwachuku's authorization.

5.    Dr. Doyle instructed me to call Dr. Nwachuku on her cell phone and to inform her to call Dr. Doyle immediately. I was able to contact Dr. Nwachuku on Wednesday May 24, 2006 (the day of our seat selection process), when I spoke to her personally and advised her of her need to call Dr. Doyle as soon as possible. Dr. Nwachuku told me that "this call was not about that", other than in connection with the then ongoing office-space selection matter.

6.    I relayed Dr. Nwachuku's message to Dr. Doyle, who asked me to prepare a written memorialization of my exchange with Dr. Nwachuku. I did so, and sent such memo to Dr. Doyle in an e-mail.

7.    At the time that I made the call May 24th call to Dr. Nwachuku, a coworker, Arlene Plunkett, was next to me and overheard my conversation asking Dr. Nwachuku to call Dr. Doyle ASAP. Once she responded, "this call was not about that", I proceeded with the ongoing office space selection matter.



Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on November 9, 2006.

Alice Moss
Health and Ecology Criteria Division
Office of Science and Technology

2