UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NENA NWACHUKU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Case No. 06-0946 (RJL) |
| | ) |
| STEPHEN L. JOHNSON, Administrator, | ) |
| U.S. Environmental Protection Agency, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## REPLY IN FURTHER SUPPORT OF DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Defendant Stephen L. Johnson ("Defendant"), Administrator, United States Environmental Protection Agency ("Agency" or "EPA"), by and through his undersigned counsel, respectfully submits this Reply in further support of his Motion for Summary Judgment ("Motion"). For the reasons stated below and those set forth in Defendant's Memorandum of Points and Authorities in Support of his Motion ("Opening Brief"), the Court should enter summary judgment in Defendant's favor on the totality of Plaintiff's claims.[1]

## PRELIMINARY STATEMENT

Despite its length, nowhere in Plaintiff's brontosaurus-sized submission does Plaintiff articulate a genuine issue of material fact that would prevent the Court from entering summary judgment in Defendant's favor. That is, instead of addressing Defendant's irrefutable arguments head on, Plaintiff interposes several straw-man and immaterial arguments in an attempt to

---

[1]  Unless otherwise noted, defined terms used herein are intended to have the same meaning as those used in Defendant's Opening Brief. Further, for the avoidance of confusion, Defendant will use the following prefixes to refer to exhibits in the record (a) "Mot. Ex." refers to exhibits submitted with Defendant's Motion; (b) "Opp. Ex." refers to exhibits submitted with Plaintiff's Opposition; and (c) "Reply Ex." refers to exhibits submitted with this Reply.

obfuscate the bases for Defendant's Motion.  The Court should not be distracted by these irrelevant arguments or the size of Plaintiff's submission.  Quite simply, Plaintiff has failed to show that Defendant's reasons for not promoting or terminating her were somehow pretextual for racial discrimination or retaliation, respectively.  Plaintiff further has failed to cite any other evidence upon which a reasonable juror could conclude that Plaintiff was discriminated against based upon her race and/or national origin, or retaliated against for her protected activity.  In sum, Plaintiff was treated the same as all other GS-13 scientists in HECD during the 2003 accretion of duties promotional process, and was terminated from the Agency based upon Mr. King's sincere and reasonable belief that she had committed intentional and severe misconduct in her position.  That is, there are no material questions of fact for a jury to decide and judgment in Defendant's favor is proper as a matter of law.

*First*, based upon Plaintiff's Opposition, it appears that Plaintiff has abandoned all claims except for (a) a claim of racial discrimination regarding her non-selection for an accretion of duties promotion in 2003; and (b) a claim of retaliation regarding her termination in 2006.  The Court need not look past the headings in Plaintiff's Argument to reach this conclusion.  *See* Opp. at ii-iii.  Accordingly, Plaintiff concedes that summary judgment is proper on all other claims, to the extent her complaint could be read to assert them.[2]

*Second*, Plaintiff has failed to establish that Defendant's reasons for not promoting her through an accretion of duties promotion were somehow pretextual, or to point to any other evidence upon which a reasonable juror could conclude that she was not promoted based upon

---

[2]     Indeed, Plaintiff's Opposition confirms that Plaintiff does not assert a hostile work environment claim.  *See* Open. Br. at 3, n.2.  Moreover, such a claim is not viable for the reasons set forth in Defendant's Opening Brief (*see* Open. Br. at 40-43), which Plaintiff does not dispute in her Opposition.  *See United States v. Real Property Identified as: Parcel 03179-005R*, 287 F. Supp. 2d 45, 61 (D.D.C. 2003) (Walton, J.) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion [ ] addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (internal quotations omitted).

her race or national origin.  As Defendant showed in his Opening Brief, Mr. Zarba (Plaintiff's then second-line supervisor) did not recommend, and Mr. Grubbs (Plaintiff's then third-line supervisor) did not select, any GS-13 scientists within HECD (Plaintiff's division) for an accretion of duties promotion in 2003.  *See* Open. Br. at 15.  Further, as Defendant showed in his Opening Brief, even if Mr. Zarba were to have recommended one or more GS-13 scientists, he would not have recommended Plaintiff due to well documented deficiencies in her interpersonal skills.  *See* Open. Br. at 16-17.

Apparently recognizing her inability to refute these well founded arguments, Plaintiff attempts to construct straw-man arguments to distract the Court, namely (a) that the process utilized by Mr. Grubbs for the 2003 accretion of duties promotions somehow violated the Agency's policy on promotions and selections; and (b) that her technical abilities qualified her for an accretion of duties promotion.  These arguments, however, are incorrect and immaterial. None of the policies identified by Plaintiff were violated by the process Mr. Grubbs employed in identifying the OST employees who were qualified for accretion of duties promotions. Moreover, even if the process was somehow deficient, Plaintiff has failed to adduce any evidence that the process intentionally discriminated against her based upon her race or national origin.  Again, all GS-13 scientists in HECD (all of which were supervised by Mr. Zarba) were treated identically in the selection process, regardless of their race or national origin.  Moreover, the selection process resulted in selecting an African-American female (who held a non-scientific position outside of HECD).[3]

---

[3]    In passing, Plaintiff also slanderously asserts that there is evidence that Mr. Zarba is biased against Plaintiff based upon her national origin.  *See* Opp. at 35.  As noted below, this spurious, unfounded assertion is based solely upon a gross and purposeful distortion of Mr. Zarba's testimony at the administrative hearing that preceded this action, and has absolutely no merit.

Further, Plaintiff's technical and scientific qualifications for a GS-13 or GS-14 position are irrelevant to this matter. Plaintiff was not promoted based upon defects in her interpersonal skills and her inability to interact professionally and politely with co-workers and supervisors in HECD and OST. *See* Open. Br. 16-17. Plaintiff's scientific acumen and accomplishments were not the bases for her non-selection and, thus, are irrelevant to this matter.

*Third, and lastly*, Plaintiff has failed to show that Mr. King's decision to terminate Plaintiff was somehow retaliatory. In her Opposition, Plaintiff sets forth the same arguments that she and her attorneys presented to Mr. King when responding to the Proposed Removal -- *i.e.*, arguments that Plaintiff did not commit any misconduct. As Defendant noted in his Opening Brief, however, Mr. King heard, considered and reviewed Plaintiff's arguments before making his decision to terminate Plaintiff. *See* Open. Br. at 33. Indeed, Mr. King (whom Plaintiff had never previously complained about in any EEO complaints) provided Plaintiff the opportunity to present an oral and written reply to the Proposed Removal and to respond to certain additional evidence that was presented to Mr. King before he made his decision. After evaluating all the evidence, Mr. King rejected Plaintiff's arguments because, in his mind, the overwhelming evidence showed that Plaintiff had indeed committed numerous acts of misconduct. Notably, in her submission to Mr. King, Plaintiff did not attempt to dispute that the plethora of documentary evidence provided by Plaintiff's supervisors identified numerous directions and orders with which Plaintiff did not comply, and instead unpersuasively argued that she did not read or review such materials. Although Plaintiff now reiterates her disagreement with Mr. King's decision and these same arguments, Plaintiff has identified no evidence that could tend to show that Mr. King's decision was based on anything other than his sincere, reasonable and well supported belief that Plaintiff had committed misconduct.

Again apparently recognizing the weaknesses in her position, Plaintiff interposes irrelevant and unsupported arguments in a desperate attempt to find something upon which to base a claim of retaliation, namely (a) that a year before her termination Drs. Doyle and Ohanian recruited Dr. Faison to gather information to fire her; (b) that Mr. King's investigation was somehow retaliatory; and (c) that she engaged in protected activity in close proximity to Mr. King's Removal Decision.  These arguments, however, are unsupported and simply immaterial to this Motion.  That is, these arguments (even if they were supported by some evidence -- which they are not) do not impugn or otherwise question Mr. King's reasonable and sincere belief that Plaintiff committed misconduct.

Accordingly, the Court should enter summary judgment in Defendant's favor on Plaintiff's claims.

## **ARGUMENT**

**I.     PLAINTIFF HAS FAILED TO ESTABLISH ANY GENUINE ISSUE OF MATERIAL FACT THAT WOULD PREVENT SUMMARY JUDGMENT ON PLAINTIFF'S DISCRIMINATION CLAIM REGARDING HER NON-SELECTION.**

Plaintiff has failed to show that her race or national origin played any role in her non-selection for an accretion of duties promotion in 2003.

### **A.     Plaintiff Has Failed to Show that Mr. Zarba's Reason for Not Recommending Plaintiff for an Accretion of Duties Promotion Was Insincere, Unreasonable, or Pretextual.**

As Mr. Zarba has repeatedly stated, although Plaintiff was deficient in other areas as well, Mr. Zarba believed that Plaintiff was not a candidate for an accretion of duties promotion "primarily in light of her difficulty working acceptably with others."  *See* Zarba EEO Decl. at ¶ 9, Mot. Ex. 15; Zarba ROI Decl. at ¶ 6, Mot. Ex. 24; Zarba Dep. Tr. at 57-58, Reply Ex. D. Indeed, Mr. Zarba stated that "[i]t is crucial for an OST GS-14 to work collaboratively across a

broad spectrum of disciplines, to foster good will with colleagues / professionals inside and outside of her office and the EPA, and to be diplomatic and tactful in her professional dealings. My personal observation of Dr. Nwachuku and feedback that I received from those with whom she worked persuaded me that she did not possess these requisite attributes." *See id.* Mr. Zarba's belief is corroborated by the testimony of Plaintiff's other supervisors, who all have stated that Plaintiff had significant problems interacting with others in a professional and polite manner. *See* Schoeny EEO Decl. at ¶¶ 5-11, Mot. Ex. 26; Maciorowski EEO Decl. at ¶¶ 4-8, Mot. Ex. 22; Ohanian EEO Decl. at ¶ 8, Mot. Ex. 35; Grubbs EEO Decl. at 4-5, Mot. Ex. 19. Moreover, throughout her time at EPA numerous OST and HECD employees complained to Plaintiff's supervisors about her behavior. See Ohanian Dep. Tr. at 66-69, Mot. Ex. 5; Doyle Dep. Tr. at 67-69, Mot. Ex. 12; Zarba Dep. Tr. at 37-41, Mot. Ex. 4.[4]

Plaintiff simply does not challenge this undisputable evidence. Rather, Plaintiff argues (a) that Ms. Williams-Bower and Mr. Johnston (the individuals in OST that were given accretion of duties promotions at the time) were not performing at a GS-14 level (*see* Opp. at 28-31); (b) that Plaintiff's managers had praised her on her technical and scientific abilities (*see* Opp. at 31-35); and (c) that Plaintiff had good working relationships with three individuals outside of HECD and OST (the division and office in which Plaintiff worked) (*see* Opp. at 6-7).[5] These arguments, however, are meritless and insufficient to defeat Defendant's motion for summary judgment.

---

[4]     Plaintiff purports to dispute these facts in Plaintiff's Statement of Genuine Issues ("Plaintiff's Statement"), but cites no evidence in support of her contention. That is, Plaintiff cites no evidence in which her supervisors ever praised Plaintiff for her interpersonal skills, or where employees that complained about Plaintiff recanted their complaints. *See* Pl's Stmt. at 49-53. Instead, Plaintiff interposes the collateral, immaterial arguments as summarized herein.

[5]     One of whom, Brenda Mosley, was the "friend" to whom Plaintiff subsequently forwarded certain emails containing directions from Dr. Doyle regarding the Charge and informing Plaintiff that she was not authorized to attend the 2006 ASM conference. *See* Open Br. at 20, n.11, 21-22.

1.    **Plaintiff's Arguments Regarding Ms. Williams-Bower and Mr. Johnston are Meritless.**

Plaintiff attempts to denigrate and challenge the qualifications of Ms. Williams-Bower and Mr. Johnston for GS-14 positions in a misguided attempt to show that her non-selection was pretextual. *See* Opp. at 28-31. This argument, however, is simply meritless. Plaintiff does not dispute that Ms. Williams-Bower and Mr. Johnston held different non-scientific positions in different divisions within OST and were supervised by different first-line supervisors. *See* Defendant's Statement of Undisputed Facts submitted with his Motion ("Def's Stmt.") at ¶¶ 61-62, 65-66; Defendant's Response to Pl's Stmt. submitted herewith ("Def's Reply Stmt.") at 13. Accordingly, Ms. Williams-Bower and Mr. Johnston are not similarly situated to Plaintiff and cannot be used as comparables to show pretext.

Indeed, this case is nearly identical to *Montgomery v. Chao*, 495 F. Supp. 2d 2, 13-14 (D.D.C. 2007) (Urbina, J.), in this regard. In *Montgomery*, Judge Urbina granted defendant's motion for summary judgment on plaintiff's discrimination claims, which were premised upon defendant's alleged failure to promote plaintiff through an accretion of duties. *Id.* In so deciding, Judge Urbina concluded that although certain other employees had received accretion of duties promotions, those employees held different positions and served in different divisions than plaintiff, and thus, were not similarly situated to plaintiff. *Id.* Accordingly, Judge Urbina concluded that plaintiff in *Montgomery* could not show pretext. *Id.*

Further, the D.C. Circuit encountered a similar situation in *Barbour v. Browner*, 181 F.3d 1342, 1345-47 (D.C. Cir. 1999), and reached a similar result. *See id.* In *Barbour*, plaintiff (an EPA employee) asserted a claim of race discrimination alleging that she had not been granted an accretion of duties promotion while another EPA employee within her division had been given such a promotion. *Id.* at 1346. The D.C. Circuit concluded that although plaintiff and the other

employee were in the same division and shared some common duties, the other employee's duties were sufficiently different than plaintiff's duties. *Id.* at 1345. Accordingly, the D.C. Circuit held that plaintiff and the other employee were not similarly situated and that plaintiff had failed to establish any inference of discrimination. *Id.* at 1347 ("[Plaintiff's] sole affirmative evidence of bias is the apples-and-oranges comparison she draws between herself and [the other EPA employee], which we rejected above.").

Accordingly, the comparative qualifications of Ms. Williams-Bower and Mr. Johnston are immaterial to Plaintiff's claims. *See also Hammond v. Chao*, 383 F. Supp. 2d 47, 57 (D.D.C. 2005) (Bates, J.) ("A plaintiff has a duty to put forth evidence of discrimination, not to quibble about the candidates' relative qualifications.").

### 2.    Plaintiff's Scientific Acumen and Accomplishments Are Irrelevant.

Plaintiff further argues that she was qualified for a GS-14 position because of her scientific and technical accomplishments and acumen. Plaintiff contends that based upon these qualifications, a reasonable juror could conclude that Mr. Zarba's stated reasons for not recommending Plaintiff for an accretion of duties promotion were pretextual. *See* Opp. at 31-35. Plaintiff's argument, however, is immaterial.

Although Mr. Zarba had certain concerns about the timeliness and quality of Plaintiff's written work, it is undisputed that Mr. Zarba primarily ranked Plaintiff at the bottom of his mental list of HECD candidates because of Plaintiff's problematic interpersonal skills. Accordingly, Plaintiff's self assessment of her technical and scientific accomplishments is simply immaterial in considering whether Defendant's legitimate non-discriminatory reason for not recommending Plaintiff for an accretion of duties promotion is pretextual. *See, e.g.*, *Fischbach v. Dist. of Columbia Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) ("Once the

employer has articulated a non-discriminatory explanation for its action, as [defendant] did here, the issue is not the correctness or desirability of the reasons offered but whether the employer honestly believes in the reasons it offers.") (internal quotations and citations omitted); *Pendleton v. Gonzales*, 518 F. Supp. 2d 45, 48-49 (D.D.C. 2007) (Leon, J.) (plaintiff's seniority was not relevant when plaintiff was not selected based upon other factors); *see also Spelke v. Gonzales*, 516 F. Supp. 2d 76, 80 (D.D.C. 2007) (Leon, J.) ("a plaintiff's subjective assessment of his own performance is not enough to establish discrimination") (internal quotations omitted); *Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999) ("Title VII, it bears repeating, does not authorize a federal court to become a super-personnel department that reexamines an entity's business decisions.") (internal quotations omitted).

### 3. Plaintiff Presents No Evidence That Questions Mr. Zarba's Reasonable Belief That Plaintiff Had Significant Deficiencies With Her Interpersonal Skills.

Lastly, Plaintiff attempts to rely upon statements from three individuals in support of the contention that she did not have significant problems interacting with coworkers and supervisors within HECD and OST in a professional and polite manner. *See* Opp. at 6-7; Pl's Stmt. at 51. None of these three individuals, however, worked in OST or HECD, or supervised Plaintiff's work. *See* Mosley EEO Tr. at 970-72, 976-77, Reply Ex. E; Stelma EEO Aff. at 3-4, Opp. Ex. 15; Saxena EEO Aff. at 1, 3, Opp. Ex. 16. Moreover, none of these three individuals had the opportunity to observe Plaintiff's interaction with her supervisors. *See* Mosley EEO Tr. at 970-72, 976-77, Reply Ex. E; Stelma EEO Aff. at 3-4, Opp. Ex. 15; Saxena EEO Aff. at 1, 3, Opp. Ex. 16. Naturally, Ms. Mosley also confirmed that she did not know Mr. Zarba, or the OST employees that complained about Plaintiff's interpersonal skills. *See* Mosley EEO Tr. at 974-76, Reply Ex. E.

Consequently, these three individuals have no knowledge of whether Mr. Zarba reasonably believed, based upon the information available to him (which did not include statements from these three individuals), that Plaintiff had significant problems interacting with her OST coworkers and supervisors. *See generally Fischbach*, 86 F.3d at 1183 ("[I]f the employer made an error too obvious to be unintentional, perhaps it had an unlawful motive for doing so. Short of finding that the employer's stated reason was indeed a pretext, however -- and here one must beware of using 20/20 hindsight -- the court must respect the employer's unfettered discretion to choose among qualified candidates. . . . Title VII liability cannot rest solely upon a judge's determination that an employer misjudged the relative qualifications of [eligible] candidates."); *Chappel-Johnson v. Blair ("Chappel-Johnson I")*, Civ. A. No. 06-1074 (RCL), 2008 WL 4058674, *7, --- F. Supp. 2d --- (D.D.C. Sept. 3, 2008) ("Whether [the selectee] was *in fact* the best qualified applicant, however, is not the point . . . the material issue is whether [the selecting officials] *reasonably believed* [the selectee] to be the more qualified applicant.") (emphasis in original). Indeed, as Defendant noted in its Opening Brief, Plaintiff's problematic interpersonal skills are plainly evident in her unfiltered EEO Declaration that she prepared without the assistance of counsel. *See* Open Br. at 17, Nwachuku EEO Decl., Mot. Ex. 2.

> **B.  Plaintiff Has Failed to Identify Any Facts Upon Which A Reasonable Juror Could Conclude That Her Non-Selection Was Based Upon Her Race or National Origin.**

Plaintiff has also failed to identify any evidence upon which a reasonable juror could conclude that her selection was based upon her race or national origin. Instead, Plaintiff asserts that the process utilized by Mr. Grubbs violated some Agency policy. *See* Opp. at 26-28. This argument has no merit, and even if it did, Plaintiff has failed to show that she was treated any differently than similarly situated employees or to identify any legitimate evidence that Messrs.

Zarba or Grubbs harbored any discriminatory animus against Plaintiff based upon her race or national origin.

1.      **The Process Utilized By Mr. Grubbs Did Not Violate Any Agency Policies.**

In a desperate attempt to find some flaw in her non-selection, Plaintiff tries to characterize the process utilized by Mr. Grubbs in considering OST employees for accretion of duties promotions as violating the Agency's promotional policies. Specifically, Plaintiff argues that Mr. Grubbs' process violated the Agency's policies on merit promotions and accretion of duties promotions. Plaintiff's arguments, however, are without merit.

First, EPA's Merit Promotion Program simply does not apply to, and specifically allows for, accretion of duties promotions. That is, the competitive procedures of EPA's Merit Promotion Program, upon which Plaintiff's argument in this regard is principally based, expressly do not apply to "[a] promotion resulting from an employee's position being classified at a higher grade because of additional duties and responsibilities" -- *i.e.*, an accretion of duties promotion. *See* Merit Promotion Program at p. 3-1, Opp. Ex. 17. Indeed, as EPA's HR Policy Bulletin regarding accretion of duties promotions states, "[t]he Agency's Merit Promotion Manual provides for promotion of an employee above the established promotion potential without competition when the employee's position is reconstituted at a higher grade because of an accretion of duties and responsibilities." *See* HR Bulletin at 1, Opp. Ex. 18. Notably, the Agency's policies on this matter are compliant with OPM's regulations regarding selection and promotion. *See* 5 C.F.R. § 335.103(c)(3) ("Agencies may at their discretion except the following actions from competitive procedures of this section: . . . (ii) A promotion resulting from an

employee's position being classified at a higher grade level because of additional duties and responsibilities").[6]

Second, Plaintiff fails to articulate how the process employed by Mr. Grubbs violated any Agency policy on accretion of duties promotions. Indeed, the HR Policy Bulletin regarding Accretion of Duties Promotion, upon which Plaintiff's argument in this regard is based, specifically notes that neither a desk audit nor an evaluation statement is required for an accretion of duties promotion. *See* HR Policy Bul. at 2, Opp. Ex. 18. Further, as the HR Policy Bulletin indicates, all accretion-of-duties promotions are submitted to the Agency's HR office, which has the authority to approve or disapprove such promotions. *See id.* at 4. Consequently, the promotions of Ms. Williams-Bower and Mr. Johnston were reviewed and approved by the Agency's HR office, which determined that the selections had complied with the Agency's policies. *See* Grubbs EEO Tr. at 525-26, Reply Ex. F. Accordingly, the undisputed facts fail to support any notion that the process used to promote Ms. Williams-Bower and Mr. Johnston was somehow flawed.

> ### 2.    Plaintiff Was Treated The Same As All Other GS-13 Scientists in HECD, None of Who Received a Promotion.

Even if Mr. Grubbs' process violated some as of yet undetermined policy, such a violation does not give rise to any inference of discrimination because Plaintiff was treated the same as every other GS-13 scientist in HECD during the 2003 accretion process, without regard to her race or national origin. That is, Plaintiff herself has stated that Mr. Grubbs' procedure was the procedure that governed the 2003 accretion process for OST employees, irrespective of race or national origin. *See* Pl's Stmt. at 4. Moreover, the process that Mr. Grubbs used was well

---

[6]    Notably, had Plaintiff believed that Mr. Grubbs' selection process was inconsistent with OPM's regulations she could have filed a grievance pursuant to 5 C.F.R. § 335.103(d). Plaintiff did not do so.

established -- a fact that Plaintiff believes to be immaterial, but does not refute.  *See* Pl's Stmt. at 46.  Further, Plaintiff has conceded that Mr. Zarba did not recommend anyone from HECD for an accretion of duties promotion in the 2003 process, regardless of race or national origin.  *See* Def's Stmt. at ¶ 55; Def's Reply Stmt. at 13.

Accordingly, even if the 2003 accretion process somehow deviated from the Agency's policies, there is no indication that Plaintiff was intentionally discriminated against in the flawed process because of her race or national origin as she was treated the same as all other similarly situated employees.  *See, e.g.*, *Fischbach*, 86 F.3d 1183 ("the Department's having followed a procedure other than that prescribed by its regulations lends no support at all to the plaintiff's inference that its stated reason for choosing [the selectee] over [plaintiff] is a pretext. In fact, the procedure that the Department followed is reasonable and was, according to undisputed testimony, its usual procedure."); *Chappel-Johnson I*, 2008 WL 4058674, at *8 ("even if a court suspects that a job applicant was victimized by poor selection procedures it may not second-guess an employer's personnel decision absent demonstrably discriminatory motive.") (internal quotations omitted); *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1556 (D.C. Cir. 1997) ("employer's failure to follow its own regulations and procedures, alone, may not be sufficient to support the conclusion that its explanation for the challenged employment action is pretextual") (internal quotations omitted); *Butler v. Ashcroft*, 293 F. Supp. 2d 74, 79-80 (D.D.C. 2003) (Leon, J.) (employer's failure to follow interview procedures did not "point to a discriminatory motive on the part of the employer").

### 3.    Plaintiff Offers No Other Legitimate Evidence Upon Which a Juror Could Infer Discrimination.

Plaintiff identifies no other legitimate evidence upon which a juror could infer that her non-promotion was the product of intentional discrimination based upon her race.  Indeed,

although Plaintiff believes the point to be immaterial, Plaintiff herself admitted that she does not recall Messrs. Zarba or Grubbs (the relevant supervisors for Plaintiff's non-promotion claim) ever using any pejoratives or language demeaning to black people or people from Africa as a group. *See* Pl's Stmt. at 30.

In a futile attempt to engineer some evidence of discrimination, Plaintiff reverses course on her statement and baselessly asserts that "there is evidence that Zarba was intolerant of Dr. Nwachuku's nation origin." *See* Opp. at 35. This assertion is simply ludicrous. Plaintiff's specious contention is based upon a gross distortion of Mr. Zarba's testimony at the EEO administrative hearing that preceded this action. At the EEO hearing, immediately after Mr. Zarba noted that Plaintiff, in his mind, had not used good grammar in certain official correspondence, Plaintiff's counsel asked the non-sequitur: "Q: Are you aware that she's from Africa?" to which Mr. Zarba responded that Plaintiff's ethnicity had no bearing on his evaluation of her written work, specifically stating "A: Yes, I am. But you can't send a memo out and say excuse the writing because the person is from Africa. I expect a GS-13, GS-14 level scientist to write a one-page memo that makes a point and lays out options and has a conclusion." *See* Zarba EEO Tr. at 641-43, Reply Ex. A. Accordingly, Plaintiff's characterization of this testimony as evidence that Mr. Zarba has "admitted issues with Dr. Nwachuku's African-origin" (*see* Opp. at 35) is a gross, blatant misrepresentation of Mr. Zarba's testimony, and reflects the desperate measures that Plaintiff has taken to avoid the clear bases upon which the Court should enter summary judgment.

## II.     PLAINTIFF HAS FAILED TO ESTABLISH ANY GENUINE ISSUE OF MATERIAL FACT THAT WOULD PREVENT SUMMARY JUDGMENT ON PLAINTIFF'S TERMINATION-BASED RETALIATION CLAIM.

Plaintiff has failed to show that her termination was motivated by her prior protected activity rather than her gross misconduct.

### A.    Plaintiff Has Failed to Show that Mr. King's Reasons for Terminating Plaintiff Were Insincere, Unreasonable, or Pretextual.

The essence of Plaintiff's argument regarding her termination-based claim is that a jury could conclude that Mr. King was wrong and that she had not, in fact, actually committed any misconduct.  *See* Opp. at 41-45.  This argument is simply immaterial to Defendant's Motion.

"[I]t 'is not this Court's job to decide if defendant's proffered reasons were wise, fair, or correct, but rather, whether defendant honestly believed those reasons and acted in good faith upon those beliefs.'"  *Simpson v. Leavitt*, 557 F. Supp. 2d 118, 130 (D.D.C. 2008) (Friedman, J.) (entering judgment on plaintiff's discrimination claims), *quoting Crockett v. Richardson,* 127 F. Supp. 2d 40, 47 (D.D.C. 2001) (Huvelle, J.) (same).  Indeed, this Court in addressing a similar case to the present action, noted:

> It is not appropriate for this Court to evaluate the investigations and hearings surrounding plaintiff's termination because we do not sit as a super-personnel department that re-examines an entity's business decisions. . . . Once an employer has articulated a non-discriminatory explanation for its actions the issue is not the correctness or desirability or the reasons offered but whether the employer honestly believes in the reasons it offers.  Plaintiff simply cannot demonstrate that his suspension was based on anything other than an honest belief in the results of [the agency's] official investigation and in the admission by plaintiff's co-worker that the two men had indeed done wrong.

*Dunning v. Quander*, 468 F. Supp. 2d 23, 32, n.10 (D.D.C. 2006) (Leon, J.) (granting motion for summary judgment) (internal quotations and citations omitted); *see also Chappell-Johnson v. Bair ("Chappell-Johnson II")*, Civ. A. No. 06-0314 (RCL), 2008 WL 4058676, *5, --- F. Supp. 2d ---- (D.D.C. Sept. 3, 2008) ("Plaintiff's evidence of pretext is thus both extremely weak to begin with, *and* fails to refute that *defendant* did not believe that plaintiff was the most qualified. Instead it speaks to the secondary issue of whether a reasonable jury could have reached a different conclusion than the interview panel and selecting official. However, [T]itle VII, it bears repeating, does not authorize a federal court to become a super-personnel department that

reexamines an entity's business decisions.") (internal quotations omitted); *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997) ("arguing about the accuracy of the employer's assessment is a distraction, because the question is not whether the employer's reasons for a decision are right but whether the employer's description of its reasons is honest.") (internal quotations and citations omitted).

Accordingly, Plaintiff's attempt to show that a reasonable juror may reach a different outcome than Mr. King on the charges that Plaintiff committed misconduct is simply immaterial to this Motion. Plaintiff and her counsel had three opportunities to argue her case before Mr. King. Mr. King[7] was simply not persuaded by her and her counsel's arguments. Plaintiff has failed to identify any facts that tend to show that Mr. King's decision was motivated by anything other than his sincere and honest assessment of the charges presented to him.

Indeed, Mr. King's Removal Decision, which spans 26 single-spaced pages, is undoubtedly supported by a plethora of evidence in the record, which Defendant set forth in its Opening Brief and accompanying Statement of Undisputed Facts. *See* Def's Reply Stmt. at 13-20. For example, although Plaintiff labels such undisputed facts as immaterial, Plaintiff herself does not dispute that Dr. Doyle sent Plaintiff a number of emails, all in which Dr. Doyle specifically informed Plaintiff that she did not have authority to go to the 2006 ASM conference. *See* Open. Br. at 18-24; Def's Stmt. at ¶¶ 107-09, 112-13, 133-34; Pl's Stmt. at 64-66, 71; Def's Reply Stmt. at 13.[8] Instead, Plaintiff argues that she did not read these emails. *See* Pl's Stmt. at

---

[7]     It bears repeating that prior to issuing his Removal Decision, Plaintiff had not alleged that Mr. King discriminated or retaliated against her in any way. *See* Open Br. at 33-34; Def's Stmt. at ¶ 200. Although Plaintiff believes this to be immaterial, she fails to contradict this truism. *See* Pl's Stmt. at 105; Def's Reply Stmt. at 13.

[8]     Notably, these emails contained the subjects "Travel to Orlando," "Resolution of charge issues with OGWDW," and "CCL Expert Panel Charge." *See* Emails at Mot. Exs. 43, 46, 51. That is, the subject of the emails either directly referenced Plaintiff's travel to the 2006 ASM conference or the Charge -- *i.e.*, her primary responsibility at the time.

64-66, 71.   Mr. King, however, rejected Plaintiff's argument because, among other things, Plaintiff herself had forwarded certain of these emails to her "friend" Brenda Mosley[9] and Plaintiff had been using her email "to conduct business related to finalization of the CCL *Charge* before and during the week of May 15th."   *See* Removal Decision at 5-6.

## B.     Plaintiff Has Failed to Identify Any Facts Upon Which A Reasonable Juror Could Conclude That Her Termination Was Based Upon Her Prior Protected Activity.

In addition to her failure to show that Mr. King's reasons for terminating Plaintiff were somehow insincere, unreasonable or pretextual, Plaintiff has identified nothing else about her termination upon which a reasonable juror could conclude that she was terminated because of her prior protected activity.

### 1.     Plaintiff's Supervisors Did Not Recruit Dr. Faison to Gather Information.

As an initial matter, Plaintiff's allegations regarding Dr. Faison's complaints to her supervisors about Plaintiff have no bearing on Plaintiff's subsequent gross misconduct, which precipitated her termination by Mr. King from the EPA.   That is, Dr. Faison's issues with Plaintiff and Plaintiff's improper conduct towards Dr. Faison were not mentioned in Dr. Doyle's Proposed Removal or Mr. King's Removal Decision.   *See* Proposed Removal, Mot. Ex. 62; Removal Decision, Mot. Ex. 76.   Indeed, by Plaintiff's own admission Dr. Faison's issues with Plaintiff reached a climax almost a year before Plaintiff was terminated for her gross misconduct. *See* Opp. at 16-17, 38-39.

---

[9]     Plaintiff's new unsupported argument that she forwarded CCL workgroup emails to Ms. Mosley without reading them because Ms. Mosley was helping Plaintiff (*see, e.g.*, Pl's Stmt. at 60) strains credulity and is affirmatively contradicted by the evidence.   Indeed, the only emails that Plaintiff forwarded to Ms. Mosley at this time were a handful of emails either concerning OGWDW's comments to the Charge or Dr. Doyle's instructions that Plaintiff was not authorized to go to the 2006 ASM conference.   *See* Emails at Mot. Exs. 40, 43.   In any event, given the plethora of contradictory evidence, Mr. King honestly and reasonably believed that Plaintiff's self-serving statements were not credible.   *See* Removal Decision at 5-6.

Moreover, Plaintiff's preposterous "conspiracy theory" lacks any support in the record. That is, Plaintiff cites nothing other than wild speculation in support of her remarkable claim that Drs. Doyle and Ohanian recruited Dr. Faison, whom Plaintiff describes as a "disgruntled coworker," to gather information to fire her.  *See* Opp. at 14-17.   Contrary to Plaintiff's misleading and unsupported summary, Dr. Faison (who is an African-American female) sought out her management (Dr. Doyle, Dr. Ohanian, and Mr. Cantilli) to assist her in dealing with Plaintiff, who in Dr. Faison's mind was acting rude and unprofessional towards her during her CCL workgroup work.  *See* Faison EEO Aff. at 5, Opp. Ex. 29; Doyle EEO Aff. at 3-5, Opp. Ex. 33.   Further, Dr. Faison was frustrated because she was unsure of her role in the CCL workgroup.  *See* Faison EEO Aff. at 3, Opp. Ex. 29; Faison Dep. Tr. at 77-78, Reply Ex. B. Accordingly, the undisputed evidence shows that Plaintiff's supervisors merely responded to an issue raised by one of their subordinates.  *See* Doyle EEO Aff. at 3-5, Opp. Ex. 33.

Dr. Doyle encouraged Dr. Faison to meet with Plaintiff and document her encounter before management took any steps to intervene.  *See* Doyle EEO Aff. at 3-5, Opp. Ex. 33; Ohanian EEO Aff. at 3, Opp. Ex. 34.[10]   Thereafter, Dr. Faison presented Plaintiff with a list of questions and asked to meet with Plaintiff for 15 minutes.  *See* Faison EEO Aff. at 2-4, Opp. Ex. 29.  Although Plaintiff is correct that Dr. Faison prepared two versions of her written questions (*see* Pl's Stmt. at 13), contrary to Plaintiff's assertion, the undisputed evidence shows that Dr. Faison presented Plaintiff with the more expansive version and omitted certain language from the one she presented to her supervisors.  *See* Faison EEO Decl. at 6, Opp. Ex. 29; Faison Dep.

---

[10]     Plaintiff remarkably argues that the instruction of Drs. Doyle and Ohanian to Dr. Faison to document and take notes of her meeting with Plaintiff is evidence of retaliatory conspiracy.  *See* Opp. at 38-39.  This contention is utterly without support.  Indeed, Dr. Doyle testified that she advised Dr. Faison to takes notes in light of the negative tenor of her interactions with Plaintiff and so that Dr. Faison could have a record of her interactions in the event that Plaintiff raised accusations *against Dr. Faison*. *See* Doyle EEO Aff. at 6, Opp. Ex. 36.   Notably, despite the advice of Drs. Doyle and Ohanian, Dr. Faison decided not to take notes of her meeting with Plaintiff.  *See* Faison Dep. Tr. at 105, Opp. Ex. 31.

Tr. at 111-12, Reply Ex. B.  When Dr. Faison met with Plaintiff, Plaintiff was rude and refused to respond to Dr. Faison's questions or participate in the meeting.  *See* Faison EEO Aff. at 4, Opp. Ex. 29; Memo from Faison to Cantilli of 02/01/2006, Opp. Ex. 32.  Thereafter, on February 1, 2006, Dr. Faison wrote a memo to Mr. Cantilli and Dr. Doyle describing her meeting with Plaintiff.  *See* Memo from Faison to Cantilli of 02/01/2006, Opp. Ex. 32.[11]  In response to Dr. Faison's memo Dr. Doyle attempted to discuss the matter with Plaintiff, but Plaintiff refused to participate.  *See* Doyle EEO Aff. at 8-9, Opp. Ex. 33.  Notably, despite Dr. Faison's urging (*see* Faison EEO Aff. at 12-13, Opp. Ex. 29), Plaintiff's supervisors did not take any action against Plaintiff as a result of Dr. Faison's memo; and subsequently, Dr. Faison ceased her involvement with the CCL workgroup when Plaintiff continued in her role as a team leader.  *See* Faison EEO Aff. at 12, Opp. Ex. 29.  Quite simply, nothing about these events indicates that Mr. King (who was not involved in Dr. Faison's complaints) retaliated against Plaintiff when he terminated her nearly a year later based upon misconduct in which Dr. Faison played absolutely no role.

> **2.      The Actions of Plaintiff's Supervisors Do Not Reflect Any Retaliatory Animus.**

Plaintiff continues her futile attempt to manufacture some evidence of retaliation by arguing that Mr. King improperly considered evidence outside of the Proposed Removal, its attachments and Plaintiff's response in reaching his decision to terminate Plaintiff.  *See* Pl's Stmt at 17-19.  Plaintiff's argument in this regard is simply nonsensical.

In essence, Plaintiff argues that Mr. King retaliated against her because Mr. King sought to consider as much evidence regarding Plaintiff's alleged misconduct as practicable before rendering his decision on Dr. Doyle's Proposed Removal.  *See id.*  Even if this effort were

---

[11]      Contrary to Plaintiff's assertions, although Dr. Faison proposed as an alternative solution that Plaintiff be removed as a team leader, Dr. Faison specifically disavowed any desire to take over Plaintiff's role as a team leader

somehow misguided, as this Court has noted, "[i]t is not appropriate for this Court to evaluate the investigations and hearings surrounding plaintiff's termination because we do not sit as a super-personnel department that re-examines an entity's business decisions." *Dunning v. Quander*, 468 F. Supp. 2d 23, 32, n.10 (D.D.C. 2006) (Leon, J.).  Further, even if the Court could permissibly examine Mr. King's investigation, it is beyond preposterous to suggest that Mr. King's desire to review as much evidence as practicable was somehow designed to be retaliatory.  Notably, after Mr. King received additional materials from Plaintiff's supervisors, which he requested in response to issues raised by Plaintiff and her counsel in her oral and written responses, Mr. King afforded Plaintiff the opportunity to address such evidence, a fact that Plaintiff does not dispute. *See* Open. Br. at 33; Def's Stmt. at 197; Def's Reply Stmt. at 13.[12]

### 3.    Plaintiff's Protected Activity Was Not Temporally Proximate to the Alleged Act of Retaliation.

Realizing that she can offer no other evidence of retaliation, Plaintiff desperately attempts to avoid the threshold dispositive argument that her protected activity was too temporally remote to support a claim of retaliation by identifying certain activities in her pending proceedings that occurred within three months of her termination.  These activities are plainly insufficient bases to deny Defendant's Motion.

As Defendant noted in its Opening Brief, to state even a colorable claim Plaintiff must establish that she engaged in protected activity within some temporal proximity to the alleged act

---

on the CCL workgroup because Dr. Faison felt that Plaintiff's behavior poisoned the workgroup for her.  *See* Memo from Faison to Cantilli of 02/01/2006 at 2, 3, Opp. Ex. 32.

[12]    Plaintiff also argues that the actions of Drs. Ohanian and Doyle reflect some sort of retaliatory animus.  *See* Opp. at 39-41.  Specifically, Plaintiff argues that retaliation can be inferred from Drs. Ohanian's and Doyle's referral of Plaintiff's misconduct to the Office of the Inspector General and Dr. Doyle allegedly lying about spreading gossip regarding Plaintiff's misconduct.  *See* Opp. at 39-41.  These arguments, however, are meritless as described in Defendant's Reply Statement submitted herewith (*see* Def's Reply Stmt. at 7-10), and immaterial to this Motion.  Indeed, as Plaintiff herself points out, Mr. King did not merely rely upon the statements of Drs. Doyle and Ohanian, but rather made his decision to terminate Plaintiff only after he conducted his own investigation into the charges set forth in the Proposed Removal.  *See* Pl's Stmt. at 17-19.

of discrimination -- in this case, Mr. King's Removal Decision. *See* Open Br. at 40. Plaintiff has failed to identify any actions taken by her within three months prior to Mr. King's decision to terminate her employment with the Agency. Instead, the only activity identified by Plaintiff that occurred within three months of her termination was a Court Order in her action then premised solely upon her non-promotion compelling the parties to submit a joint status report. Accordingly, even if Plaintiff could somehow refute Defendant's legitimate non-discriminatory reasons for terminating Plaintiff (which in-and-of-themselves warrant judgment in Defendant's favor on Plaintiff's retaliation claim), Plaintiff has identified no protected activity taken *by her* within three months of her termination upon which a proximity inference of retaliation could be based. *Laurent v. Bureau of Rehabilitation, Inc.*, 544 F. Supp.2d 17, 23 (D.D.C. 2008) (Leon, J.) ("three months is the outer limit for a temporal showing of causation" for retaliation claims).

*     *     *

## CONCLUSION

For the foregoing reasons and those set forth in Defendant's Opening Brief, Defendant respectfully requests that this Court enter summary judgment on all of Plaintiff's claims in Defendant's favor.

Dated: September 5, 2008
      Washington, DC

                                            Respectfully submitted,

                                            _____
                                            JEFFREY A. TAYLOR, D.C. BAR #498610
OF COUNSEL:                          United States Attorney
Paul Winick
Office of General Counsel,
Employment Law Practice Group,        /s/
U.S. Environmental Protection Agency   _____
                                              RUDOLPH CONTRERAS, D.C. BAR #434122
                                            Assistant United States Attorney

                                          /s/
                                        _____
                                          BRIAN P. HUDAK
                                          Assistant United States Attorney
                                          555 4th Street, NW
                                          Washington, DC 20530
                                          (202) 514-7143

                                          *Attorneys for Defendant*