UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NENA NWACHUKU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 06-0946 (RJL) |
| | ) | |
| STEPHEN L. JOHNSON, Administrator, | ) | |
| U.S. Environmental Protection Agency, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## STATEMENT OF GENUINE ISSUES

Pursuant to Local Civil Rule 7(h) and for the convenience of the Court, Defendant Stephen L. Johnson ("Defendant"), Administrator, United States Environmental Protection Agency ("Agency" or "EPA"), by and through his undersigned counsel, respectfully submits this Response to Plaintiff's Statement of Genuine Issues ("Plaintiff's Statement") submitted with Plaintiff's Memorandum in Opposition ("Opposition") to Defendant's Motion for Summary Judgment ("Motion"). Below Defendant responds to statements identified by Plaintiff to be "Genuine Issues of Material Fact," and sets forth those facts identified in Defendant's Statement of Undisputed Facts ("Defendant's Statement") that Plaintiff has not adequately challenged in her Statement.

## I.    PLAINTIFF HAS NOT IDENTIFIED ANY GENUINE ISSUES OF MATERIAL FACT THAT WOULD PREVENT SUMMARY JUDGMENT IN DEFENDANT'S FAVOR.

Defendant hereby responds to the statements labeled as "Genuine Issues of Material Fact" by Plaintiff in her Statement. As explained below, the "issues" identified by Plaintiff are immaterial and/or unsupported by the record.

***Plaintiff's Statement No. 1: Whether the EPA circumvented its Merit Promotion Plan in promoting Johnson (sic) and Williams-Bower through accretion of duties.***

Defendant's Response to Plaintiff's Statement No. 1:  *This Statement is plainly refuted by undisputable evidence in this action and is immaterial to Defendant's Motion.*  In support of this unsupportable Statement, Plaintiff generally summarizes the EPA's Merit Promotion Program for competitive promotions.  *See* Pl's Stmt. at 2-3.  The competitive procedures of EPA's Merit Promotion Program, however, expressly do not apply to "[a] promotion resulting from an employee's position being classified at a higher grade because of additional duties and responsibilities" -- *i.e.*, an accretion of duties promotion.  *See* Merit Promotion Program at p. 3-1, Opp. Ex. 17.[1]  Indeed, as EPA's HR Policy Bulletin regarding accretion of duties promotions states, "[t]he Agency's Merit Promotion Manual provides for promotion of an employee above the established promotion potential without competition when the employee's position is reconstituted at a higher grade because of an accretion of duties and responsibilities."  *See* HR Bulletin at 1, Opp. Ex. 18.  Lastly, Plaintiff has identified no evidence that could contradict the undisputed statements made by the first-line supervisors of Mr. Johnston and Ms. Williams-Bower that such individuals were eligible for an accretion of duties promotion.  *See* Open. Br. at 14-15.  Accordingly, there exists no genuine issue regarding this Statement.

Further, and most notably, Plaintiff cites no evidence that the procedure utilized by Mr. Grubbs treated Plaintiff any differently than any other person in HECD, or was designed to intentionally discriminate against Plaintiff because of her race.  Tellingly, the process utilized by Mr. Grubbs resulted in the promotion of Ms. Williams-Bower, an African-American female.  *See*

---

[1]     For the avoidance of confusion, Defendant will use the following prefixes to refer to exhibits in the record (a) "Mot. Ex." refers to exhibits submitted with Defendant's MSJ; (b) "Opp. Ex." refers to exhibits submitted with Plaintiff's Opposition; and (c) "Reply Ex." refers to exhibits submitted with this Response and Defendant's Reply submitted herewith.  Additionally, "Opening Brief" refers to Defendant's Memorandum of Points and Authorities In Support of his MSJ.

Open. Br. at 14-15.  In sum, even if the process was somehow inconsistent with the Agency's regulations (for which there exists no supporting evidence), regardless of race, color, national origin or other protected factors, no GS-13 scientists in HECD (including Plaintiff) were recommended by Mr. Zarba for an accretion of duties promotion in 2003.  *See id.* at 13-16. Accordingly, even if there existed a genuine issue as to this Statement, this issue is not material to Defendant's Motion.

***Plaintiff's Statement No. 2: Whether the EPA properly followed its procedures for promoting employees without competition.***

<u>Defendant's Response to Plaintiff's Statement No. 2</u>:  *Plaintiff fails to support this Statement with any evidence and this Statement is immaterial to Defendant's Motion.*  Plaintiff purports to support this Statement by blindly concluding that "there is evidence that the EPA did not take the necessary steps to promote Johnston and Williams-Bower through accretion of duties," and then proceeding to summarize EPA's policy regarding accretion of duties promotion and Mr. Grubbs' defined set of guidelines he considered in the accretion of duties promotional process at issue in this case.  *See* Pl's Stmt. at 3-4.  Plaintiff, however, fails to describe how Mr. Grubbs' procedures in anyway violated EPA's policy on accretion of duties promotions.  Indeed, Plaintiff herself notes that EPA's policies do not require a desk audit or an evaluation statement in utilizing the noncompetitive accretion of duties process. *See id.* at 4.

Moreover, as noted above, even if the Agency somehow deviated from its procedures regarding accretion of duties promotions, nothing in the record supports any inference that such a deviation was intentionally designed to discriminate against Plaintiff or subjected Plaintiff to intentional discrimination.  *See, supra*, at 2-3.  Therefore, even if there existed some dispute as to this Statement, this issue is not material to Defendant's Motion.

***Plaintiff's Statement No. 3: Whether Johnston and Williams-Bower were already performing at the GS-14 level before they were promoted through accretion of duties.***

Defendant's Response to Plaintiff's Statement No. 3:  *This Statement is immaterial to Defendant's Motion.*  Whether Mr. Johnston and Ms. Williams-Bower were objectively qualified for their respective GS-14 positions has no bearing on whether Plaintiff (who held a different position and was supervised by a different supervisor than the selectees) was intentionally discriminated against by Mr. Grubbs or Mr. Zarba based upon her race or national origin. Further, Mr. Johnston and Ms. Williams-Bower both held different non-scientific positions than Plaintiff with different job-requirements and duties, and were supervised by first-line supervisors other than Mr. Zarba (Plaintiff's supervisor at the time).  *See* Open. Br. at 14-15.  That is, while Mr. Johnston and Ms. Williams-Bower were evaluated by their first-line supervisors based upon the requirements for an environmental engineer in EAD and an information technology specialist in OST's main office, respectively, Plaintiff was evaluated by Mr. Zarba based upon the requirements for a scientist within HECD.  *See* Open. Br. at 12-16.  Based upon his review, Mr. Zarba concluded that he would not recommend any GS-13 scientists in HECD (including Plaintiff) for an accretion of duties promotion.  Plaintiff's attempt to create a genuine issue of material fact by comparing apples and oranges is simply insufficient.  Moreover, nothing about the process utilized by Mr. Grubbs supports any inference of intentional discrimination, or challenges his reasonable belief that Ms. Williams-Bower and Mr. Johnston were qualified for accretion of duties promotions.

***Plaintiff's Statement No. 4: Whether Nwachuku was already performing at the GS-14 level when she was passed up for promotion.***

Defendant's Response to Plaintiff's Statement No. 3:  *This Statement is immaterial to Defendant's Motion and, in any event, is not supported by the record.*  Quite simply, Plaintiff has

- 4 -

cited no evidence upon which a reasonable juror could conclude that she was not selected for an accretion of duties promotion because of her race or national origin. No GS-13 scientists in HECD were considered for an accretion of duties promotion because Mr. Zarba believed that none of them was deserving of an accretion of duties promotion. Indeed, Mr. Zarba ranked Plaintiff at the bottom of his mental list when reviewing his staff in making that determination because Plaintiff, despite her technical qualification, had a lengthy history of deficiencies in her interpersonal skills. *See* Open. Br. at 13, 16-17.

Plaintiff offers no evidence upon which a reasonable juror could conclude that Mr. Zarba's reason for not recommending Plaintiff was somehow a pretext for intentional discrimination based upon Plaintiff's race or national origin. Plaintiff does not contest that numerous co-workers and all of her first and second line supervisors believed that she had problems with her interpersonal skills. *See* Open. Br. at 16-17. Plaintiff's own unfiltered EEO Declaration clearly supports this belief. *See* Open. Br. at 17. Moreover, contrary to Plaintiff's misleading suggestion, Mr. Zarba's testimony at the EEO hearing on this matter does not show that he "is biased [ ] against Nwachuku's national origin and believed that because she was from Africa, she was not a good writer." *See* Pl's Stmt. at 11. Rather, at the EEO hearing, after Mr. Zarba noted that Plaintiff had not used good grammar in certain official correspondence, Plaintiff's counsel asked the non-sequitur: "Q: Are you aware that she's from Africa?" to which Mr. Zarba responded that Plaintiff ethnicity had no bearing on his evaluation, specifically stating "A: Yes, I am. But you can't send a memo out and say excuse the writing because the person is from Africa. I expect a GS-13, GS-14 level scientist to write a one-page memo that makes a point and lays out options and has a conclusion." *See* Zarba EEO Tr. at 641-43, Reply Ex. A. Plaintiff's characterization of this testimony as evidence that Mr. Zarba has "admitted issues with

Dr. Nwachuku's African-origin," is a gross, blatant misrepresentation of Mr. Zarba's testimony, and reflects the desperate measures that Plaintiff has taken to avoid the clear bases upon which the Court should enter summary judgment.

**Plaintiff's Statement No. 5: Whether management recruited a disgruntled co-worker to confront Nwacuku and gather information to fire her.**

Defendant's Response to Plaintiff's Statement No. 5: *This Statement is not supported by the record and is immaterial to Defendant's Motion.* Contrary to Plaintiff's misleading and unsupported summary, Dr. Faison (who is an African-American female) sought out her management (Dr. Doyle, Dr. Ohanian, and Mr. Cantilli) to assist her in dealing with Plaintiff who in Dr. Faison's mind was acting rude and unprofessional towards her during her CCL workgroup work. *See* Faison EEO Aff. at 5, Opp. Ex. 29; Doyle EEO Aff. at 3-5, Opp. Ex. 33. Dr. Faison was frustrated because she was unsure of her role in the CCL workgroup. *See* Faison EEO Aff. at 3, Opp. Ex. 29; Faison Dep. Tr. at 77-78, Reply Ex. B. Plaintiff's supervisors merely responded to an issue raised by one of their subordinates (*see* Doyle EEO Aff. at 3-5, Opp. Ex. 33) -- *i.e.*, they did not "recruit a disgruntled co-worker to confront" Plaintiff as Plaintiff contends.

Dr. Doyle encouraged Dr. Faison to meet with Plaintiff before management took any steps to intervene. *See* Doyle EEO Aff. at 3-5, Opp. Ex. 33. Thereafter, Dr. Faison presented Plaintiff with a list of questions and asked to meet with Plaintiff for 15 minutes. *See* Faison EEO Aff. at 2-4, Opp. Ex. 29. Although Plaintiff is correct that Dr. Faison prepared two versions of her written questions (*see* Pl's Stmt. at 13), contrary to Plaintiff's unsupported assertion, Dr. Faison presented Plaintiff with the more expansive version and omitted certain language from the one she presented to her supervisors. *See* Faison EEO Decl. at 6, Opp. Ex. 29; Faison Dep. Tr. at 111-12, Reply Ex. B. When Dr. Faison met with Plaintiff, Plaintiff was rude and refused

to respond to Dr. Faison's questions or participate in the meeting. *See* Faison EEO Aff. at 4, Opp. Ex. 29; Memo from Faison to Cantilli of 02/01/2006, Opp. Ex. 32. Thereafter, on February 1, 2006, Dr. Faison wrote a memo to Mr. Cantilli and Dr. Doyle describing her meeting with Plaintiff. *See* Memo from Faison to Cantilli of 02/01/2006, Opp. Ex. 32.[2] When Dr. Doyle attempted to discuss the matter with Plaintiff, Plaintiff refused to participate. *See* Doyle EEO Aff. at 8-9, Opp. Ex. 33. Notably, Plaintiff's supervisors did not take any action against Plaintiff as a result of Dr. Faison's memo; and subsequently, Dr. Faison ceased her involvement with the CCL workgroup when Plaintiff continued in her role as a team leader. *See* Faison EEO Aff. at 12, Opp. Ex. 29.

Nothing about this incident has any bearing on Plaintiff's subsequent gross misconduct, which occurred nearly a year thereafter and led to her termination. Plaintiff cites no evidence in support of this remarkable, preposterous assertion. Further, nothing about this incident reflects any discriminatory or retaliatory motive on the part of Plaintiff's supervisors. Indeed, Plaintiff's supervisors took no action against Plaintiff despite Dr. Faison's urging. *See* Faison EEO Aff. at 12-13, Opp. Ex. 29. Furthermore, it is undisputed that Mr. King (who decided that Plaintiff should be terminated) had no role in Dr. Faison's complaints.

**Plaintiff's Statement No. 6: Whether management arranged to have Nwachuku fired while she was away for the ASM conference.**

<u>Defendant's Response to Plaintiff's Statement No. 6:</u> *This Statement is not supported by the record and is immaterial to Defendant's Motion.* That is, nothing Plaintiff cites supports this Statement. As Defendant fully described in his Opening Brief, Plaintiff was removed by Mr.

---

[2]    Contrary to Plaintiff's assertions, although Dr. Faison proposed as an alternative solution that Plaintiff be removed as a team leader, Dr. Faison specifically disavowed any desire to take over Plaintiff's role as a team leader on the CCL workgroup because Dr. Faison felt that Plaintiff's behavior poisoned the workgroup against her. *See* Memo from Faison to Cantilli of 02/01/2006 at 2, 3, Opp. Ex. 32.

King from the EPA after a thorough, considered process in which Plaintiff and her counsel were given several opportunities to present Plaintiff's version of her gross misconduct. *See* Open Br. at 33. That is, while Plaintiff's immediate supervisor, Dr. Doyle, took steps to ascertain if Plaintiff was absent without leave and had used federal dollars on unauthorized travel and sought advice on what steps she might have to take regarding Plaintiff's gross misconduct (*see* Open. Br. at 27-29); Dr. Doyle did not propose Plaintiff's removal until she had the opportunity reflect on the situation and was informed that the Office of Inspector General declined to accept Plaintiff's case for investigation. *See* Doyle Dep. Tr. at 189, Opp. Ex. 4. Moreover, after Dr. Doyle proposed Plaintiff's removal, Plaintiff was afforded at least three opportunities while represented by counsel to present her side to Mr. King, who had no prior involvement in addressing Plaintiff's gross misconduct and had never previously been identified by Plaintiff in her prior EEO complaints. *See* Open. Br. at 33.

**Plaintiff's Statement No. 7: Whether management targeted Dr. Nwachuku for termination because of her protected activity.**

<u>Defendant's Response to Plaintiff's Statement No. 7:</u> *This Statement is not supported by the record.* That is, neither of the two sources Plaintiff cites supports this Statement. *First,* Plaintiff relies upon a remark made by Dr. Faison in her extended memo to Plaintiff. This remark, however, was written by Dr. Faison (not a supervisor of Plaintiff) and was removed from the version of the memo that was sent to Dr. Faison's supervisors. *See, supra,* at 6-7. Further, Dr. Faison's remark clearly centered on Plaintiff's historically rude behavior, not her prior EEO complaints. *See* Memo from Faison to Nwachuku of 01/17/2006, Opp. Ex. 45 ("Our management has told me of their concerns about your historic behaviors within HECD. Those concerns focus on your interpersonal skills.").

*Second*, Plaintiff cites Drs. Doyle's and Ohanian's referral of Plaintiff's travel fraud to the Office of Inspector General as evidence of retaliation. *See* Pl's Stmt. at 15. This citation simply does not support any notion that Mr. King, who took no part in the referral of Plaintiff's gross misconduct to the Office of the Inspector General, removed Plaintiff due to her prior protected activity. Indeed, this citation merely reflects the seriousness of Plaintiff's misconduct and her supervisors' sincere belief that Plaintiff had committed travel fraud by expending government funds on unauthorized travel. *See generally* Proposed Removal at 5, Mot. Ex. 62.

**Plaintiff's Statement No. 8: Whether Doyle proposed Nwachuku's termination because Nwachuku had filed EEO complaints against her.**

Defendant's Response to Plaintiff's Statement No. 8: *This Statement is not supported by the record and is immaterial to Defendant's Motion.* Plaintiff cites Dr. Doyle's reliance upon Plaintiff's false claims of workplace violence in the Proposed Removal as evidence of retaliation. As an initial matter, Plaintiff's informal complaint to Mr. King regarding her false claim of workplace violence is not a protected activity under Title VII and does not give rise to any inference of retaliation based upon Plaintiff's prior EEO complaints (processing of which concluded more than 6 months prior to Mr. King's decision). Moreover, Plaintiff's assertion that a reasonable juror could reject Dr. Doyle's version of the events is simply irrelevant. That is, Plaintiff has adduced no evidence that Mr. King, the deciding official, retaliated against Plaintiff when he concluded that Dr. Doyle's version was accurate after Plaintiff and her counsel were provided numerous opportunities to present Plaintiff's version.

Further, Plaintiff grossly distorts Dr. Doyle's testimony regarding the requirement that Dr. Doyle promptly respond to Plaintiff's emails. *See* Doyle Dep. Tr. at 91-102, Opp. Ex. 4. Contrary to Plaintiff's assertions, Dr. Doyle did not express any "displeasure" but merely noted

that occasionally the requirement, which applied not only to Plaintiff but to other employees, was burdensome. *See id.* at 93.

Lastly, Plaintiff's remarkable assertion that Dr. Doyle spread gossip of Plaintiff's gross misconduct, even if true, simply does not support the baseless assertion that Dr. Doyle retaliated against Plaintiff. Moreover, such an assertion is unsupportable, as Dr. Doyle merely contacted individuals involved in the travel authorization process and individuals at the EPA whose job duties include advising supervisors on personnel actions. *See* Doyle Dep. Tr. at 155-57, 169, Opp. Ex. 4.

***Plaintiff's Statement No. 9: Whether King did his own investigation into Nwachuku's employment in order to support her termination from the Agency.***

<u>Defendant's Response to Plaintiff's Statement No. 9:</u>  *This Statement is not supported by the record.* Perhaps most remarkable of all, after making this Statement, Plaintiff then details certain investigatory steps Mr. King took, including, most notably, providing Plaintiff the ability to respond to all evidence he considered in formulating his decision. *See* Pl's Stmt. at 17-19. Plaintiff appears to be arguing the Mr. King's investigation was improper because he sought to review as much evidence as practicable regarding the charges against Plaintiff and allowed Plaintiff's supervisors to further explain the reasons for the Proposed Removal. This is simply nonsensical. Mr. King solicited and considered from both Plaintiff and the Agency as much information as practicable, reviewed that evidence, and then issued a considered decision. Simply because Plaintiff self-servingly disagrees with some of the evidence or Mr. King's conclusions, does not render Mr. King's investigation or decision biased.

**Plaintiff's Statement No. 10: Whether Nwachuku refused to follow management's order to review the "charge" document.**

Defendant's Response to Plaintiff's Statement No. 10:  *This Statement is immaterial to Defendant's Motion and contradicted by the record.*  Whether Plaintiff objectively followed management's orders or not is ultimately immaterial to this matter.  Based upon his review of the evidence, including Plaintiff's presentations, Mr. King sincerely believed that Plaintiff did not follow her supervisor's instructions to revise the charge.  As explained in Defendant's Opening Brief, this belief is reasonable and well supported by the evidence in this action.  *See* Open Br. at 17-33.  Indeed, Mr. King's belief that Plaintiff read Dr. Doyle's emails was reasonable given that Plaintiff forwarded certain of Dr. Doyle's emails to a "friend" of hers and that the emails contained subject lines similar to those that Plaintiff, herself, admits to opening at the time.  *See* Open. Br. at 22-23.  Plaintiff has simply adduced no evidence upon which a reasonable juror could conclude that Mr. King's decision in this regard was fueled by intentional retaliation or discrimination.

**Plaintiff's Statement No. 11: Whether Nwachuku was aware that Doyle revoked her authorization to go to the ASM conference.**

Defendant's Response to Plaintiff's Statement No. 11:  *This Statement is immaterial to Defendant's Motion and contradicted by the record.*  As an initial matter, Plaintiff never received final authorization to go to the 2006 ASM Conference.  As Defendant set forth in his Opening Brief, Plaintiff was well aware of the procedures for obtaining approval of travel at the EPA and that her travel to the ASM conference had not been properly approved.  *See* Open Br. at 25-27.  Further, whether Plaintiff objectively knew that Dr. Doyle had expressly informed her that her travel to the 2006 ASM Conference was not authorized is ultimately immaterial to this matter.  Based upon his review of the evidence, including Plaintiff's presentations, Mr. King sincerely

believed that Plaintiff knew of this direction and nevertheless booked unauthorized travel through the Agency's travel provider. As explained in Defendant's Opening Brief, this belief is reasonable and well supported by the evidence in this action. *See* Open Br. at 17-33. Indeed, Mr. King's belief that Plaintiff knew of Dr. Doyle's express instruction was reasonable given that Plaintiff forwarded certain of Dr. Doyle's emails to a "friend" of hers and that the emails contained subject lines similar to those that Plaintiff, herself, admits to opening at the time. *See* Open. Br. at 24-29. Plaintiff has simply adduced no evidence upon which a reasonable juror could conclude that Mr. King's decision in this regard was fueled by intentional retaliation or discrimination.

**Plaintiff's Statement No. 12: Whether Nwachuku committed fraud on the federal government when she secured tickets for her travel to the ASM conference.**

Defendant's Response to Plaintiff's Statement No. 12: *For the reasons set forth in Defendant's Response to Plaintiff's Statement No. 11, this Statement is immaterial to Defendant's Motion and contradicted by the record.* Plaintiff has simply adduced no evidence upon which a reasonable juror could conclude that Mr. King's decision in this regard was fueled by intentional retaliation or discrimination.

**Plaintiff's Statement No. 13: Whether Nwachuku filed a false claim against Doyle for workplace violence.**

Defendant's Response to Plaintiff's Statement No. 13: *This Statement is immaterial to Defendant's Motion and contradicted by the record.* Whether Plaintiff objectively filed a false claim against Dr. Doyle is ultimately immaterial to this matter. Based upon his review of the evidence, including Plaintiff's presentations, Mr. King sincerely believed that Plaintiff intentionally fabricated such a claim. As explained in Defendant's Opening Brief, this belief is reasonable and well supported by the evidence in this action. *See* Open Br. at 31-32. Indeed,

Mr. King's belief that Plaintiff intentionally submitted a false violence in the workplace claim was reasonable given that a third-party, Dr. Thomas, believes that she witnessed the interaction and reported that Dr. Doyle calmly addressed Plaintiff, and that Ms. Gomez-Taylor (who conducted the initial investigation of Plaintiff's claims) similarly concluded that Plaintiff's claims were without merit. *See id.* Plaintiff has simply adduced no evidence upon which a reasonable juror could conclude that Mr. King's decision in this regard was fueled by intentional retaliation or discrimination.

## II. PLAINTIFF DOES NOT REFUTE AND THUS CONCEDES SUBSTANTIALLY ALL OF THE MATERIAL FACTS DEFENDANT HAS IDENTIFIED.

Although Plaintiff purports to address a number of the material facts identified by Defendant in his Statement, upon a close examination Plaintiff largely does not contradict Defendant's statements with citations to the record. That is, Plaintiff (a) wholly does not address certain material facts; (b) purports to disagree with other material facts, but cites no support for such disagreement or merely disagrees with the implications of such facts; (c) labels certain other material facts as immaterial without attempting to refute such facts; (d) "objects" to certain other material facts; and (e) attempts to refute the remaining material facts by creating irrelevant distinctions. Specifically:

\* Plaintiff does not address and thus concedes the following numbered material facts set forth in Defendant's Statement: 1, 3, 4, 7-12, 19, 45, 55, 61, 62, 65, 66, 69-71, 73, 78, 79, 81-85, 87-89, 91, 103, 105, 123-25, 127, 144-48, 151, 153, 154, 157, 162, 166, 173, 178, 184, 194, 195, and 197;

\* Plaintiff contends that there are issues of fact regarding the following numbered material facts set forth in Defendant's Statement, but thereafter cites no relevant support for such contention or merely disagrees with the phrasing or implications of such facts: 2, 5, 6, 13, 16-18,

21, 26, 27, 29, 31, 34-44, 46-52, 58, 63, 72, 74, 76, 77, 86, 90, 94, 99, 102, 109, 115, 116, 122, 126, 132-34, 136, 137, 139-143, 149, 150, 152, 155, 158-161, 167-72, 176, 180-83, 185, 186-191, 193, 196, 198, 199, and 201;

      \*      Plaintiff contends that the following numbered material facts set forth in Defendant's Statement are immaterial, but fails to contradict such facts with relevant citations to the record: 22-25, 28, 30, 32, 57, 59, 64, 67, 68, 75, 80, 92, 93, 95-98, 100, 101, 104-08, 110-14, 117-21, 130, 138, 163-65, and 200;

      \*      Plaintiff "objects" to the following numbered material facts set forth in Defendant's Statement, but fails to contradict such facts with relevant citations to the record: 128, 129, 131, 174, and 175; and

      \*      Plaintiff disputes the following numbered material facts set forth in Defendant's Statement, but Plaintiff's dispute is immaterial to Defendant's Motion: 14, 20, 156, 177, 179, and 192.

     As to the remaining numbered material facts set forth in Defendant's Statement (Nos. 15, 33, 53, 54, 56, 60 and 135), Defendant responds as follows:

***Defendant's Statement No. 15: Plaintiff was rated successful in all of her performance evaluations before she was terminated from the Agency. See Nwachuku EEO Decl. at 30, Attached Ex. 2.***

<u>Reply to Plaintiff's Response:</u>   Plaintiff argues that this fact is disputed and immaterial to Defendant's Motion.   Specifically, Plaintiff alleges that the Agency utilized a multi-tier performance system during a portion of Plaintiff's time with the Agency and that Plaintiff's supervisors, while giving her good performance reviews, also noted that Plaintiff had certain performance issues including being "inappropriate on many occasions" and "argumentative." *See* Pl's Stmt at 24-25.

Defendant agrees with Plaintiff that the Agency used a multi-tier performance system during a portion of Plaintiff's time with the Agency.  Defendant used the term "successful" to connote "satisfactory," meaning that Plaintiff was not given any unsatisfactory performance ratings during her time with the Agency regardless of which system was utilized.  Accordingly, there is no dispute on this topic.

Moreover, Defendant agrees with Plaintiff that Plaintiff's supervisors, while giving Plaintiff satisfactory performance evaluations also noted that Plaintiff had certain performance issues, including problems with her interpersonal skills.  As Defendant noted in his Opening Brief, perhaps the best evidence of Plaintiff being "inappropriate on many occasions" is Plaintiff's own unfiltered EEO Declaration, which she submitted at the administrative level apparently without the assistance of counsel and which contains a number of specious allegations regarding her supervisors.  *See* Nwachuku EEO Decl., Mot. Ex. 2.  Indeed, Plaintiff herself noted in that Declaration that Dr. Schoeny (Plaintiff's first-line supervisor for her first several years with the Agency) had explained to Plaintiff in connection with her 2000 performance evaluation (long before any of Plaintiff's EEO activity) areas in which Plaintiff could improve, and specifically "areas of collaboration."  *See id.* at 8.

**Defendant's Statement No. 33: Dr. Doyle's remark that "I used to live in Prince George's County" had no racial overtones, and was not meant to be denigrating at all.  See Doyle EEO Tr. at 744, Attached Ex. 10.**

Reply to Plaintiff's Response:  Plaintiff argues that this fact is disputed.  Plaintiff, however, fails to cite any evidence that tends to refute this Statement.  Indeed, Plaintiff herself on two separate occasions stated that she did not know what Dr. Doyle meant by the remark, "I used to live in Prince George's County," specifically stating, "What does that mean?"  *See* Nwachuku EEO Tr. at 396, Reply Ex. C; Nwachuku Dep. Tr. at 48, Mot. Ex. 1 ("What has that got to do with me?").

Moreover, Plaintiff could not recall Dr. Doyle saying anything to indicate that the "comment was intended to be demeaning toward African-Americans[,] people from Africa, or Black people." *See* Nwachuku Dep. Tr. at 196-97, Mot. Ex. 1.  As Plaintiff has identified no evidence that tends to dispute this Statement, there exists no genuine issue of material fact as to this Statement.

**Defendant's Statement No. 53: Prior to the March 2003 meeting, Mr. Zarba reviewed the write-ups that promotional candidates had submitted, discussed possible promotion candidates with the branch supervisors at the time -- including Anthony Maciorowski, who was Plaintiff's first line supervisor at the time (see Zarba Dep. Tr. at 29, Attached Ex. 4; Maciorowski EEO Decl. at ¶ 4, Attached Ex. 22) -- spoke with customers of HECD, and generally recalled his experiences with eligible HECD personnel.  Zarba EEO Tr. at 594, 597, 602, Attached Ex. 23.**

<u>Reply to Plaintiff's Response:</u>  Plaintiff argues that this fact is disputed.  Plaintiff, however, fails to cite any evidence that tends to refute this Statement.  All this Statement stands for is that Mr. Zarba prepared for the late-March 2003 meeting by conducting a review of his staff by reviewing materials and speaking with relevant persons.  Plaintiff does not dispute this general material fact.  *See* Pl's Stmt. at 40.  Rather, Plaintiff argues without support that Mr. Zarba did not review her write-up because it was submitted after the late-March 2003 meeting.  This fact, however, is immaterial.  As Mr. Zarba noted, write-ups were not required in the accretion of duties promotion process.  *See* Zarba EEO Tr. at 592-95, Reply Ex. A.  Further, Mr. Zarba had Plaintiff at the bottom of his mental list due to his personal observations of Plaintiff and feedback from individuals who worked with Plaintiff, which revealed Plaintiff's problematic interpersonal skills.  Moreover, Plaintiff's citation to Mr. Zarba's deposition transcript does not support Plaintiff's contention that the late-March 2003 meeting occurred before Mr. Zarba emailed his staff and told them that they could submit a write-up.  Indeed, nowhere in the two cited pages of deposition testimony does Mr. Zarba state when the late-March 2003 meeting occurred or that he wrote his email after that meeting.

Lastly, all HECD promotion eligible persons, regardless of race or national origin, were treated in exactly the same manner. That is, they all received the same notice from Mr. Zarba, and they all had the same chance to submit write-ups. Nothing Plaintiff cites contradicts this truism.

**Defendant's Statement No. 54: Based upon Mr. Zarba's review, he believed that no GS-13s or 14s within HECD, including Plaintiff, met Mr. Grubbs's stated criteria for accretion of duties promotions. See Zarba Dep. Tr. at 26, 28, Attached Ex. 4; Zarba EEO Tr. at 598-99, Attached Ex. 23; Zarba EEO Decl. at ¶ 9, Attached Ex. 15.**

<u>Reply to Plaintiff's Response:</u>  Plaintiff argues that this fact is disputed. Plaintiff, however, fails to cite any evidence that tends to refute this Statement. Instead, Plaintiff argues that she had expertise in her field and was fully successful in her duties at a GS-13 level.  *See* Pl's Stmt. at 41-42. This is simply irrelevant as to whether Mr. Zarba sincerely and reasonably believed that any of the GS-13 scientists within HECD, fulfilled Mr. Grubb's criteria for accretion to the GS-14 level. As Defendant noted in his Opening Brief, Mr. Zarba had Plaintiff ranked at the bottom of his mental list, notwithstanding her technical abilities, due to Plaintiff's deficiencies in her interpersonal skills.  *See* Open. Br. at 16-17.

Moreover, Plaintiff's assertion that "there is evidence that Zarba was intolerant of Dr. Nwachuku's nation origin," is simply ludicrous. Plaintiff's specious assertion is based upon a gross distortion of Mr. Zarba's testimony at the administrative hearing that preceded this action. At the EEO hearing, after Mr. Zarba noted that Plaintiff, in his mind, had not used good grammar in certain official correspondence, Plaintiff's counsel asked the non-sequitur: "Q: Are you aware that she's from Africa?" to which Mr. Zarba responded that Plaintiff ethnicity had no bearing on his evaluation, specifically stating "A: Yes, I am. But you can't send a memo out and say excuse the writing because the person is from Africa. I expect a GS-13, GS-14 level scientist to write a one-page memo that makes a point and lays out options and has a conclusion."  *See* Zarba EEO

Tr. at 641-43, Reply Ex. A.  Accordingly, Plaintiff's characterization of this testimony as evidence that Mr. Zarba has "admitted issues with Dr. Nwachuku's African-origin," is a gross, blatant misrepresentation of Mr. Zarba's testimony, and reflects the desperate measures that Plaintiff has taken to avoid the clear bases upon which the Court should enter summary judgment.

**Defendant's Statement No. 56: In Mr. Zarba's mind, after his review, Plaintiff was at the bottom of his mental list of potential HECD promotion candidates given Plaintiff's deficiencies in her interpersonal skills.  See Zarba EEO Decl. at ¶ 9, Attached Ex. 15; Zarba ROI Decl. at ¶ 6, Attached Ex. 24; Zarba EEO Tr. at 627-28, Attached Ex. 23; Zarba Dep. Tr. at 44, Attached Ex. 4.**

Reply to Plaintiff's Response:  Plaintiff argues that this fact is disputed.  Plaintiff, however, fails to cite any evidence that tends to refute this Statement.  Indeed, Plaintiff essentially sets forth the same irrelevant arguments as she set forth in response to Defendant's Statement No. 54.  *See supra*; Pl's Stmt. at 42-43.  As Defendant noted above, Plaintiff's technical expertise and ability to perform at a fully successful level has no bearing on whether Plaintiff was qualified for an accretion of duties promotion, or whether she had significant problems with interacting in a professional and polite manner with customers, her coworkers and her supervisors.

Further, Plaintiff repeats the same specious and unfounded allegations that Mr. Zarba was intolerant of Plaintiff's national origin.  As noted above, this argument is baseless and is premised solely upon a gross distortion of Mr. Zarba's testimony at the administrative hearing that preceded this action.

**Defendant's Statement No. 60: Ms. Williams-Bower and Mr. Johnston were selected from approximately 55 eligible employees in OST.  See Grubbs EEO Tr. at 458, Attached Ex. 14.**

Reply to Plaintiff's Response:  Plaintiff argues that this fact is disputed.  Plaintiff's dispute with this Statement, however, is based upon a misreading of this Statement.  In the above Statement,

Defendant utilized the term "eligible" merely to refer to any employee who was potentially qualified for an accretion of duties promotion because they had fulfilled the basic time-in-grade requirements.  Defendant did not state that approximately 55 employees were qualified and had fulfilled the requirements for an accretion of duties promotion.  Indeed, based upon his considered review (which Defendant detailed in his opening brief -- *see* Open. Br. at 12-13), Mr. Zarba concluded that no GS-13 scientists in HECD, regardless of their race or national origin, were qualified for an accretion of duties promotion.  *See* Open. Br. at 12-13.  That is, Plaintiff was treated in exactly the same manner as all other GS-13 scientists within HECD during the accretion of duties process.

**Defendant's Statement No. 135: Dr. Doyle told Plaintiff in person, after Plaintiff arrived in the office on Thursday, May 18, 2006, at approximately 4:30 p.m., that Plaintiff was not authorized to go to ASM conference, or expend any government funds on travel to such conference.  See Doyle MSPB Decl. at ¶¶ 3-5, Attached Ex. 52.**

<u>Reply to Plaintiff's Response:</u>  Plaintiff argues that this fact is disputed.  Plaintiff, however, fails to cite any evidence that tends to refute this Statement.  That is, Plaintiff attempts to dispute this Statement, not by citing any evidence concerning the face-to-face meeting Dr. Doyle and Plaintiff had on May 18, 2006, but rather by arguing that Plaintiff had not read her emails.  *See* Pl's Stmt. at 72.  Defendant's Statement plainly discusses an in-person meeting not emails.  Thus, because Plaintiff offers no evidence (or even unsupported argument) to refute this Statement, Plaintiff has conceded the material facts contained therein.

Dated: September 5, 2008
     Washington, DC

                              Respectfully submitted,


                              _____
                              JEFFREY A. TAYLOR, D.C. BAR #498610
                              United States Attorney

_____ /s/
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


_____ /s/
BRIAN P. HUDAK
Assistant United States Attorney
555 4th Street, NW
Washington, DC 20530
(202) 514-7143

*Attorneys for Defendant*