# EXHIBIT B

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - x
                              :
NENA NWACHUKU                 :
                              :
        Plaintiff,            :
                              :
   v.                         : Civil Action
                              : 06-0946 (RJL)
STEPHEN L. JOHNSON,           :
                              :
        Defendant.            :
                              :
- - - - - - - - - - - - - - - x

COPY

Washington, D.C.

Tuesday, January 22, 2008

Deposition of

BRENDLYN FAISON

a witness of lawful age, taken on behalf of the

Defendant in the above-entitled action, before Kenyan

Hopchas, Notary Public in and for the District of

Columbia, in the offices of Swick & Shapiro, 1225 Eye

St., N.W., Number 1201, Washington, D.C. 20005,

commencing at 10:25 a.m.

APPEARANCES:

On Behalf of the Plaintiff:

PAUL WINICK, ESQ.
United States Environmental
Protection Agency
1200 Pennsylvania Avenue, NW
Washington, DC   20004

RICHARD L. SWICK, ESQ.
Swick & Shapiro, PC
1225 Eye Street, NW
Washington, DC   20005
(202) 842-0300

On Behalf of the Defendant:

BRIAN HUDAK, ESQ.
Assistant U.S. Attorney
555 4th Street, NW
Washington, DC 20530
(202) 514-7143

1          P R O C E E D I N G S

2   Whereupon,

3                    BRENDLYN FAISON

4   was called as a witness and, having been first duly

5   sworn, was examined and testified as follows:

6            EXAMINATION BY COUNSEL FOR PLAINTIFF

7            BY MR. SWICK:

8       Q    Would you state your name and address for

9   the record, please?

10      A    Brendlyn Denise Faison, 1509 Rosemont

11  Avenue, Frederick, Maryland  21702.

12      Q    What's your educational background?

13      A    Ph.D., Microbiology.  Is that sufficient?

14      Q    Well, that's a start.  When did you get your

15  Ph.D.?

16      A    In 1985.

17      Q    Where did you get that at?

18      A    University of Wisconsin, Madison.

19      Q    Okay.  And how about your undergraduate

20  degrees?  Where did you get them?

21      A    Do you want my master's degree, too?

22      Q    Yes.

1        BY MR. SWICK:

2    Q    You just needed them to know that you were

3 sending it, but you didn't want her to know --

4        MR. HUDAK:  Objection --

5        MR. SWICK:  That you were sending it --

6        THE WITNESS:  I wanted them to know that I

7 was sending it.

8        BY MR. SWICK:

9    Q    Did you ever have any feedback from them

10 about these blind copies you were sending them of your

11 invitations to meetings --

12   A    My boss, Bob Cantilli, said it's good to try

13 to keep the communication open between me and Nena.

14   Q    And that was the response to one of the

15 blind invitations you had sent out?

16   A    Yes.

17   Q    How did that come up?

18   A    He would drop by every day, just wanted to

19 say "Hi," and one day he just mentioned that it was

20 good for me.  Yeah, he was fully aware that I was lost

21 with regard to the CCL3 process.  He knew that I had

22 asked for guidance and not really understood what my

1  role was.  I wanted him to know that I'm still trying.

2      Q    So that's why you were sending him the blind

3  copies?

4      A    Yes.  Same true for Beth.

5      Q    When you first came on the Work Group, did

6  Beth tell you that Nena had requested that you be

7  assigned to the Work Group?

8      A    No.

9      Q    Did Nena ever tell you that?

10     A    No.

11          MR. SWICK:  I'm going to request that she

12  review her computer and see if she find these

13  invitations and that she print them and make them

14  available to counsel. I'll send a written request for

15  it, but I wanted, you know, just to make a point

16  nothing should be deleted after today of those

17  invitations, if they still exist.

18          MR. HUDAK:  Well, we'll take under

19  advisement.

20          MR. SWICK:  All right.

21          MR. HUDAK:  I understand what you're saying,

22  but I do not believe that anything has been deleted.

1                    for identification.)

2          THE WITNESS: Oh, wait, that's the same
3   thing.

4          BY MR. SWICK:

5     Q    Well, it's not.

6     A    Okay.

7     Q    It's a somewhat truncated version.

8     A    Okay.

9     Q    And my reason for giving it to you is to ask
10  you, you know, why is there this second version?

11         MR. HUDAK: Objection to form.

12         THE WITNESS: With the third point, I don't
13  remember. Oh, wait, wait, wait. This must be the
14  version that I gave to Beth and Bob.
15  Attachment -- no, Exhibit 2.

16         BY MR. SWICK:

17    Q    This is important. You didn't give
18  that -- so you gave that to Beth and Bob, but you gave
19  Exhibit 1 to Nena, is that right?

20    A    I think so. Yes.

21    Q    Why a different version to Beth and Bob?

22    A    Because I do not want my managers to know

1  that I'm plugged into the office grapevine.

2     Q    If we go back to Exhibit 1, at the bottom,

3  and I am through where we're reading, you indicate in

4  the next sentence, referring to following this serious

5  act against you, "That actually would not be my

6  problem, and I do not particularly want to help them

7  take such action, since I do not know and do not want

8  to know the details."  Didn't anyone ever ask you to

9  help management in the action against Nena?

10           MR. HUDAK:  Objection.

11           THE WITNESS:  First of all, I did not know

12 that there was an action that was going to be taken.

13 Secondly, no.

14           BY MR. SWICK:

15    Q    When you say, "I do not particularly want to

16 help them take such an action," what are you talking

17 about?

18    A    That's poor grammar on my part. The

19 beginning of the sentence, "That action would no be my

20 problem", is in subjunctive; I mean, this could

21 happen.  The rest of the sentence is in declarative:

22 "This is what I want."  What I should have said is "I