# EXHIBIT E

Page 925

```
 1        EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
              BALTIMORE DISTRICT OFFICE
 2                    VOLUME IV
    NENA NWACHUKU
 3          Complainant       EEOC Case No.
       vs.                    100-2004-011025X
 4

    MICHAEL LEVITT, ADMINISTRATOR
 5  ENVIRONMENTAL PROTECTION    Agency Case Nos.
    AGENCY                      2003-0065-HQ
 6          Agency              2004-0050-HQ
 7  _____/
 8          The continued above-entitled matter came
 9  on for Hearing before Laurence H. Gallagher,
10  Administrative Judge, on Wednesday, November 9, 2005,
11  commencing at 9:30 A.M. at the Equal Employment
12  Opportunity Commission, City Crescent Building, 10
13  South Howard Street, 3rd floor, Baltimore, Maryland,
14  21201, before Chuck Peppler, a Notary Public.
15  APPEARANCES:
16          LAURENCE H. GALLAGHER, ADMINISTRATIVE JUDGE
17          ROY J. BUCHOLTZ, ESQUIRE
                On behalf of the Complainant
18
            PAUL M. WINICK, ESQUIRE
19              On behalf of the Agency
20  ALSO PRESENT:  NENA NWACHUKU, COMPLAINANT
21  REPORTED BY:   Chuck Peppler
```

Page 926

```
 1                    P-R-O-C-E-E-D-I-N-G-S
 2            JUDGE GALLAGHER:  Good morning.  My name
 3   is Administrative Judge Gallagher.  We're here
 4   continuing the hearing of Nena Nwachuku versus the
 5   Environmental Protection Agency.  Today is
 6   November 9th, 2005.  Present in the hearing room are
 7   Agency counsel, Mr. Winick, Complainant's counsel, Roy
 8   Bucholtz, the Complainant herself, the court reporter,
 9   Chuck Peppler, and the current witness is Brenda
10   Mosley.
11            Ms. Mosley, could you please raise your
12   right hand?
13   Whereupon,
14                    BRENDA F. MOSLEY,
15   called as a witness, having been first duly sworn
16   to tell the truth, the whole truth, and nothing but
17   the truth, was examined and testified as follows:
18            JUDGE GALLAGHER:  Please state your name
19   for the record.
20            THE WITNESS:  Brenda F. Mosley.
21            JUDGE GALLAGHER:  I'm trying to remember.
```

Page 970

1  make a point and it's happened to me.

2     Q.    That exhibit that you have in front of
3  you, you've testified about things in it just as a
4  whole, and as much as you were here in person, you
5  testified that this exhibit is accurate and reaffirms
6  that this is your sworn testimony in here whether or
7  not we've actually covered every single line.

8     A.    Yes, I do.

9     MR. BUCHOLTZ:  Thank you.  I have no
10 further questions.

11     JUDGE GALLAGHER:  Okay.  Mr. Winick.

12     EXAMINATION BY MR. WINICK:

13     Q.    Dr. Mosley, it is true that you and
14 Dr. Nwachuku have never been in a supervisory
15 subordinate relationship?

16     A.    That is true.

17     Q.    You've never even worked in the same AA
18 shift?

19     A.    No, we've never worked in the same AA
20 shift.

21     Q.    That's throughout your entire career?

1   A.   Throughout our entire career.

2   Q.   So, it would be fair to say that you two

3 would never consider each other in competition. Say

4 you were a 13, for example, and say Dr. Nwachuku was a

5 13. You were in your office and she was in her

6 office. Could you get a 14 without that having any

7 impact on her whatsoever?

8   A.   I'm not understanding the question.

9   Q.   Well, what I'm suggesting here is, you

10 could be promoted and you're competing against a pool

11 of candidates in OECA for that promotion.

12 Dr. Nwachuku is not one of those people, is she?

13   A.   Within my office, no.

14   Q.   Right. So, you would not be competing

15 against her for a promotion?

16   A.   No, I would not.

17   Q.   You would not be competing against her for

18 any type of recognition within your office?

19   A.   Within my office, no.

20   Q.   You would not be competing with her for

21 training dollars?

Towson Reporting
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting- Rockville
301-279-7599

Page 972

1    A.    No, I would not.

2    Q.    Isn't it also fair to say that you do not

3    rely on a work product from Dr. Nwachuku to do your

4    job?

5    A.    I don't rely on a work product per se to

6    do my job, but I rely on her advice to do my job, yes,

7    I do.

8    Q.    But, you don't get a work product from

9    her, you don't say I need something by a time?

10   A.    No, I do not.

11   Q.    Thank you.  It is true that you've won a

12   number of awards in the Agency?

13   A.    Yes, it is true.

14   Q.    You didn't nominate yourself for any of

15   those awards, I take it?

16   A.    No, I did not.

17   Q.    So, it would be fair to say you're very

18   well-regarded by your supervisory people.  Would that

19   be correct?

20   A.    Yes.

21   Q.    In fact, it's also true that you're very

```
1    well-regarded throughout the Agency generally.  Is

2    that true?

3         A.    Generally, yes.

4         Q.    You are unaware of how Dr. Nwachuku is

5    perceived by her supervisors; is that not true?

6         A.    That's true.

7         Q.    You do not know Mr. Grubbs?

8         A.    No, I do not know Mr. Grubbs.

9         Q.    You do not know Dr. Ohanian?

10        A.    No, I do not.

11        Q.    You've mentioned, I think in your

12   affidavit, Dr. Rita Schoeny.

13        A.    Yes.  I've met Dr. Ohanian, but I don't

14   know him other than that one encounter.

15        Q.    With respect to Dr. Schoeny, is it also

16   true that you don't really know her?

17        A.    I don't know her either.

18        Q.    Do you know Dr. Beth Doyle?

19        A.    I don't know Elizabeth.  I have met her.

20   I met her when she worked in the Office of Pesticide

21   Programs.
```

Page 974

1    Q.    But, again, she is no one you have any
2    real familiarity with?
3    A.    No.
4    Q.    It would be fair to say, then, that you
5    have no basis for judging whether these people are
6    truth-tellers or not?  Would that be fair to say?
7    A.    That would be fair to say.
8    Q.    You don't know Mr. Chris Zarba, do you,
9    Christopher Zarba?
10   A.    Christopher Zarba, I do not know him other
11   than the fact that he works in the Office of Research
12   and Development.
13   Q.    Do you know Dr. Anthony Maciorowski?
14   A.    No, I do not.
15   Q.    Do you know Robin Oshiro?
16   A.    No.
17   Q.    Do you know Lisa Almodovar?
18   A.    No.
19   Q.    Do you know Latisha Parker?
20   A.    No.
21   Q.    Do you know Joanna Taylor?

Page 975

1    A.   No.

2    Q.   Do you know Cindy Roberts?

3    A.   No.

4    Q.   Do you know Bill Swietlik?

5    A.   No.

6    Q.   Do you know Dennis Borum?

7    A.   No.

8    Q.   Do you know Barbara Leftwich?

9    A.   The name sounds familiar, but I must say

10   no.

11   Q.   Do you know Sory Kamaro (phonetic)?

12   A.   No.

13   Q.   You have also testified you don't know

14   Vera Williams-Bower?

15   A.   No, I do not know Ms. Bowers.

16   Q.   Do you know Joyce Donohue?

17   A.   No.

18   Q.   Do you know Alice Moss?

19   A.   No.

20   Q.   Do you know Heidi Bell?

21   A.   Nope.

Page 976

1    Q.    So, if these individuals were to say that

2    they have been in confrontations with --

3          MR. BUCHOLTZ:    Objection.  That's a

4    hypothetical question, which is not a proper question.

5    It does not reflect testimony on the record.  Almost

6    every name he's listed has not even been a witness in

7    this hearing.  It's a totally improper question.

8          JUDGE GALLAGHER:    I think it's sufficient

9    that she said she doesn't know these people.  So, I

10   can make my own conclusions based upon her not knowing

11   them.  But, as far as your question, I'm going to have

12   to sustain the objection.

13   Q.    Now, you've testified that you don't know

14   Ed Ohanian, Beth Doyle, Rita Schoeny, Tony Maciorowski

15   or Chris Zarba, correct?

16   A.    That is true.

17   Q.    So, if these individuals were to have

18   testified that they were aware of or personally had

19   some sort of hostile confrontations with Complainant,

20   you have no way of knowing whether that was true or

21   not?

1       A.      No, I would not.

2       Q.      So, for the most part, it would be fair to
3  say you can only testify concerning your personal
4  interactions with Dr. Nwachuku?

5       A.      Absolutely.

6       Q.      Again, you testified you don't know Vera
7  Williams-Bower?

8               JUDGE GALLAGHER: Asked and answered.

9       Q.      I was going to ask it's also true you
10 don't know Carey Johnston?

11      A.      No, I don't know Carey Johnston.

12      Q.      So, as to whether either of those
13 individuals was a candidate, a good candidate for
14 promotion to the GS-14, you have no personal knowledge
15 of the work they do?

16      A.      I have no personal knowledge of the work
17 they do.

18      Q.      With respect to that promotion that was at
19 issue, there are 60 individuals, between 55 and 60 who
20 were eligible for the promotion at the same time that
21 Dr. Nwachuku was. Would it be fair to say that with