UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NENA NWACHUKU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 06-0946-RJL |
| ) | |
| ) | |
| LISA JACKSON, Administrator, U.S. ) | |
| Environmental Protection Agency, ) | |
| ) | |
| Defendant. ) | |

**S+**
**MEMORANDUM OPINION**
(March **31**, 2009) [# 16]

Nena Nwachuku, ("Nwachuku" or "plaintiff"), alleges that her employer, the Environmental Protection Agency ("EPA," "agency," or "defendant") discriminated against her on the basis of race, color, national origin, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Remaining before the Court are two of her claims: a claim of racial discrimination relating to her employer's failure to promote her in 2003 and a claim of retaliation for her termination in 2006.[1] The agency[2] filed a motion for summary judgment contending that it had good cause for not

---

[1] Based on Nwachuku's Opposition, the Court finds she concedes her claim for hostile work environment and any claim for discrimination based on other grounds. (*See generally* Pl's Opp.); *see also United States v. Real Property Identified as: Parcel 03179-005R*, 287 F. Supp. 2d 45, 61 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion . . . addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (internal quotations omitted)).

[2] Pursuant to Federal Rule of Civil Procedure 25(d), if a public officer named as a party to an action in his official capacity ceases to hold office, the court will automatically substitute that

promoting her and, ultimately, for terminating her employment. Based on a review of the record, the Court agrees that EPA's actions were not pretextual and the agency is therefore entitled to judgment as a matter of law. Accordingly, the Court will GRANT the agency's summary judgment motion.

## BACKGROUND

Nwachuku, a Black African of Nigerian descent, (Compl. at 1), worked as an environmental scientist for EPA. She first alleged discrimination in a grievance lodged against her immediate supervisor in November 2001, claiming that the agency denied her training, stripped her of her responsibilities, and subjected her to humiliation because of her race, color, and national origin. (Compl. at 3.)

In early 2003, Nwachuku applied for a promotion from a GS-13 level to a GS-14 level. She was not promoted, and contends that EPA's decision not to promote her was based on her race. In that regard, she alleges that all those promoted, except for one, were white and "far less qualified for the promotion." (Compl. at ¶ 9.) The agency counters, explaining it promoted two of the most-deserving employees. (Def.'s Mot. for Summ. J. at 13–14; Def. Ex. 19 at 2–3.)

Ultimately Nwachuku was fired by the agency in December 2006. She alleges that its decision to fire her was in retaliation for her filing discrimination allegations in connection with her promotion denial in 2003. (Am. Compl. at ¶ 11.) The agency, in

---

officer's successor. Accordingly, the Court substitutes Lisa Jackson for Stephen L. Johnson.

response, points to a thirty-page letter, "Final Decision on Proposed Removal of Nena Nwachuku" written by Ephraim King ("King"), in which the agency explained that, in addition to certain improper conduct, the agency was firing her as a result of her failure to follow her supervisors' instructions regarding the planning of an agency workshop and to obtain authorization in advance to expend government funds to attend a conference in Florida. (Def. Ex. 76.) King's decision to fire Nwachuku was based on certain information he had obtained from other employees. Nwachuku was given an opportunity to respond to the allegations. Indeed, she does not deny that she failed to follow her supervisors' instructions on numerous occasions. Instead, she argues that the agency should not have expected her to follow the instructions because she was too busy with her job responsibilities to read emails from her supervisors. (Pl.'s Opp. to Def.'s Mot. for Summ. J. at 42–43.) EPA, not surprisingly, contends that in light of admissions like this, no reasonable juror could conclude that the agency's decision was pretextual.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party opposing a motion for summary judgment, however, "may not rest

upon the mere allegations or denials of [her] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Amiri v. Stoladi Prop. Group*, 407 F. Supp. 2d 119, 123 (D.D.C. 2005) (internal quotation and alteration omitted). In ruling upon a motion for summary judgment, this Court will draw all reasonable inferences in favor of Nwachuku, as the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## DISCUSSION

Title VII of the Civil Rights Act makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Our Court of Appeals recently clarified that "[t]his statutory text establishes two elements for an employment discrimination case: (i) the plaintiff suffered an adverse employment action (ii) because of the employee's race, color, religion, sex or national origin." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008). "A plaintiff . . . may try in multiple ways to show that the employer's stated reason for the employment was not the actual reason (in other words, was a pretext)." *Id.* at 495. At issue in this case are two adverse employment actions: the agency's failure to promote Nwachuku in 2003 and its termination of her employment in 2006. For the following reasons, the Court concludes that Nwachuku has utterly failed to

present enough evidence, which if believed, could be the basis for a reasonable juror to find either one, let alone both, of these actions to be pretextual acts of racial discrimination.

### A.     Failure to Promote

Nwachuku alleges she was more skilled or qualified than those employees promoted by EPA in 2003. (Compl. at ¶ 9.) However, as at least one of Nwachuku's supervisors explained, Nwachuku was the least likely employee to be promoted given defects in her interpersonal skills. (Def.'s Summ. J. Mot. at 13; Def. Ex. 15 at ¶ 9.) Thus, Nwachuku's relative qualifications are irrelevant given that the agency did not base its decision on Nwachuku's lack of qualifications, but on her lack of interpersonal skills. (Def.'s Mot. for Summ. J. at 16 (citing declarations of Nwachuku's supervisors indicating she had interpersonal-skill problems).)

Furthermore, while the agency did not fill the GS-14 positions competitively, (Pl.'s Opp. to Def. Mot. for Summ. J. at 25–35), it did properly follow an established procedure for filling the GS-14 positions. (Def.'s Mot. for Summ. J. at 13; Ex. 19 at 2–3.)); *cf. Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000) (finding that a variation from an established procedure can evince pretext). The agency announced it could fill a small number of GS-14/15-level positions, and asked supervisors to individually review the qualifications of all eligible GS-13 employees to determine their promotion potential. After reviewing the employees, a senior management team met and,

by consensus, decided which two of the eligible fifty-five individuals should be promoted. This procedure was used after the agency determined it was "the fairest and most efficient way to manage the overall GS-14/15 pool . . . , in order to maximize the promotion and career growth opportunities." (Def. Ex. 19 at 1 (internal quotation omitted).) Thus, the agency followed a fair method of promoting employees, and it did not vary from an established procedure.

These two arguments—Nwachuku's relative qualifications and the agency's failure to promote competitively—are the only arguments Nwachuku offers to support her claim that the agency did not promote her based on her race. They are not enough! Because these two arguments do not evince pretext and Nwachuku offers no other evidence to support her racial-discrimination claim, the Court finds Nwachuku has not provided evidence that would enable a reasonable juror to conclude the agency's failure to promote her was based on race.[3] *See Brady*, 520 F.3d at 496–97 (affirming a grant of summary judgment in favor of an employer after the employee failed to establish the employer's legitimate nondiscriminatory reason was false and did not offer any other evidence of unlawful discrimination).

### B.   Termination

In support of her claim that the agency fired her in 2006 based on retaliation, Nwachuku principally relies on the temporal proximity between when she filed a

---

[3] The Court also notes that one of the promoted individuals was, herself, an African-American female. (Mot. for Summ. J. at 14.)

6

discrimination complaint and when she was fired. She also attempts to establish the agency's stated reasons for firing her—primarily based on her failure to follow instructions—were pretextual, as she was allegedly unaware of her supervisors' instructions because she was overwhelmed and too busy to check her email. In response, EPA points out that it carefully considered the evidence regarding Nwachuku's insubordination and was not persuaded by Nwachuku's excuses. For the following reasons, I agree with EPA's position.

Plaintiff alleges a close temporal proximity between when she filed the complaints of discrimination and when she was terminated. "[I]n many cases, a temporal relationship may be enough for a court to infer causation." *Cochise v. Salazar*, — F. Supp. 2d —, —; No. 06-cv-980, 2009 WL 585798 at *4 (D.D.C. Mar. 7, 2009). However, given that Nwachuku was fired *more than five years after* she filed her initial EEO complaint,[4] the Court concludes that Nwachuku's termination hardly occurred "very close" to when she filed discrimination complaints, as is necessary to suggest a causal link based on temporal proximity. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *see also Buggs v. Powell*, 293 F. Supp. 2d 135, 148 (D.D.C. 2003) (citing cases holding time periods more than three months are not strongly suggestive of a causal link); *McFadden v. Ballard, Spahr, Andrews & Ingersoll, LLP*, 580 F. Supp. 2d 99, 110 n.16 (citing cases to show "three months is outer limit for temporal showing of causation"). Furthermore,

---

[4]Nwachuku filed three EEO complaints between November 2001 and March 2006, and she filed suit in this Court in May 2006.

regardless of whether Nwachuku has established the temporal proximity sufficient to support an inference of causation, the agency has effectively rebutted this inference by presenting evidence of a legitimate nondiscriminatory reason that Nwachuku has been unable to counter. *See Bush v. Engleman*, 266 F. Supp. 2d 97, 103 (D.D.C. 2003) (providing that although "the timing of [a] defendant's decision might support an inference of causation," this inference can be rebutted if the defendant presents evidence of a legitimate nondiscriminatory reason that the plaintiff is unable to counter).

According to King's letter, Nwachuku was fired because, among other things, she: (1) failed to follow her supervisors' instructions on numerous occasions; (2) took a five-day absence without leave to attend a conference in Florida she lacked permission to attend; (3) falsely told EPA's travel agency she was authorized to travel to the conference; and (4) expended the agency's travel funds without authorization thus causing a false claim to be made against the federal government.[5] (Def. Ex. 76.) The agency contends these reasons are legitimate nondiscriminatory reasons for firing Nwachuku. I agree.

---

[5]King also stated Nwachuku had falsely accused one of her supervisors of violence and engaged in disrespectful conduct toward her supervisors. Because the Court has found the agency's first four legitimate nondiscriminatory reasons are not pretextual, the Court need not address the agency's other proffered legitimate nondiscriminatory reasons. *See Teneyck v. Omni Shoreham Hotel*, 224 F. Supp. 2d 43, 46 (D.D.C. 2002) (noting employers need only set forth one legitimate nondiscriminatory reason); *see also Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007) ("If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment."); *Debs v. Northeastern Ill. Univ.*, 153 F.3d 390, 395 (7th Cir. 1998).

In responding, Nwachuku alleges she was *unaware* of her supervisors' instructions or her lack of authorization to attend the conference, as she was overwhelmed and too busy to check her email. (Pl.'s Opp. to Def.'s Mot. for Summ. J. at 42–43.) She maintains this assertion, despite the fact the evidence demonstrates that she received these emails and that the emails' subject lines indicated they were regarding the workshop and her travel to Florida. (Def. Exs. 43, 46, 51.) Given the self-serving nature of Nwachuku's excuses, and the overwhelming evidence that Nwachuku received the emails and was informed that her trip was unauthorized, King found Nwachuku's explanation incredible. (*See* Def. Ex. 76.)

It is not this Court's role to dispute King's findings. *See Dunning v. Quander*, 468 F. Supp. 2d 23, 32 n.10 (D.D.C. 2006). King decided to fire Nwachuku after carefully considering the evidence regarding the claims against her[6] and giving her an opportunity to respond. In the agency's lengthy "Final Decision on Proposed Removal of Nena Nwachuku," the agency detailed the extensive charges against Nwachuku, explained the evidence against her and her arguments in opposition, and reached the well-reasoned conclusion that Nwachuku was insubordinate and should be terminated. (Def. Ex. 76.) Based on the evidence against Nwachuku and King's extensive discussion of the charges

---

[6]Specifically, King found the evidence shows Nwachuku received three emails, on three separate days, stating that Nwachuku's travel to Florida was not authorized. (Def. Ex. 76 at 4.) King also noted that Nwachuku's "eight year Agency career has been marred by interpersonal conflicts" and "a consistent inability to effectively interact with [her] colleagues, a number of whom have felt compelled to abandon [the office] in order to minimize their contact with [her]." (Def. Ex. 76 at 24.)

9

against her, the Court finds the agency "honestly believed" its articulated legitimate nondiscriminatory reasons "and acted in good faith upon those beliefs." *Simpson v. Leavitt*, 557 F. Supp. 2d 118, 130 (D.D.C. 2008) ("[I]t is not this Court's job to decide if defendant's proffered reasons were wise, fair, or correct, but rather, whether defendant honestly believed those reasons and acted in good faith upon those beliefs." (internal quotation omitted)). Moreover, as this Court has previously noted: "It is not appropriate for this Court to evaluate the investigations and hearings surrounding plaintiff's termination. . . ." *Dunning*, 468 F. Supp. 2d at 32 n.10 (quoting *Hugley v. Art Inst. of Chi.*, 3 F. Supp. 2d 900, 908 (N.D. Ill. 1998) (internal quotation and alternations omitted)). "Once an employer has articulated a non-discriminatory explanation for its actions the issue is not the correctness or desirability o[f] the reasons offered but whether the employer honestly believes in the reasons it offers." *Id.* (quotation and alterations omitted). The agency here fired Nwachuku because she did not follow instructions. The Court finds the evidence readily supports the agency's legitimate nondiscriminatory reasons, and does not support a conclusion that Nwachuku was fired in retaliation for previously filing a claim of racial discrimination.

## CONCLUSION

Thus, for all of the foregoing reasons, the Court finds Nwachuku has failed to established the agency's legitimate nondiscriminatory reasons are pretexts for discrimination and has thus failed to meet her burden at the summary judgment stage of

the proceedings. Therefore, the Court will GRANT the agency's motion for summary judgment. An Order consistent with this determination accompanies this Memorandum Opinion.

/s/ Richard J. Leon
RICHARD J. LEON
United States District Judge